UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DANIEL G. ABEL                              *      CASE NO.: 2:13-cv-00088
                                            *
VERSUS                                      *      DIVERSITY OF CITIZENSHIP
                                            *
DOUGLAS K. HANDSHOE, AND                    *      JUDGE: HON. SUSIE MORGAN
ANNE-MARIE VANDENWEGHE A/K/A,               *
BOUDREAUX & ABC INSURANCE COs.              *      MAGISTRATE: HON. ALMA CHASEZ
                                            *
* * * * * * * * * * * * * * * * * * * * * * * * * *      JURY TRIAL - DEFAMATION

FIRST AMENDED COMPLAINT

Now into Court comes Daniel G. Abel, individually and as a representative for all persons equally

situated and effected by the actions of defendants and as no defendant has yet answered therefore leave

of Court to amend not being required, this first amended complaint follows.

As certain facts have been publically disclosed since the original complaint was filed on 16 January

2013, the complaint is now amended to include those facts known, but not disclosed in the original

pleading. All facts set forth originally are re-urged herein [original complaint sequential paragraphs in

brackets] .

1.

[¶ 123]

Waste Remediation of Plaquemines and Concrete Busters and their owners did not get the landfill

contract which they felt assured was in the[ir] bag, thereafter commenced the attempted but failed federal

prosecution against River Birch, its owners, Aaron Broussard, and uninvolved others. At issue is the

connection between that prosecution and the companies and individuals who did not get the contract.

Defendants Vandenweghe and Handshoe were complicitous in the dissemination of such fabricated facts

for the now discredited team of prosecutors. Handshoe and Vandenweghe have themselves claimed credit

for being the conduits of such information. As of 9 March 2013, the media is reporting that the discredited team may have destroyed evidence probative of the River Birch parties' innocence. Admissions made on slabbed confirm an insider connection between Slabbed, prosecutors, and the attorneys for Waste Remediation and Concrete Busters and their owners. In one instance, Handshoe and slabbed.org reported on a target letter which was signed on the same day reported on Slabbed, two days before the same prosecutors said in their investigative report to the federal judge that leaks had occurred.

## 2.

### [¶ 124]

Waste Remediation and Concrete Buster's own lawsuit and statement of facts is probative of its owners' belief that the Jefferson Parish waste disposal contract was theirs and the subsequent prosecution of River Birch [to which the Parish Counsel ultimately awarded the landfill contract] was in part an attempt to wrestle the contract from River Birch. Both defendants Vandenweghe and Handshoe acted in concert with Concrete Busters, its owners and attorneys in the fabrication of facts and allegations as they had done in the past.

In particular, Handshoe was corporate officer, agent, incorporator, and accountant for corporate entities involved in the federal indictment, prosecution and conviction of Fred H. Goodson and Maria Goodson, among others, in the late 1990s for RICO, RICO conspiracy, mail fraud, money laundering, and use of interstate communications in aid of state bribery. Handshoe was high school classmate and personal friend of unindicted co-conspirator Alexandros Goodson. Concrete Buster's attorneys Smith & Fawer represented the Goodson interests during the criminal trial.

3.

[¶ 125]

Starting in January, 2010 until the present day, Defendants Vandenweghe and Handshoe worked in concert with each other and third parties to influence events and public opinion using Slabbed, the good offices of municipal and federal attorney's offices, organizations funded by the criminal justice system, private civil lawsuits, and other online media.

4.

[¶ 126]

Defendants also manipulated information supplied publicly, officially, and privately to third parties, including but not limited to a local mainstream media desirous of insider information, with the same motive and goal.

5.

[¶ 127]

Defendants' sociopathic tirades included the publication of obvious varieties of hate speech, including racist, ethnic, place of origin, and homophobic rants against certain persons, judges, public and private persons, and complainant:

(A)     Handshoe inserted video-tapes of the television character shyster-lawyer Algonquin J. Calhoun—an Amos & Andy Televsion show character whose demeanor mocks African-Americans generally—onto slabbed.org when he wrote stories about Aaron F. Broussard; Broussard's attorney is African-American.

(B)     Handshoe and Vandenweghe repeatedly mock the Justices and the Supreme Court of Nova Scotia [and Canadian law enforcement]—which Court has already found that Handshoe and Vandenweghe's statements are false and constitute [on slabbed.org] hate-speech for which

they are liable and which Supreme Court has permanently enjoined the further publication of such speech by Handshoe, Vandenweghe, and slabbed.org in Nova Scotia.

6.

[¶ 128]

Defendants have repeatedly published admissions on the topic of Vandenweghe's triple role starting in 2009 as (a) blogger, (b) purveyor of criminally inculpatory information to state & federal investigative agencies, those formulating legal actions against the Parish, and the media, and (c) a salaried government attorney, Assistant Parish Attorney responsible for Public Records Requests.

7.

[¶ 129]

The motive for attorney Vandenweghe was financial gain, racial prejudice, homophobia, and vendetta.

8.

[¶ 130]

By 2009, Vandenweghe's career goals of becoming a prominent politician or judge through a system of political patronage had failed miserably.

9.

[¶ 131]

Vandenweghe had just been removed from a lucrative position as a Hearing Officer for the Inspection and Code Enforcement division of the Parish of Jefferson, and in January, 2009 she was moved to a position in which her salary was frozen ("red lined"), for which she blamed certain members of Aaron Broussard's Jefferson government, including prominently Tim Whitmer and Tom Wilkinson.

10.

[¶ 132]

Defendant Vandenweghe's first attempt to capitalize on her new position was with Jacqueline Patterson Edwards, who filed an amended RICO action against Jefferson Parish and Aaron Broussard, among others, in late 2009. The complaint, filed by Edwards as *pro se* plaintiff, included unsubstantiated allegations that Nova Scotia partnerships "Public Works Investments" and "Kempt Wilderness Lodge Services" were part of a criminal RICO enterprise. (Edwards suit was later dismissed with prejudice and she was order to pay costs).

11.

[¶ 133]

As *de-facto* co-publisher of Slabbed, Vandenweghe also self-servingly drove the remarkably sudden shift in January, 2010, of Slabbed's coverage from Mississippi based, Katrina-related insurance lawsuits to the "investigative blogging" on alleged and actual corruption in Jefferson Parish, Louisiana.

12.

[¶ 134]

Defendants were part of a concerted enterprise to influence public opinion that involved not only the Defendants, but also third parties including but not limited to past as well as now discredited current members of the U.S. Attorney's Office in New Orleans and the Smith & Fawer law firm.

13.

[¶ 135]

Actions taken by Plaintiff, his business associates, and businesses to protect their right not to be defamed interrupted or interfered with Defendant's plans to achieve financial gain and favorable public recognition. This, in turn, motivated Defendants to intensify their defamation of Plaintiff Abel, his

businesses, and his business partners.

14.

[¶ 136]

Defendants have claimed personal links to persons working in the mainstream media, the New Orleans U.S. Attorney's Office, the Federal Bureau of Investigation, and the Metropolitan Crime Commission, each of whom [she claimed] had their own motives for working in concert with Defendants. Vandenweghe has repeatedly asserted her "ongoing cooperation with the FBI and USAO" and her role as an informant for those agencies above and beyond her position as a Parish PRR[Public Records Request] official.

15.

[¶ 137]

As described herein, Defendants were motivated by and acted with express malice.

16.

[¶ 138]

Disgruntled and disillusioned after her involuntary January, 2009, re-assignment, during the last two quarters of 2009 and the first quarter of 2010, Defendant Vandenweghe confected a situation in which she directly and indirectly brokered select information and documents to the now discredited USAO team and to the media, private parties suing or expressly intent on suing Jefferson Parish, the MCC, the Legislative Auditor, and/or the State Ethics Board. Her position as Assistant Parish Attorney in charge of PRRs gave her the powerful capacity to effectively do so.

17.

[¶ 139]

That is, the information brokered was not independently requested by un-interested third parties

to a non-interested, objective PRR officer. Rather, there was a purpose and design to disgruntled veteran politico Vandenweghe's efforts, in which she even went to the extent of directing what was to be the subject of PRRs made by third parties to publicize information that would be to her own personal benefit as a disgruntled Parish employee and ultimately "whistleblower" suing the Parish in federal court.

18.

[¶ 140]

As previously stated, her motives were personal vendetta and financial gain, which were disguised by her role as government PRR official and then "whistleblower."

19.

[¶ 141]

Vandenweghe received protection and cover from the media and the now discredited former USAO members to the extent that the goals of these discredited USAO attorneys and the Defendants overlapped in the fabrication of alleged corruption in Jefferson Parish, including prominently the investigation of the RFP process involving bids by Concrete Busters of Louisiana, Inc., and Waste Remediation of Plaquemines, LLC, and the ultimate lucrative waste disposal contract awarded to River Birch Landfill.

20.

[¶ 142]

There was a "win at all costs" attitude prevalent within the now discredited former team members of the USAO at relevant times that spilled over into the blogasphere—as evidenced by the findings of the Hon. Kurt Englehardt and Hon. Judge Head.

21.

[¶ 143]

Vandenweghe has repeatedly focused in her lawsuits and online publications on alleged

improprieties and illegalities involved in the waste disposal RFP process conducted by Jefferson Parish, as well as an ultimate contract awarded to River Birch Landfill, including "improper use of public office, as well as other criminal violations of Louisiana law, including forgery, injuring public records, maintaining false public records, and malfeasance."

22.

[¶ 144]

Defendants have subsequently repeatedly falsely linked Abel and his business associates to criminal illegalities *falsely alleged* against a number of persons in the federal River Birch criminal investigation, now commendably abandoned by the Public Integrity Division of the Department of Justice on Friday, 8 March 2013. All such allegations were published of and concerning Abel on Slabbed related to these matters are defamatory *per se*.

23.

[¶ 145]

Vandenweghe's admitted contacts with the discredited and subsequently removed USAO River Birch team, in the first quarter of 2010 included, but were not limited to, New Orleans AUSAs Klebba and Kennedy.

24.

[¶ 146]

AUSA Kennedy, a supervisor in the New Orleans office, was put on notice by another AUSA in 2011, that Salvadore Perricone was blogging anonymously online about active USAO cases, acts of prosecutorial misconduct.

25.

[¶ 147]

Vandenweghe was also personally familiar with U.S. Attorney James Letten and 1st AUSA Jan Maselli Mann, who all attended Tulane University Law School at the same time. Jan Maselli Mann, her husband James Mann, and Salvadore Perricone were widely considered the triumvirate responsible for managing many broad aspects of the New Orleans USAO, including supervising AUSAs Klebba and Kennedy as well as team member Andre Lagarde—each of whom has information pertinent to this and related cases in this United States District Court.

Prior to the proper and commendable actions by the Public Integrity Division of the U.S. Department of Justice, presiding Judge Head removed team members Mann, Perricone, Klebba, Kennedy and Lagarde from the River Birch prosecution—as the result in large part of the investigation, discovery, and findings of prosecutorial misconduct by the Hon. Judge Kurt Englehardt.

Judge Englehardt excoriated the admitted misconduct by Perricone and Mann; in his 50 page order Judge Englehardt wrote:

"Aside from the ugly tincture they have placed on the otherwise good name of the U.S. Attorney's Office, the Court is also concerned that the activities of Perricone and former First AUSA Mann, both of those of commission and those of omission, might also constitute prosecutable criminal conduct."

"As it stands now, it seems clear that Perricone testified falsely in at least some important respects: first of all, his statement that no one in the office was aware that he was posting was surely false."

"Quite simply, no one, especially this Court, could reasonably find it credible that Perricone and former First AUSA Mann, while posting under the same nola.com articles, and responding to and echoing each other's' posts, were unaware of the identity of the other."

[It] is "inconceivable that Perricone did not know, at the time he gave sworn testimony, that "eweman" was seated only two chairs away…in the person of Former First AUSA Mann."

26.

[¶ 148]

Vandenweghe was personally familiar with the Harahan-based Lauricella family, beneficial owners of Waste Remediation of Plaquemines, LLC. She was [not] coincidentally a Minister in the church belonging to [the late] Marion "Sugar" Lauricella.

27.

[¶ 149]

Handshoe was personally familiar with the Smith & Fawer law firm that represented the Lauricella family as well as Waste Remediation of Plaquemines, River Birch's competitor in the waste disposal RFP.

28.

[¶ 150]

In particular, Handshoe was corporate officer, agent, incorporator, and accountant for corporate entities involved in the federal indictment, prosecution and conviction of Fred H. Goodson and Maria Goodson, among others, in the late 1990s for RICO, RICO conspiracy, mail fraud, money laundering, and use of interstate communications in aid of state bribery. Handshoe was high school classmate and personal friend of unindicted co-conspirator Alexandros Goodson.

29.

[¶ 151]

Smith & Fawer represented the Goodson interests during the criminal trial.

30.

[¶ 152]

During 2010-12, Smith & Fawer also represented individuals actively cooperating with the USAO's public corruption investigation instigated, at least in part, by Vandenweghe. Smith & Fawer has a history of specialization in representing individuals charged with federal crimes.

31.

[¶ 153]

Vandenweghe leaked damaging information and accusations to legal opponents of the Parish of Jefferson (including Jacqueline Patterson Edwards) and River Birch as well as the Metropolitan Crime Commission, USAO, New Orleans area print publications and TV stations.

32.

[¶ 154]

Vandenweghe began a conscious campaign of blogging and leaking to influence public opinion in favor of a positive resolution of her vendetta and her own legal complaints against Jefferson Parish, which coincidentally also favored the losers in the waste disposal RFP process.

33.

[¶ 155]

Vandenweghe's unethical and professionally questionable blogging activities were uncovered by an internal Parish investigation in 2010. She was later fired by the newly elected President of Jefferson Parish.

34.

[¶ 156]

In late 2009, a targeted goal of Defendants, media, and the USAO was turning public opinion to acknowledge as substantially true the rumor and innuendo that former Parish President Aaron Broussard had utilized Nova Scotia properties he owned or controlled in a criminal scheme. This would make Abel and his businesses be seen as culpable in a criminal conspiracy.

35.

[¶ 157]

It was much more spectacular to picture Broussard as clandestinely owning a 14,000 sq ft. luxury lodge than to state the truth about his two bedroom home in Nova Scotia.

36.

[¶ 158]

In April, 2011, nola.com published a full retraction of and apology for erroneous implications made by the Times-Picayune based on false tips received and republished by the MCC that Trout Point Lodge belonged to Aaron Broussard and was involved in un-ethical or illegal conduct.

37.

[¶ 159]

On the same day the Times-Picayune retraction was published online, then-AUSA Salvadore Perricone published a comment on nola.com casting doubt on the retraction and labelling it as premature. Perricone published the comment anonymously as "Henry L Mencken1951."

38.

[¶ 160]

On August 31, 2011, Abel's business Trout Point Lodge as well as his business partners Charles

Leary & Vaughn Perret filed a 1st amended complaint against Defendants in Nova Scotia Supreme Court.

39.

[¶ 161]

Handshoe was served personally on or around September 13, 2011. He defaulted in December, 2011, and was found liable for $427,000 in general, aggravated, and punitive damages as well as costs in February, 2012—one of the 18 largest defamation awards in Canadian history.

40.

[¶ 162]

Just prior to a damages assessment hearing in January, 2012, the USAO published a vaguely-worded paragraph in a Factual Basis filed connected to a guilty plea from Aaron Broussard's ex-wife.

41

[¶ 163]

The paragraph was full of loosely-worded innuendo regarding alleged illegalities involving Canada.

42.

[¶ 164]

A federal district court would later find the paragraph irrelevant and gratuitous to Parker's guilty plea and the Judge stopped AUSA Klebba from reading it into the record.

43.

[¶ 165]

At that time it was obvious that Defendants were trying to publicly implicate Abel's businesses, and thus Abel, in federal crimes.

44.

[¶ 166]

As of the time of the Nova Scotia judgment, Defendants were doubly motivated to influence public opinion against Abel, his partners, and his businesses, to defeat any promised enrolment of that judgment in the United States.

45.

[¶ 167]

In March, 2012, Trout Point Lodge, Leary, & Perret moved to enforce their judgment in Mississippi.

46.

[¶ 168]

On April 11, 2011, Abel's business in Nova Scotia, Trout Point Lodge, received a telephone call from the New Orleans USAO in which the person on the line pretended to have dialled a wrong number and hung up. Caller ID was not disabled, allowing the identity of the caller's location to easily be discerned.

47.

[¶ 169]

By early September, 2012, a federal judge in the Southern District of Mississippi was considering the fate of the $427,000 Nova Scotia defamation judgment against Handshoe, which Handshoe had opposed under the federal SPEECH Act.

48.

[¶ 170]

In October, 2012, Smith & Fawer amended their earlier lawsuit filed on behalf of Lauricella financial interests against River Birch and republished false allegations made by Handshoe and

Vandenweghe that Abel's businesses Trout Point Lodge and Cerro Coyote  were "shell companies" involved in a criminal racketeering (RICO) enterprise with Frederick Heebe, Jim Ward, River Birch Landfill, and Aaron Broussard, among others. Smith and his clients' statements are  defamatory *per se*.

49.

[¶ 171]

The lawsuit further alleged that:

Co-conspirators, associates and/or agents of Defendants prosecuted SLAPP lawsuits against the Times-Picayune, Fox 8 News, Anne-Marie Vandenweghe, and bloggers, in foreign countries that lack the same constitutional protections of free speech as guaranteed by the laws of the State of Louisiana and the United States of America, in an effort to silence investigation and to conceal the acts of the defendants and their coconspirators, committing libel tourism to thwart the protections of, and in contravention of, the First Amendment to the United States Constitution, the Federal SPEECH Act 28 U.S.C. 4104-4105, the Louisiana Rachel's Law Louisiana Code of Civil Procedure Article 2542, and the Louisiana American Laws for American Courts Act La. R.S. 9:6000. Said suits include the suit: entitled Trout Point Lodge, Ltd. A Nova Scotia Company, Vaughn Perret, and Charles Leary v. Doug K. Handshoe and numbered 12-cv- 90LG-JMR on the docket of the United States District Court for the Southern District of Mississippi; and, Trout Point Lodge, Ltd. A Nova Scotia Company, Vaughn Perret, and Charles Leary v. Louisiana Media Company, LLC and numbered Yar No 328248 on the docket of the Supreme Court of Nova Scotia.

50.

[¶ 172]

This was also a re-publication of Vandenweghe and Handshoe's words. "Co-conspirators, associates and/or agents of Defendants" referred to Abel, among others. Trout Point, Leary, and Perret lost

their motion for summary judgment before the Mississippi District Court under the federal SPEECH act; that decision was appealed to the 5th Circuit Court of Appeal. The statement that Abel, Abel's business partners and Abel's business filed fraudulent lawsuit in a conspiracy to silence criminal investigations in not only defamatory per se, it is contradicted by the express language in the order of the Chief District Judge for the Southern District of Mississippi, who wrote: " The Court Order on summary judgement was a matter of first impression for this Court, and there is no suggestion that the appeal was frivolous. This is defamatory *per se*.

51.

[¶ 173]

At the time the amended complaint was filed, it was not widely known that Anne-Marie Vandenweghe was a defendant in the Nova Scotia lawsuit, as she had been named in the lawsuit as a "Jane Doe" defendant.

52.

[¶ 174]

Not only was "Jane Doe" inexplicably unmasked by Smith & Fawer as Vandenweghe, Defendants Handshoe and Vandenweghe had advance knowledge of Smith & Fawer's filing of the amended complaint in State Court.

53.

[¶ 175]

The complaint was also published in its entirety the same day it was filed on Slabbed, and subsequently the same day on nola.com.

54.

[¶ 176]

The self-same digital pdf file of a scan of the complaint was published by both Slabbed and

Page 16 of  26

nola.com.

55.

[¶ 177]

The Smith & Fawer/Lauricella lawsuit was subsequently removed to federal court (Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC v. Frederick R. Heebe, et al., No. 2:12cv2596-NJB-KWR (E.D. La.)). It has been stayed.

56.

[¶ 178]

The federal docket was somehow erroneously altered to name Cerro Coyote and Trout Point Lodge as defendant RICO parties along with Aaron Broussard, further defaming the Plaintiff.

57.

[¶ 179]

Cerro Coyote and Trout Point Lodge were never parties to the Waste Remediation of Plaquemine litigation. Nor did Smith or Concrete Buster's name them as defendants although the suggestion that they were RICO defendants was given to the Federal Court in Mississippi and referenced by that Court in its first judgment—through a source unknown.

58.

[¶ 180]

The amended Concrete Busters suit also coincidentally explicitly adopted and re-alleged allegations made by Defendant Vandenweghe in her "whistleblower" lawsuit against Jefferson Parish. This was despite the fact that many of those allegations had already been dismissed in May, 2011, by the federal district court.

59.

[¶ 181]

The Concrete Busters lawsuit, the wide publication of which Abel holds the Defendants jointly responsible, further defamed Abel and constituted an unveiled attempt to influence the federal district court in Mississippi with doubts about the falsity of Defendant Handshoe's campaign of defamatory publications under the SPEECH Act.

60.

[¶ 182]

This was, in addition to everything else, a conspiracy to perpetrate a fraud on the court.

61.

[¶ 183]

On February 6, 2013, Handshoe published the following in a blog post: "I can confirm Danny Abel goon Chris Yount served me with the latest copyright suit from Leary and Perret yet I have still not been served the amended complaint from the suit against myself and Automattic."

62.

[¶ 184]

Daniel Abel does not have or employ "goons." A "goon" is defined in this context as "a man hired to terrorize or eliminate opponents." Mr. Abel does not terrorize or eliminate his opponents, and is not part of organized crime. This is defamatory per se.

63.

[¶ 185]

On February 6, 2013, Handshoe published a post entitled "Slabbed examines the harassment of private citizens expressing their opinion on Jefferson Parish Corruption: Part 2"

In that post, he stated:

I was notified by the FBI that Slabbed New Media was the potential victim of a cyber crime. Given the events surrounding the International House mystery commenter witch hunt we can certainly infer from a look at past events the people that would have motivation to hack and/or obtain access to information from Slabbed's database to obtain IP and email addresses.  Who would be the type of people that Fred Heebe would hire for the task?   We look to the New Orleans Personal Computer Club circa January, 2009 for clues . . .

64.

[¶ 186]

Handshoe then published a copy of an advertisement for a LSBA accredited CLE seminar at which Abel was a guest speaker. This publication directly imputes as well as implies through defamatory innuendo that Abel was involved in cyber crime and hacking of personal computers, which Handshoe further imputes is a federal crime in which the FBI would take interest.

65.

[¶ 187]

Abel has taught LSBA CLE accredited seminars in Internet research including how to detect and prevent hacking since 1998.  He has written similar works published by ThompsonWest, ie. WestLaw. He served on the Skills Faculty for Loyola Law School and taught CLE classes on both ethics and professionalism for at approximately twenty years. Defendants' statements are defamatory per se.

66.

[¶ 188]

On February 8, 2013, Handshoe published on the Slabbed blog a post entitled "Slabbed examines the harassment of private citizens expressing their opinion on Jefferson Parish Corruption: Part 3." The

title implicates Plaintiff Abel in the "harassment of private citizens." This is defamatory per se.

67.

[¶ 189]

In that post Handshoe published that Daniel Abel "controls Leary and Perret." In that same post, Handshoe published that Abel, Leary, and Perret, were "invading the privacy of 4 Slabbed internet commenters" and they were "Aaron Broussard's corrupt business associates." Handshoe further published: "If a crime was committed I think it is in these activities. The Goatherders obtained the court order by fraud and deception and are using the results of a perjured affidavit here in the US."

68.

[¶ 190]

"The Goatherders" refers to Abel, Perret, and Leary. Handshoe also published in the same post that there was "a futile attempt to domesticate the specious Canadian court order forcing Cox communications and AT&T Mobility to give up personal information and the usual suspects were involved including Trout Point Lodge Owner/ Aaron Broussard's shadow law partner Danny Abel." Handshoe published that Leary and Perret, as controlled by Abel, "dupe[d] a Canadian judge into issuing an order asking for IP addresses of American Citizens commenting on an American corruption scandal."

69.

[¶ 191]

Neither Plaintiff Abel nor his business associates have every harassed or invaded the privacy of private citizens commenting on Jefferson Parish corruption, whether on Slabbed or otherwise. Daniel Abel does not "control" Perret and Leary, and there is no criminal conspiracy headed by Daniel Abel, which is one implication of Handshoe's published words. The statement is defamatory *per se.*

70.

[¶ 192]

Neither Abel nor his business partners have ever obtained court orders based on fraud and deception, or used court orders in the United States that were obtained by fraud and deception.

71.

[¶ 193]

Daniel Abel has never attempted to domesticate or enforce a specious court order, and Mr. Abel was never Aaron Broussard's law partner or secretly Aaron Broussard's law partner.

72.

[¶ 193]

Daniel Abel never participated in the "duping" of a Canadian judge to invade the privacy of and harass private citizens in the United States as part of a massive conspiracy connected to organized crime, which is the imputation of this entire post. All of this is defamatory per se.

73.

[¶ 194]

On February 19, 2013, Handshoe published on Slabbed part of a letter that he had sent by facsimile to the Nova Scotia Supreme Court in Yarmouth, Nova Scotia purportedly on February 6, 2013. In that letter he stated:

To the extent the actions involving Mr. Leary, Mr. Perret and their Louisiana based business partner Danny Abel were perpetrated in 2 countries, my contact with the Federal Bureau of Investigation suggested I notify your court of the fraudulent actions of these litigants. I am actively cooperating with the FBI in hopes criminal charges can be brought against Mr. Leary here in the US and request your court take immediate action to address this deception and resulting invasion

of privacy that resulted from it. I would hope that the courts in Nova Scotia would consider installation of procedural safeguards so that a similar abuse of the process by dishonest litigants does not occur in the future.To the extent it has been alleged in a civil suit filed with the United States District Court in the Eastern District of Louisiana that Mssrs. Leary, Perret and Abel have been acting on behalf of organized crime figures in New Orleans, the impact of the of your courtroom being used in furtherance of a American organized crime conspiracy cannot be understated. Please be advised that with this letter I am also serving notice that any further attempts to deprive me or my media company of due process in a Canadian courtroom will be met with strong legal action here in US.

74.

[¶ 195]

In a comment to the same post, Handshoe published: "I have also concluded the allegations contained in the Concrete Busters amended complaint regarding coordination between the Goatherders and Team Heebe are factual."

75.

[¶ 196]

This publication implicates Daniel Abel in the commission of criminal fraud, deception of a judge, and invasion of privacy, which are all lies. This post directly accuses Abel of participation in organized crime and criminal conspiracy, including links to now known fabricated allegation of crimes alleged River Birch Landfill. This post also directly accuse Abel of participating in the violation of Handshoe due process rights in a Canadian court.

76.

[¶ 197]

Plaintiff Abel is not involved in organized crime or criminal conspiracy, and has never attempted to violate Mr. Handshoe's constitutional rights. In fact, the majority of Abel's practice is in the attempted protection of the constitutional and civil rights of citizens against corrupt public officials and certain local law enforcement agencies, 42 U.S.C. § 1983 Civil Rights Actions, First and Second Amendment actions including but only actions involving racism, hate-crimes, and hate-speech.

77.

[¶ 198]

Furthermore, Handshoe and Vandenweghe played a role in the confection of false and defamatory allegations that were republished in the Concrete Busters lawsuit, which is the "civil suit" referred to above. Those RICO allegations have no basis in fact, and that lawsuit fails completely to even allege any factual basis for its wild and unfounded allegations. Mr. Handshoe has no basis for stating that the Concrete Busters defamatory allegations are true in fact, and they are not. This is all defamatory per se.

78.

[¶ 199]

On February 26, 2012, Handshoe published a comment at the URL XXXXX: "Has being sanctioned for unethical behavior deterred Abel from engaging in more unethical, at best, behavior in the courts. I think not." This is defamatory per se, and Abel has never been sanctioned for "unethical behavior."

79.

[¶ 200]

In the case Handshoe appears to be referring to Abel publically challenged attorneys and sitting state court judges for being involved in a land theft scheme in St. Tammany Parish. The investigation into

that and other matters of public corruption in the 22nd Judicial District is ongoing.

80.

Conclusion

Concrete Busters and its owners did not get the landfill contract which they felt assured was in the[ir] bag, thereafter commenced the attempted but the fabricated prosecution against River Birch, its owners and employees, Aaron Brousard and uninvolved others. Defendants Vandenweghe and Handshoe were complicitous in the dissemination of such fabricated facts for the now discredited team of prosecutors. And as of 9 March 2013, the media is reporting that the team destroyed evidence probative of the River Birch parties' innocence.  In one instance, Handshoe and slabbed.org reported on a target letter which was signed on the same day it was reported, but three days before defense counsel received it.

Concrete Buster's own statement of facts is probative of its owners belief that the contract was theirs and the subsequent prosecution of River Birch [to which the Parish Counsel untimately awarded the landfill contract] was in part an attempt to wrestle the contract from River Birch. Both defendants Vandenweghe and Handshoe acted in concert with Concrete Busters, its owners and attorneys in the fabrication of facts and allegations as they had done in the past.

Handshoe was corporate officer, agent, incorporator, and accountant for corporate entities involved in the federal indictment, prosecution and conviction of Fred H. Goodson and Maria Goodson, among others, in the late 1990s for RICO, RICO conspiracy, mail fraud, money laundering, and use of interstate communications in aid of state bribery. Handshoe was high school classmate and personal friend of unindicted co-conspirator Alexandros Goodson. Concrete Buster's attorneys Smith & Fawer represented the Goodson interests during the criminal trial.

Defendants Douglas K. Handshoe and Anne Marie Vandenweghe have a history, habit, and practice of libel, maliciously defaming public officials including many judges of this Court as well as those

of the Civil and Criminal Courts of Orleans, the 24th Judicial District Court of Jefferson Parish, the United States Fifth Circuit Court of Appeal, and others—hiding behind blogger and commentor names asuming that their true identities would not be discovered. In fact most, if not all of their real identities have been discovered and are now known to both private parties and enforcement agencies.

Time frames, online postings when compared with dates of certain actions later taken by federal law enforcement agencies, suggest that defendants Vandenweghe and Handshoe have admittedly disseminated confidential information arising during the course of federal and state investigations of persons accused of and targeted with the commission of various crimes. As well, they have fabricated information so as to make a number of private as well as public persons appear to have committed such crimes, which accusations are in every instance, defamatory per se.

Statements made online and in subsequent legal documents and pleadings suggest that certain of their attorneys are complicit in and have facilitated Handshoe and Vandenweghe's defamation of the judges, other public officials, and private persons as well. While Handshoe is a certified public accountant, Anne M. Vandenweghe is herself an attorney in this very Court, which Court itself andwhose very judges she and Doug Handshoe continuously mock and maliciously defame.

Anne Marie Vandenweghe and Douglas K. Handshoe have also attacked and defamed a large number of private persons under the delusional guise that their attacks are protected speech under the First Amendment of the United States Constitution. If such attacks were protected speech, there would be no law curative of defamation. Actually, their attacks are classic displays of sociopathic behavior. And the conversations conducted between numerous bloggers have in fact proven to be none other than Anne Marie Vandenweghe conversing with herself, as did now discredited attorneys Perricone and Jan Mann. Plaintiff knows and shall reveal the real identify of each such blogger.

Their libel and maliciously defamatory statements have caused actual damages to both public officials including the judges in this Court and other courts, and to private persons, including the representative plaintiff.  They have demeaned the Courts and tried to cause these Courts to be held is disrepute in the community.

Prayer

Representative plaintiff asks that defendants Handshoe and Vandenweghe having been sited and summoned to answer this lawsuit, that after due process had, judgment be found in representative plaintiff's favor and in the favor of all other parties plaintiff who have joined this action, and that be damages, costs, fees, and penalties, such as are authorized under Louisiana law, where their damages occurred as proved by the evidence and facts heard and decided upon by a jury of their peers within the United States District Court for the Eastern District of Louisiana.

Respectfully submitted,                                       Certificate of Service

s/ Daniel G. Abel                                             s/ Daniel G. Abel

Daniel G. Abel [Bar No. 8348]                                 I have filed this pleading with
2421 Clearview Parkway                                        the Clerk of this Court using the
Legal Department - Suite 106                                  CM/ECF system on this 10th day
Metairie, Louisiana 70001                                     of March 2013, and thereby served
Telephone: 504.284.8521                                       all parties.
Facsimile: 888.577.8815
Email: danielpatrickegan@gmail.com