UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA        *        CRIMINAL NO.  11-299

            v.                          *        SECTION:    "HH" (SHF)

AARON F. BROUSSARD               *
THOMAS G. WILKINSON              *
                                   *        *        *

GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE INTRINSIC EVIDENCE
OR, ALTERNATIVELY, NOTICE OF "OTHER ACT" EVIDENCE PURSUANT TO
RULE 404(b) OF THE FEDERAL RULES OF EVIDENCE

NOW INTO COURT, through the undersigned Assistant United States Attorneys, comes

the United States, and hereby notifies the defendants of its intent to introduce intrinsic evidence of

other crimes, wrongs, and acts, in its case-in-chief, or alternatively, notifies the defendants of its

intent to introduce other crimes, wrongs, and acts in its case-in-chief pursuant to Rule 404(b) of the

Federal Rules of Evidence.

I.        INTRODUCTION & SUMMARY OF ARGUMENT

From in or around 2002 through 2010, defendant Aaron F. Broussard ("Broussard"), the

former Jefferson Parish President, with the assistance of others, including defendant Thomas G.

Wilkinson ("Wilkinson") engaged in widespread pattern of abusing his political office for private

gain in a number of different ways.  The pending indictment alleges three ways in which Broussard

1

EXHIBIT 7

sought to enrich or benefit himself or his family by abusing his office: (1) accepting bribes and payoffs from, among others, Bill Mack ("Mack") of First Communications Company ("FCC"), a Jefferson Parish vendor, in exchange for his influence and official acts to steer Parish and other business to FCC; (2) devising a scheme to employ, among others, his girlfriend and later-wife, Karen Parker ("Parker") with a job paid for by the taxpaying citizens of Jefferson Parish that she was not qualified and, in fact, did not perform; and (3) rewarding Wilkinson for, among other things, undertaking personal favors for Broussard including Wilkinson's efforts to use his influence at a local private school to assist a Broussard family member with the competitive admissions process. In each of these episodes, Broussard benefitted, including by his family collecting hundreds of thousands of dollars in unearned salary due to Parker's employment, and tens of thousands of dollars in bribes from his bribe payor(s). Likewise defendant Wilkinson, the Parish Attorney, benefitted from the conspiracy he had with Broussard as he enjoyed, among other things, Broussard's retention as Parish Attorney upon his taking office, and an approximately 84% increase in salary during Broussard's tenure.

These three instances, however, are not the only instances where Broussard, with the assistance and/or knowledge of others including Wilkinson, abused his position for private gain. In fact, Broussard had been using his influence as the Parish President to enrich himself for years – evidence which, among other things, harmonizes with the charged conspiracy and reflects the corrupt intent and pattern of conduct of the former Parish President and which the Government intends to introduce at trial, including:

- Broussard's receipt of other things of value from Jefferson Parish contractors,

2

EXHIBIT 7

including obtaining a large ownership interest in a company holding Canadian resort property for little or no capital contribution and having the Parish vendors supply the capital to maintain the company and its holdings;

- Misusing thousands of dollars in campaign funds and spending those funds his personal uses; and

- Factual allegations, including abuse of office, relating to charges brought against Broussard by the Louisiana Board of Ethics relating Broussard's tenure as Parish President.

As set forth in more detail below, the nearly identical characteristics (including purpose, time, personnel, and subject matter) between the above-listed wrongful conduct and the charged conduct reflects the intrinsic nature of this evidence – they are merely unlisted overt acts in furtherance of the charged conspiracy. *See infra*, Parts IV.A-C. Under controlling Fifth Circuit law, this evidence is intrinsic to the Indictment and is accordingly admissible. *See id.* Alternatively, these wrongful acts are also admissible under Rule 404(b) of the Federal Rules of Evidence to prove Broussard's intent, knowledge, common plan, and pattern of conduct relating to his repeated abuse of political office. *See infra*, Parts V.A-B.

## II. FACTUAL BACKGROUND

The Court is well aware of the facts of this case and therefore, they will only be repeated to the extent necessary for purposes of this Notice. A more detailed summary of the facts can be found in the pending Indictment and the Government's Opposition to defendant Thomas G. Wilkinson's Motion to Dismiss. *See* Rec. Doc. Nos. 117 (Indictment) and 142 (Opposition to Wilkinson's Motion to Dismiss).

## III. NOTICE OF EVIDENCE OF ADDITIONAL ACTS

Through this pleading, the Government puts the defendants on notice of its intent to admit

3

EXHIBIT 7

evidence of the following wrongful acts, all of which are relevant, probative, and necessary to provide the jury with a complete picture of the overarching conspiracy set forth in the Indictment:[1]

- *Broussard's receipt of a major ownership interest in a company holding Canadian resort property for little or no capital contribution, which was instead supplied by various Parish vendors*

Beginning in or around 2002, a company named Nova Scotia Enterprises, LLC ("NSE"), was formed. *See* Exhibit A at 1-5 (Articles of Organization and Initial Report of NSE). NSE was a holding company for several pieces of vacation rental property located in the Canadian province of Nova Scotia. *See* Ex. A at 11 (Operating Agreement of NSE at Section 2.3, noting purpose of company is to acquire and own real property). At various times from 2002 through 2010, there were up to twelve partners in NSE – many of which were Jefferson Parish contractors or prospective contractors. *See id.* at 32-34 (attachments to NSE Operating Agreement). Broussard was also a partner in NSE. *See id.* at 34. However, unlike almost every other partner in NSE, Broussard was given a large, *42% interest* in NSE for a small capital contribution to the company. *See id.* at 34 (reflecting Broussard's ownership interest) & 56 (NSE spreadsheet reflecting contributions made by NSE partners and noting that Broussard's contribution as approximately $782.60). By contrast, nearly $50,000 was contributed by several other NSE partners for the upkeep and maintenance of properties. *See id.* at 56. Significantly, many of the NSE investors who supplied the vast majority of the funds obtained a much *smaller* ownership interest than Broussard in NSE. *See id.* at 32-34 (reflecting 3% or 6% interest obtained by other partners in NSE). Most importantly and not coincidentally, during Broussard's tenure, many of the NSE partners, through their various

_____

[1] If applicable, a representative sample of some of the documentary evidence the Government seeks to admit relating to these acts is attached here. Additionally, for each of the wrongful acts, the Government anticipates presenting testimonial evidence at trial.

EXHIBIT 7

corporations, received contracts with, and work in, Jefferson Parish, worth millions of dollars, at the same time they were funding NSE and Broussard's corporate interest in it. Finally, Broussard sought, at the conclusion of his tenure as Parish President, to sell his ownership share in NSE – which was purchased for very little – for nearly $200,000, an extraordinary return on the minimal investment supplied by Broussard. *See id.* at 57-60 (correspondence and promissory note regarding Broussard sale). Thus, in sum, the Government will present evidence reflecting that various Jefferson Parish vendors (who sought and received work when Broussard was Parish President) supplied investments (a thing of value) for a company owned, in large part, and managed by, Broussard. *See* Exhibit A at 1-60.

- *Broussard's misuse of thousands of dollars in campaign contributions to pay for personal expenses*

From 2003, when he was first elected, through 2007, when he was re-elected, Broussard ran a political campaign that took in thousands of dollars annually from contributors. By law, such contributions are made for the purpose of supporting, opposing or otherwise influencing the nomination or election of a person to public office. *See* LSA-R.S 18:1483(6)(a). Broussard was prohibited by law from expending contributions for any personal use unrelated to a political campaign or the holding of public office or party position. *See* LSA-R.S. 18:1505.2(I)(1). Broussard was also required to report, on his annual campaign finance report, all legitimate campaign expenditures, which are defined as payments made for the purpose of supporting election to public office and included monies spent for general operating expenses. *See* LSA-R.S. 18:1483(9)(a). During this period of time (2003-2007), though being prohibited from doing so, Broussard spent tens of thousands of dollars in campaign contributions for personal expenses, all unrelated to political

5

EXHIBIT 7

campaigns or the holding of public office. For example, Broussard spent thousands of dollars, donated by voters, for an annual Lake Tahoe trip/vacation unrelated to his holding of office. *See* Exhibit B at 1-8 (campaign checks for annual Lake Tahoe trip). Broussard likewise spent over $1,000 on maintenance of a fish tank from contributors' wallets. *See id.* at 9-10. Thousands of dollars were also spent by Broussard from his campaign account for the purchase of Mardi Gras tickets and accessories. *See id.* at 11-18 (campaign checks for Mardi Gras purhcases). Broussard also used his campaign account to purchase tens of thousands of dollars in framing and artwork, along with thousands of dollars for sports tickets and wedding, holiday, and other gifts for friends. *See id.* at 19-34 (campaign checks for art expenses), 35-42 (campaign checks for miscellaneous gifts).

- *Broussard's receipt of things of value from Jefferson Parish contractors*

The pending Indictment specifically alleges a bribery scheme between Broussard and Bill Mack, a Jefferson Parish vendor, whereby Mack would corruptly pay Broussard approximately $1,500.00 per month in exchange for Broussard's efforts to steer Mack and his company, First Communications Company, telecommunications work. The Indictment also alleges Wilkinson's knowledge of, and role in, the Broussard-Mack bribery. Broussard's receipt of monies from Mack, however, was not the only time Broussard received things of value from Jefferson Parish vendors. At trial, the Government seeks to present testimonial evidence that Broussard, during his tenure as Parish President, received other things of value from Jefferson Parish contractors including dinners, gifts, and other things of value totaling thousands of dollars.

- *Pending ethics charges against Broussard due to misuse of office*

In December 2010, the Louisiana Board of Ethics filed several charges against Broussard for

EXHIBIT 7

misusing his office in a form similar to the evidence noted above. On December 17, 2010, the Louisiana Board of Ethics charged Broussard with a violation of Louisiana Revised Statute 42:1111A for receiving an improper thing of value from a Jefferson Parish employee. *See* Exhibit C at 1-3. On that same date, the Louisiana Board of Ethics filed additional charges against Broussard for misusing his political office – specifically, with receiving compensation from a Jefferson Parish contractor. *See* Exhibit C at 4-6. These ethics charges, like the evidence noted above, reflect Broussard's corrupt intent, the same state of mind required for the charged scheme in this case.

## IV.    THE DEFENDANTS' WRONGFUL ACTS ARE INTRINSIC EVIDENCE

In determining whether to admit relevant evidence, courts must first determine whether such evidence is "intrinsic" or "extrinsic." *See, e.g., United States v. Crawley*, 533 F.3d 349, 354 (5th Cir. 2008); *United States v. Freeman*, 434 F.3d 369, 374 (5th Cir. 2005). Generally, evidence of other acts is intrinsic "when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." *Freeman*, 434 F.3d at 374 (quoting *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990)). Where the evidence is "intrinsic" to the offenses charged, Rule 404(b) does not apply and the evidence is admitted with no further analysis. *See, e.g. Crawley*, 533 F.3d at 354; *United States v. Sumlin*, 489 F.3d 683, 689 (5th Cir. 2007); *Powers*, 168 F.3d at 749-50.

Evidence is also considered intrinsic if a conspiracy is alleged and the Government seeks to admit evidence of wrongful acts of the conspirators not specifically listed in the indictment, but committed in furtherance of the conspiracy. *See, e.g., Watkins*, 591 F.3d at 784-85; *Powers*, 168 F.3d at 749; *Garcia Abrego*, 141 F.3d at 174-76; *see also United States v. Quesada*, 512 F.2d 1043,

7

EXHIBIT 7

1046 (5th Cir. 1975). Such evidence may be admissible as intrinsic evidence as part of the Government's proof to show how the conspiracy came about, how it was structured, the purpose and modus operandi of the conspiracy, and how the defendants became members. *See, e.g.*, *Watkins*, 591 F.3d at 784-85 (citations omitted); *Garcia Abrego*, 141 F.3d at 175 (citations omitted); *United States v. Coleman*, 78 F.3d 154, 156-57 (5th Cir. 1996); *see also* 22 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5239, at 450-51 (1978) ("[i]n cases where the incident offered is a part of the conspiracy alleged in the indictment, the evidence is admissible... because it is not an 'other' crime."). Unlisted acts committed in furtherance of the charged conspiracy are admissible if they are factually similar – *in subject matter, purpose, personnel, and time* – to the specifically listed acts contained in the indictment. *See, e.g.*, *Watkins*, 591 F.3d at 784-85; *United States v. Carvajal*, 206 Fed. Appx. 391, 394 (5th Cir. 2006) (unpublished) (in drug conspiracy, non-pled drug deliveries to co-conspirator, which were then sold to others as part of the charged conduct, created logical link with the charged conspiracy and were thus intrinsic); *Garcia Abrego*, 141 F.3d at 175 (non-pled murders committed by defendant in drug conspiracy case were intrinsic because they were committed in furtherance of the charged enterprise); *see also United States v. Lucas*, 516 F.3d 316, 347 (5th Cir. 2008) (in environmental case involving discharge from septic tanks contained on lots sold by real estate developer, evidence of the developer's bribes to county supervisor in obtaining environmental approvals were overt acts in furtherance of the overall conspiracy and thus admissible).

For example, in *United States v. Watkins*, 591 F.3d 780 (5th Cir. 2009), the Fifth Circuit held that two prior acts of transporting drugs -- although not pled in the indictment -- were nonetheless admissible as intrinsic evidence to the charged conspiracy because of their similarities. *See* 591 F.3d

8

EXHIBIT 7

at 784-86. Specifically, the Fifth Circuit in *Watkins* noted that the two uncharged drug transports (1) utilized the same conspirators; (2) involved nearly identical modus operandi; (3) were similar in execution; and (4) were temporally proximate to the charged conspiracy. *See id.* at 785. The Fifth Circuit thus concluded the other acts were done in furtherance of the charged conspiracy and were accordingly intrinsic. *Id.*; *see Powers*, 168 F.3d at 749 (non-pled energy transactions between defendants were intrinsic because of their similarities in structure and because they reflected the conspiratorial relationship between the defendants); *United States v. Nichols*, 750 F.2d 1260, 1264-65 (5th Cir. 1985) (non-pled evidence of defendants' earlier efforts to import drugs was intrinsic evidence based on the similarities between the non-pled acts and the charged conduct); *see also United States v. Matthews*, 1994 WL 660543, at *1-2 (E.D. La. 1994) (non-pled drug transactions were admissible as overt acts based on their similarities with the listed overt acts).[2]

As applied here, the three episodes of wrongful conduct the Government seeks to admit – Broussard's improper ownership of NSE paid for by Parish vendors and receipt of other things of value from Jefferson Parish vendors; Broussard's misuse of his campaign funds; and the pending ethics charges – are acts committed by Broussard and others (including co-conspirators who will testify in this case) in furtherance of the charged conspiracy and these acts are therefore intrinsic and

---

[2]This rationale is not just limited to drug cases; in *United States v. McCormick*, 2010 WL 2616624 (3d Cir. 2010) (unpublished), the Third Circuit, in a corruption case involving extortion and bribes, held that an earlier payment by a city contractor to a public official – which was not pled in the indictment – was, again, nonetheless admissible as intrinsic evidence. *See* 2010 WL 2616624, at *1-2. In *McCormick*, the Third Circuit upheld the district court's ruling that the uncharged bribe payment was intrinsic to the conspiracy charge because it provided important proof regarding the defendant's membership, purpose, and participation in the charged conspiracy. *See id.* at *2; *see also United States v. Plaskett*, 2008 WL 441938, at *1 (D.V.I. Feb. 8, 2008) (in corruption case, non-pled evidence of kickback scheme was intrinsic because it established the defendant's participation in the charged conspiracy).

EXHIBIT 7

admissible.

## A.   Ownership of Canadian Resort Property & Receipt of Things of Value from Contractors

Broussard's receipt of things of value from Jefferson Parish contractors – including his receipt of an ownership interest in NSE for little contribution – mirrors his acceptance of bribes from Mack, conduct charged in the pending Indictment. *Compare* Exhibit A at 11-60 *with* Rec. Doc. No. 117 at 14-20, 22-23 (allegations and overt acts involving Broussard bribery with Mack).  As to subject matter, Broussard's receipt of his ownership interest in NSE – paid for by Jefferson Parish contractors – is no different than the payoffs he was receiving from Mack, albeit in a different, corporate form, as opposed to the individual checks he received from Mack. *Compare* Exhibit A at 11-60 *with* Rec. Doc. No. 117 at 14-20, 22-23.  His receipt of dinner, gifts, and other items from Jefferson Parish vendors, again, is no different than his receipt of monies from Mack.  As to the temporal relationship, like the charged conduct with Mack, Broussard's relationship with NSE began in 2002, when it was formed. *See* Ex. A at 1-5.  The value and ownership Broussard received from NSE (paid for by Parish vendors) took place from in or around 2002 through in or around 2010, which includes the very years Broussard was receiving payoffs from Mack. *See* Ex. A at 1-60. Similarly, the value of the dinners, gifts, etc. Broussard was receiving from vendors took place during his tenure as Parish President, just like the charged conduct.  Finally, both the wrongful conduct involved with NSE and other gifts from Parish vendors, on the one hand, and Mack/FCC, on the other hand, involves the same modus operandi: a public official (Broussard) receiving things of value (payoffs/gifts or ownership interests in corporate interests) where the payors receive work from the Parish under Broussard's purview. *Compare* Ex. A at 11-60 *with* Rec. Doc. No. 117 at 14-

10

EXHIBIT 7

20, 22-23. The many similarities reflect that Broussard's receipt of things of value from vendors (such as his NSE corporate interest, paid for by vendors seeking and obtaining work in Jefferson Parish), is merely an overt act – and thus admissible as intrinsic evidence – committed in furtherance of the charged conspiracy. *See, e.g.*, *Watkins*, 591 F.3d at 784-85; *Powers*, 168 F.3d at 749-50 (similarities in structure, timing, and personnel between non-pled business transactions and the charged transactions reflected that the non-pled acts were overt acts committed to further the conspiracy); *see also McCormick*, 2010 WL 2616624, at *1-2; *Plaskett*, 2008 WL 441938, at *1; *Matthews*, 1994 WL 660543, at *1-2 (non-pled drug transactions were similar in time, personnel, and execution, and they were thus overt acts committed in furtherance of the charged conspiracy).

## B. Personal Expenses paid by Campaign Funds

Likewise, Broussard's improper use of his campaign funds is admissible as an overt act in furtherance of the charged conspiracy. The conspiracy alleges that Broussard "sought to and did abuse his political office… in an effort to personally enrich himself." *See* Rec. Doc. No. 117 at 8. Concomitantly, the pending Indictment alleges that Broussard, with the assistance of others, sought to defraud the Parish and its citizens. *See id.* His misuse of campaign funds – funds derived from donors, including Parish constituents – is exactly the same subject matter as the charged indictment, just with a different payoff mechanism. The personnel between this wrongful episode and the charged conduct includes overlapping personnel, including defendant Broussard and one of his co-conspirators who has now pled guilty, Karen Parker. Additionally, Broussard's co-defendant, Wilkinson, was participated in some of Broussard's events paid for by campaign funds, including the Lake Tahoe trip. Temporally, Broussard's misuse of campaign funds occurred during the same time period as the charged conduct. *See* Ex. B at 1-42. Finally, the purpose between the charged

11

EXHIBIT 7

conduct and the misuse of his campaign funds was undoubtedly the same: to enrich Broussard through the abuse of his political office. *See id.* As with his receipt of monies and other things of value from Parish vendors, the similarities between his misuse of campaign funds and the charged conduct reflect that it is an intrinsic overt act in furtherance of the charged conspiracy and, as such, is admissible. *See, e.g.*, *Watkins*, 591 F.3d at 784-85; *Powers*, 168 F.3d at 749-50; *see also McCormick*, 2010 WL 2616624, at *1-2; *Plaskett*, 2008 WL 441938, at *1; *Matthews*, 1994 WL 660543, at *1-2 (non-pled drug transactions were similar in time, personnel, and execution, and they were thus overt acts committed in furtherance of the charged conspiracy).

### C.     Broussard's Ethics Charges

The pending ethics charges lodged against Broussard, along with the substance of those charges, are also overt acts in furtherance of the charged conspiracy. Both involve similar personnel (including Broussard as the hub of the wrongful conduct); subject matter (the pending ethics charges detail Broussard's wrongful receipt of things of value from Parish employees and contractors, just like the bribery charges); timing (the substance of the ethics charges took place from 2007 through 2009, the same years in which Broussard was executing his bribery and fraud scheme); and purpose (again, Broussard seeking to use his political office for personal enrichment). *Compare* Exhibit C at 1-6 *with* Rec. Doc. No. 117. Like the other wrongful conduct noted above, the ethics charges are thus admissible as overt acts in furtherance of the charged conspiracy. *See, e.g.*, *Watkins*, 591 F.3d at 784-85; *Powers*, 168 F.3d at 749-50; *see also McCormick*, 2010 WL 2616624, at *1-2; *Plaskett*, 2008 WL 441938, at *1; *Matthews*, 1994 WL 660543, at *1-2 (non-pled drug transactions were similar in time, personnel, and execution, and they were thus overt acts committed in furtherance of the charged conspiracy).

EXHIBIT 7

## V.    RULE 404(b) ALTERNATIVELY PERMITS THE ADMISSION OF EVIDENCE OF THE DEFENDANTS' WRONGFUL ACTS

If the Court finds the evidence of the other wrongful acts to be "extrinsic," it must evaluate the admissibility of that evidence through the prism of Rule 404(b) which provides that evidence of "other crimes, wrongs, or acts" may be admissible to show, among other things, "intent, preparation, plan, [and] knowledge." FED. R. EVID. 404(b).   In analyzing the admissibility of Rule 404(b) evidence, the Fifth Circuit follows the two-part test developed in *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978).  *See, e.g.*, *United States v. Sanders*, 343 F.3d 511, 517-18 (5th Cir. 2003).  The first prong of the *Beechum* test is to determine whether the evidence is "relevant to an issue other than the defendant's character," such as intent, knowledge, plan, pattern of conduct, or motive.  *See, e.g.*, *United States v. Schmidt*, 229 F.3d 1148, 2000 WL 1239189, at *9-10 (5th Cir. 2000) (unpublished); *Beechum*, 582 F.2d at 911.  If satisfied, the second prong of the *Beechum* test is to determine whether the evidence "possess[es] probative value that is not substantially outweighed by its undue prejudice and... meet[s] the other requirements of rule 403."  *Beechum*, 582 F.2d at 911. The Fifth Circuit has held that "all probative evidence is by its very nature prejudicial" and as a result, should only be excluded "sparingly."  *Powers*, 168 F.3d at 459 (citations omitted).

### A.    The Wrongful Schemes Are Admissible to Prove the Defendants' Intent.

Where a conspiracy is charged and the defendants raise the issue of intent – as the defendants have done here[3] – the Fifth Circuit routinely admits extrinsic act evidence because the Government is entitled to introduce the evidence to rebut the defendants' contentions regarding alleged lack of

---

[3]*See* Paul Rioux, *Broussard denies slate of 6 charges; Ex-Jefferson leader: 'It's a beautiful day,'* NEW ORLEANS TIMES-PICAYUNE, February 29, 2012 at B1 (Broussard's attorney stating "[b]ut the thing about it is that [Broussard] didn't do anything improper.") (attached as Exhibit D).

13

EXHIBIT 7

intent, especially given the difficulties associated with proving conspiracy charges:

> "[c]harges of conspiracy involve considerations not present in other criminal prosecutions... In every conspiracy case, ... a not guilty plea renders the defendant's intent a material issue and imposes a difficult burden on the government. Evidence of such extrinsic offenses as may be probative of a defendant's state of mind is admissible unless he 'affirmatively takes the issue of intent out of the case.'"

*United States v. Roberts*, 619 F.2d 379, 382-83 (5th Cir. 1980) (alterations not in original) (citations omitted); *Schmidt*, 2000 WL 1239189, at *10 (citation omitted); *see also United States v. Sanders*, 343 F.3d 511, 518 (5th Cir. 2003); *United States v. Gordon*, 780 F.2d 1165, 1174 (5th Cir. 1986); *United States v. Zeuli*, 725 F2d 813, 816 (1st Cir. 1984). Where the extrinsic acts are factually proximate to the charged conduct – especially as it relates to the issue of intent – the extrinsic evidence is relevant. *See, e.g.*, *Sanders*, 343 F.3d at 518; *Gordon*, 780 F.2d at 1173 (citing *Beechum*, 582 F.2d at 911); *United States v. Bailey*, 990 F.2d 119, 124 (3d Cir. 1993).

For example, in *United States v. Bailey*, 990 F.2d 119 (3d Cir. 1993), the Third Circuit, in a public official bribery scheme, admitted extrinsic evidence of a non-pled bribe accepted by the defendant, a state legislator, in exchange for official acts, including the public official's support and assistance of a bill pending in the state legislature. *See* 990 F.2d at 124. In determining relevancy, the Third Circuit analyzed the temporal relationship between the non-pled bribe and the charged conduct; the similarities between the two schemes; and whether the defendant placed intent at issue. *See id.* Ultimately, the Third Circuit found the non-pled bribe closely related to the charged conduct because they bore a temporal relationship (both bribes took place during the same legislative session) and were similar in factual matter, since both bribes involved the acceptance of money for the defendant's use of his political office. *See id.* Because the government was required to prove the

14

EXHIBIT 7

public official's intent, the Third Circuit held that "[t]he evidence of a prior similar act of accepting money for his actions as a legislator was admissible to show intent and absence of mistake" and, indeed, its admission was "necessary to counter [the defendant's] claim of lack of intent." *Id.* (citation omitted). Scores of other cases, with analogous facts, have reached the same conclusion.[4]

Moreover, in fraud-based cases, courts analyzing relevancy of evidence under *Beechum* have held that where the state of mind required for the charged conduct and the state of mind of the "other acts" is the same, the relevancy test under *Beechum* is met. *See Crawley*, 553 F.3d at 354-55 (citations omitted); *Sanders*, 343 F.3d at 518; *Gordon*, 780 F.2d at 1173-74 ("[a] finding that the offenses involved the same state of mind renders the extrinsic evidence relevant to an issue other than character because it lessens the likelihood that the defendant acted with lawful intent in connection with the charged offense."). Here, as set forth below, the three episodes of wrongful conduct the Government seeks to admit are admissible to prove the intent of Broussard and others because they contain many, and in some cases, identical, parallels with the charged conduct and reflect the defendants' deceitful intent.

### 1.    Ownership of Canadian Resort Property

Broussard's receipt of his NSE ownership interest – paid for by Parish vendors – reflects the

---

[4]*See, e.g.*, *United States v. Weston*, 962 F.2d 8, 1992 WL 90554, at *3-4 (4th Cir. 1992) (in corruption case, evidence of other bribery scheme, which was not charged in the indictment, was admissible to prove intent); *United States v. Bruno*, 809 F.2d 1097, 1106 (5th Cir. 1987) (in public corruption case, admission of prior non-pled bribery schemes was relevant to prove intent); *United States v. Jenkins*, 785 F.2d 1387, 1395 (9th Cir. 1986) (in insurance fraud conspiracy, evidence of uncharged, fraudulent actions in connection with prior loans was admissible under Rule 404(b) to prove, among others, intent); *see also United States v. Saada*, 212 F.3d at 223-24 (3d Cir. 2000) (evidence of defendant's involvement in another fraud is admissible to prove, among others things, intent to defraud); *United States v. Primrose*, 718 F.2d 1484, 1491-92 (10th Cir. 1983) (evidence of 45 non-pled kickbacks received by defendant public official was admissible to show intent) (citations omitted).

EXHIBIT 7

same fraudulent and corrupt intent he had in perpetrating the schemes charged in the indictment. Indeed, the similarities are striking – they involved the same purpose (Broussard to enriching himself based on the abuse of his political office); mode of execution (receiving payoffs/things of value from Parish vendors); personnel (Broussard and various Parish vendors); and time period (Broussard's receipt of these things of value took place from 2002-2010). *Compare* Ex. A at 1-60 *with* Rec. Doc. No. 117 at 14-20, 22-23. His receipt of an ownership interest in NSE is "not tenuous to the charges in the indictment because it involve[s] the acceptance of money for the use of his political office." *Bailey*, 990 F.2d at 124. Moreover, just like Broussard's illegal arrangement with Mack, he sought to structure the NSE deal in a way that "legitimizes" the transaction as a business transaction, as opposed to the corrupt one that it was – a fact that cuts against any anticipated argument by Broussard that he was mistaken in his belief that monies from contractors was prohibited by law. *See, e.g. Jenkins*, 785 F.2d at 1395 ("[t]he fact that [the defendant] used fraudulent means [in a prior bad act] is probative on issues of intent, knowledge, good faith and absence of mistake..."). The intent necessary for Broussard to seek and receive payoffs from Parish vendors like Mack is the identical state of mind necessary for his receipt of a hefty ownership interest in NSE paid for by Parish vendors. The similarities in conduct reflects this corrupt intent and, because Rule 404(b) permits the introduction of wrongful act evidence to prove Broussard's intent, his receipt of an ownership interest in NSE – a thing of value paid for by Parish vendors – is admissible. *See Bailey*, 990 F.2d at 124; *Weston*, 1992 WL 90554, at *2-3; *Bruno*, 809 F.2d at 1106; *Jenkins*, 785 F.2d at 1385; *Primrose*, 718 F.2d at 1491-92.

## 2. Personal Expenses paid by Campaign Funds

Broussard's fraudulent and corrupt intent, as charged in the Indictment, is further proven by

16

EXHIBIT 7

his solicitation of funds from campaign contributors for the ostensible purpose of supporting his election when, in reality, Broussard would use these funds for myriad personal reasons. *See* Exhibit B at 1-42. This uncharged conduct is relevant because it is factually proximate to the charged conduct: it required the same fraudulent intent, during the same time period, as the conduct alleged in the Indictment. Accordingly, under Rule 404(b) of the Federal Rules of Evidence, it is admissible. *See Crawley*, 553 F.3d at 354-55 (where state of mind in perpetrating the non-pled conduct is the same as the charged conduct, extrinsic act evidence is admissible) (citations omitted); *Sanders*, 343 F.3d at 518; *Gordon*, 780 F.2d at 1173-74; *Davis*, 2003 WL 1837708, at *2 (where the extrinsic evidence is similar to the charged conduct, relevancy is "heighten[ed].").

### 3. Broussard's Receipt of Things of Value from Jefferson Parish Vendors

Like his ownership interest in NSE, Broussard's receipt of other things of value from Jefferson Parish vendors reflects the same corrupt and fraudulent intent he had when perpetrating the charged scheme. As with the above-listed wrongful conduct, it is factually proximate – Broussard's already been charged with receiving bribes and payoffs from Bill Mack; the 404(b) evidence the Government seeks to admit here is his receipt of bribes and payoffs, in several forms, from various other Jefferson Parish contractors. The timing is similar – both took place during the years of his parish presidency. Finally, and perhaps most important is that Broussard's state of mind is identical – in receiving bribes from Parish vendors in exchange for his official acts, Broussard employed a corrupt state of mind, as he did with the scheme alleged in the Indicmtnent. Accordingly, under Rule 404(b) and applicable case law, the Government's evidence of Broussard's receipt of things of value is admissible. *See Bailey*, 990 F.2d at 124; *Weston*, 1992 WL 90554, at *2-3; *Bruno*, 809 F.2d at 1106; *Jenkins*, 785 F.2d at 1385; *Primrose*, 718 F.2d at 1491-92.

17

EXHIBIT 7

### 4. Broussard's Ethics Charges

Like his receipt of an ownership interest in NSE, the pending ethics charges – which detail Broussard's improper receipt of things of value from Parish vendors or employees – reflect many similarities with the charged conduct. These similarities include the same purpose; mode of execution; personnel; and timing. Because Broussard required the same fraudulent to undertake his bribery scheme with Mack as he did with the substance of the ethics charges, this evidence is admissible to demonstrate Broussard's intent under Rule 404(b). *See Crawley*, 553 F.3d at 354-55 (where state of mind in perpetrating the non-pled conduct is the same as the charged conduct, extrinsic act evidence is admissible) (citations omitted); *Sanders*, 343 F.3d at 518; *Gordon*, 780 F.2d at 1173-74; *Davis*, 2003 WL 1837708, at *2 (where the extrinsic evidence is similar to the charged conduct, relevancy is "heighten[ed].").

### B. The Wrongful Schemes Are Also Admissible to Prove the Defendants' Knowledge and Pattern of Conduct.

Courts also routinely admit evidence of non-pled schemes to prove the knowledge of the defendants, including knowledge of a particular industry or knowledge of how the charged scheme or operation functioned. *See, e.g. United States v. Marti*, 294 Fed. Appx. 439, 446-47 (11th Cir. 2008) (unpublished) (in healthcare fraud and kickback scheme, admitting extrinsic evidence of separate, non-pled scheme to prove the defendant's knowledge of doctors and healthcare clinics); *United States v. Nguyen*, 504 F.3d 561, 574 (5th Cir. 2007) (admitting extrinsic evidence of real estate scheme to prove intent and knowledge in charged real estate scheme); *United States v. Williams*, 900 F.2d 823, 825-27 (5th Cir. 1990) (admitting extrinsic evidence of similar offense to prove, among other things, knowledge of the scheme). For example, in *United States v. Nguyen*, 504

18

EXHIBIT 7

F.3d 561 (5th Cir. 2007), the Fifth Circuit admitted evidence of two fraudulent and non-pled real estate transactions to show that the charged real estate scam followed a similar pattern and demonstrated the defendant's intent and knowledge of the industry and the charged operation. *See* 504 F.3d at 574. Even though the uncharged real estate transactions were separate transactions, the *Nguyen* court found that "the evidence of [the uncharged real estate scams] demonstrated how the operation worked and therefore established [the defendant's] knowledge and intent." *Id.* at 574.

Courts have additionally admitted evidence of non-pled schemes to prove that the defendants employed a common plan or pattern of conduct charged in the indictment. *See United States v. Aguilar*, 59 Fed. Appx. 326, 329, 2003 WL 509671, at *3 (10th Cir. 2003) (unpublished) (in case charging defendant with aiding and abetting marriage for the purpose of evading immigration laws, evidence of defendant's prior advice and other attempts to arrange marriages for illegal aliens was admissible to prove common plan); *United States v. Murphy*, 768 F.2d 1518, 1535 (7th Cir. 1985) (in extortion case involving state judge who extorted defendants and accepted bribes in connection with fixing cases, evidence that judge had received envelopes of cash on a monthly basis was admissible prove a common plan); *United States v. Adcock*, 558 F.2d 397, 401-02 (8th Cir. 1977) (in extortion and tax case, testimony concerning genesis of extortion scheme was admissible to show common plan); *United States v. Sims*, 430 F.2d 1089, 1092 (6th Cir. 1970) (in bribery case, testimony implicating the defendant in similar bribery schemes was admissible to show common design). As set forth below, all three episodes of wrongful conduct are relevant to prove Broussard's knowledge and employment of a common plan or pattern of conduct.

19

EXHIBIT 7

### 1. Ownership of Canadian Resort Property & Receipt of Other Things of Value From Jefferson Parish Vendors

As noted above, Broussard sought to obtain things of value from Jefferson Parish vendors in a concealed manner. The indictment alleges one way in which Broussard did this: receiving monthly checks from a vendor in which he sought to mask the purpose of the payments. *See* Rec. Doc. No. 117 at 14-20, 22-23. His receipt of an ownership interest in NSE, as well as his receipt of other things of value (gifts, etc.) from vendors are other forms of the same conduct: receiving something of value paid for by Jefferson Parish vendors. *See* Ex. A at 1-60. This conduct reflects Broussard's knowledge of concealment of his illegality, as well as his employment of a similar pattern or plan of conduct to abuse his office for private gain while attempting to mask the purpose of the payoffs in an effort to hide the wrongfulness of his arrangements. *See Aguilar*, 59 Fed. Appx. at 329, 2003 WL 509671, at *3; *Murphy*, 768 F.2d at 1535; *Adcock*, 558 F.2d at 401-02; *Sims*, 430 F.2d at 1092 (in bribery case, testimony implicating the defendant in similar bribery schemes was admissible to show common design). Accordingly, because it reflects Broussard's knowledge and pattern of conduct, it is admissible under Rule 404(b). *See id.*

### 2. Personal Expenses paid by Campaign Funds

The wrongful spending of campaign funds for personal uses demonstrates the knowledge of Broussard in abusing the trust placed in him as a public official in a way that continued to enrich Broussard, just as he did in the charged conspiracy. *See Marti*, 294 Fed. Appx. at 447; *Nguyen*, 504 F.3d at 574. Additionally, the expenditures of personal funds from campaign contributors, just like the placement of his unqualified love interest in a specially-created job funded by taxpayer monies, fits a plan or pattern of conduct employed by Broussard: abuse his office in a way that enriches him.

EXHIBIT 7

Such a structure reflects a plan or pattern of conduct Broussard implemented to achieve his corrupt intentions. *See Aguilar*, 59 Fed. Appx. at 329, 2003 WL 509671, at *3; *Murphy*, 768 F.2d at 1535; *Adcock*, 558 F.2d at 401-02; *Sims*, 430 F.2d at 1092.

### 3. Broussard's Ethics Charges

As with his ownership in NSE, the substance of Broussard's ethics charges – his receipt of things of value from Jefferson Parish vendors and employees – demonstrates the overarching purpose and pattern of conduct in this case: a public official seeking to abuse his office for private gain. Once again, the knowledge of *how* to structure a transaction to mask its illegality is demonstrated by the ethics charges, just as he attempted to do with the payoffs he was receiving from Mack and his company, FCC. *See Aguilar*, 59 Fed. Appx. at 329, 2003 WL 509671, at *3; *Murphy*, 768 F.2d at 1535; *Adcock*, 558 F.2d at 401-02; *Sims*, 430 F.2d at 1092. Similarly, the pattern of conduct between this episode and the charged conduct is the same. *See id.* Accordingly, this evidence is admissible. *See id.*

### C. Evidence of the Defendants' Acts is More Probative Than Prejudicial.

Probative evidence is, by its very nature, prejudicial; it is only when the prejudicial effect *substantially outweighs* the probative value of the evidence that it should be excluded. *See, e.g.* FED. R. EVID. 403; *Beechum*, 582 F.2d at 911-18 (emphasis added). Indeed, probative evidence should only be excluded when it is of such an "inflammatory nature that [it] could lead the jury to decide the case on an improper basis." *United States v. Dowl*, 2009 WL 1507412, at *7 (E.D. La. 2009). The Fifth Circuit has held that, when making a determination under Rule 403 as to extrinsic evidence, trial courts should review the similarities between the non-pled evidence and the charged scheme; the more factually proximate the evidence is, the more likely the probative value outweighs

21

EXHIBIT 7

any prejudicial effect. *See, e.g. United States v. Mendoza*, 587 F.3d 682, 689 (5th Cir. 2009); *Beechum*, 582 F.2d at 915. Here, the highly probative nature of the four types of wrongful conduct – which include nearly identical schemes and conduct as those charged in the Indictment[5] – unquestionably outweighs any prejudicial effect the defendants may assert. *See United States v. Wolford*, 2010 WL 2802404, at *3-4 (5th Cir. July 15, 2010) (unpublished) (evidence of pornographic images of children, as well as transcripts of anonymous online internet chats relating to the defendant's interest in having sex with minor children, were more probative than prejudicial in case against defendant charged with enticing a minor to have sex) (citation omitted); *Mendoza*, 587 F.3d at 689 (in drug case, evidence of defendant's prior involvement in conspiracy to sell drugs was more probative than prejudicial, particularly because the defendant placed his intent at issue and because of the factual and temporal similarities between the uncharged conduct and the charged conduct) (citations omitted); *United States v. Shows*, 307 Fed. Appx. 818, 822, 2009 WL 139575, at *3-4 (5th Cir. 2009) (unpublished) (in tax evasion case, evidence of defendant's lack of prior year tax returns were more probative than prejudicial because, in part, they negated the defendant's good faith defense) (citation omitted); *United States v. Roberts*, 619 F.2d 379, 383-84 (5th Cir. 1980) (in gambling prosecution, prior convictions of defendant for crimes identical to those for which he was on trial were more probative than prejudicial).[6] Given the high hurdles of proving the Government's

---

[5]*See supra*, Parts IV.A-C.

[6]*See also Bailey*, 990 F.2d at 124-25 (evidence of public official's acceptance of a bribe was more probative than prejudicial and "was not the sort which excites emotionalism in a jury so as to lead [] to an irrational verdict"); *United States v. Zeuli*, 725 F.2d 813, 816-17 (1st Cir. 1984) (in extortion case, evidence of uncharged extortion scheme was more probative than prejudicial because it was relevant to intent and it would not lead to a genuine risk that the "emotions of the jury will be excited to irrational behavior").

EXHIBIT 7

case, the many similarities between the non-pled conduct and the charged scheme,[7] and controlling Fifth Circuit case law, the probative nature of this evidence outweighs any prejudicial effect. *See id.* Moreover, to the extent the Court is concerned about this evidence, the Fifth Circuit has repeatedly approved the use of limiting instructions to ward off any potential prejudice. *See, e.g. Shows*, 307 Fed. Appx. at 822, 2009 WL 139575, at *3-4; *Crawley*, 533 F.3d at 355; *Nguyen*, 504 F.3d at 574; *Sanders*, 343 F.3d at 518; *United States v. Cihak*, 137 F.3d 252, 258 (5th Cir. 1998). Accordingly, Rule 403 does not serve as a basis to exclude the probative evidence described herein.

## VI. THE EVIDENCE MAY BE ADMITTED WITHOUT A PRE-TRIAL HEARING

In *Huddleston v. United States*, 485 U.S. 681 (1988), the Supreme Court concluded that a court may issue a ruling on evidence seeking to be admitted under Rule 404(b) without a pre-trial hearing. *See* 485 U.S. at 687-88. In that case, the Court held that "the district court need not itself make a preliminary finding that the Government has proved the 'other act' by a preponderance of the evidence before it submits 'similar acts' and other Rule 404(b) evidence to the jury." *Id.* In that opinion, the Court admitted similar prior property crimes, without proof thereof by a preponderance of the evidence, to show guilty knowledge, system, and intent. *See Huddleston*, 485 U.S. at 687-88 ("[t]he text ... [of Rule 404(b)] ... contains no intimation ... that ***any preliminary showing*** is necessary before such evidence may be introduced for a proper purpose.") (emphasis added). To meet its low burden under *Huddleston*, the government need only provide "*some evidence* that the defendant committed the bad act." *United States v. Crawley,* 533 F.3d 349, 354 (5th Cir. 2008); *United States v. Gonzalez-Lira*, 936 F.2d 184, 189 (5th Cir. 1991); *see also Beechum*, 582 F.2d at 913 (if a jury could "reasonably find" the fact to exist, that fact may be admitted into evidence).

---

[7] *See supra*, Part IV.

EXHIBIT 7

Here, a pre-trial hearing as to the proof of these acts is unnecessary for several reasons. First, the substantial amount of evidence attached hereto clearly meets the low burden that *Huddleston* and *Beechum* set: that is, the evidence establishes that, among others, Broussard committed or assisted in committing, these wrongful acts. *See, e.g.*, Exs. A at 1-60 (NSE corporate records reflecting Broussard's role); B at 1-42 (Broussard's campaign checks); C at 1-6 (Ethics charges pending against Broussard). Additionally, all of the attached evidence has been produced in discovery in this case or is otherwise publicly-available. Consequently, the Court can readily determine the admissibility of the items attached before trial and without conducting a pre-trial hearing. *See, e.g. Huddleston*, 485 U.S. at 690-91; *Crawley*, 533 F.3d at 354; *Dowl*, 2009 WL 1507412, at *4-7 (admitting intrinsic and extrinsic evidence without a pre-trial hearing).[8]

---

[8]Moreover, to the extent Broussard testifies in his own defense, the rules of evidence and applicable authorities permit the cross-examination of his with respect to these bad acts. *See, e.g.* FED. R. EVID. 608(b) (permitting the introduction of specific instances of conduct for cross-examination purposes if the acts concern the witness's character for truthfulness); FED. R. EVID. 611(b) (cross-examination can concern matters affecting the credibility of the witness); *United States v. Akpan*, 407 F.3d 360, 373 (5th Cir. 2005) (a defendant "forfeit[s] the protection of Rule 404(b) when [the defendant] place[s] his character at issue by testifying at trial.") (alterations not in original). Here, the wrongful acts noted above clearly concern Broussard's credibility and character for truthfulness. *See, e.g. United States v. Oriyomi*, 449 Fed. Appx. 681, 682 (9th Cir. Aug. 29, 2011) (unpublished) "[e]vidence of prior frauds is considered probative of the witness's character for truthfulness or untruthfulness" under Rule 608(b)) (citation omitted); *Akpan*, 407 F.3d at 373 (perjury, fraud, swindling, forgery, bribery, and embezzlement are instances of misconduct clearly probative of truthfulness) (citation omitted).

24

EXHIBIT 7

## VII. CONCLUSION

For the reasons mentioned above, the United States respectfully submits that the evidence of the defendants' acts, as set forth above, should be admitted during its case-in-chief as being relevant and extremely probative as they relate to the acts charged in the pending Indictment.

Dated: August 31, 2012

Respectfully Submitted,

JIM LETTEN
UNITED STATES ATTORNEY


/s/ Matthew S. Chester
MATTHEW S. CHESTER
Texas Bar No. 24045650
BRIAN M. KLEBBA
New York Bar No. 2938728
DANIEL P. FRIEL
Massachusetts Bar No. 660583
Assistant United States Attorneys
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3000

EXHIBIT 7

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Matthew S. Chester
Matthew S. Chester
Assistant U.S. Attorney

EXHIBIT 7

# EXHIBIT A

EXHIBIT 7



**UNITED STATES OF AMERICA**

**State of Louisiana**

## Fox McKeithen
### SECRETARY OF STATE

*As Secretary of State, of the State of Louisiana, I do hereby Certify that*

a copy of the Articles of Organization and Initial Report of

**NOVA SCOTIA ENTERPRISES, L.L.C.**

Domiciled at KENNER, LOUISIANA,

Was filed and recorded in this Office on May 20, 2002,

And all fees having been paid as required by law, the limited liability company is authorized to transact business in this State, subject to the restrictions imposed by law, including the provisions of R.S. Title 12, Chapter 22.

*In testimony whereof, I have hereunto set my hand and caused the Seal of my Office to be affixed at the City of Baton Rouge on,*

May 20, 2002



BFR 35274067K
*Secretary of State*

CERTIFICATE SS 102 S (R-3/68)

FOX MCKEITHEN
Secretary of State
Received & Filed
DATE MAY 2 0 2002

ARTICLES OF ORGANIZATION

OF

NOVA SCOTIA ENTERPRISES, L.L.C.

UNITED STATES OF AMERICA

STATE OF LOUISIANA

PARISH OF JEFFERSON

**********************************************************************

BE IT KNOWN, that on this 9th day of May, 2002, before me, the undersigned, a Notary Public, in and for the Parish of Jefferson, State of Louisiana, duly commissioned and qualified, personally came and appeared, AARON F. BROUSSARD, a person of the full age of majority and domiciled in the Parish of Jefferson, State of Louisiana of who declared under oath and to me, Notary, in the presence of the undersigned competent witnesses, that he hereby avails himself of the provisions of the Louisiana Limited Liability Company Law (**LSA R.S. 12:1301, et seq.**), and does hereby organize a limited liability company pursuant to said law, under and in accordance with the following Articles of Organization to-wit:

## ARTICLE I

The name of this limited liability company is **NOVA SCOTIA ENTERPRISES, L.L.C.**

## ARTICLE II

The purpose of this limited liability company is to engage in any lawful activity for which limited liability companies may be formed under Chapter 22 of Title 12 of the Louisiana Revised Statutes Annotated.

## ARTICLE III

The company shall be managed by a manager or managers.

EXHIBIT 7

## ARTICLE IV

NOVA SCOTIA ENTERPRISES, L.L.C., is organized for a term beginning with the effective date of the organization of **NOVA SCOTIA ENTERPRESES, L.L.C.** and ending on December 31, 2099.

## ARTICLE V

The full name and street address of the organizer is AARON F. BROUSSARD, 3329 Florida Avenue, Kenner, Louisiana 70065.

**THUS DONE AND PASSED**, in multiple originals, in the Parish of Jefferson, State of Louisiana, on the date, herein first above written, in the presence of the undersigned competent witnesses who have hereto signed their names with the said appearer and me, Notary, after due reading of the whole.

WITNESSES:

AARON F. BROUSSARD

NOTARY PUBLIC