YAR 1 SC 110520
YAR 328248

<u>IN THE SUPREME COURT OF NOVA SCOTIA</u>

<u>BETWEEN:</u>

TROUT POINT LODGE LIMITED

APPLICANT

– and –

LOUISIANA MEDIA COMPANY, LLC

RESPONDENT

_____

DECISION
_____

| | |
|---|---|
| HEARD BEFORE: | The Honourable Justice Pierre Léon Muise |
| COUNSEL: | Dr. Charles Leary Self-Represented as Agent and Officer of Trout Point Lodge Limited |
| PLACE: | Yarmouth JC1, Yarmouth, N.S. |
| DATE HEARD: | May 30, 2011 |

INDEX
TROUT POINT LODGE LIMITED V. LOUISIANA MEDIA LLC
MAY 30, 2011

Decision by the Court ...............................3

1 DECISION BY THE COURT
2

3        THE COURT:      And Sheriff, you can open the

4        door to the courtroom as well, okay.  This is the

5        matter of Trout Point Lodge Limited and Louisiana

6        Media Company, LLC.  It is File Number YAR

7        328248.  There is a motion before the court by

8        Trout Point for an order requiring Automattic

9        Inc., "Automattic" spelled with two t's at the

10       end, to reveal the information regarding the

11       identity of some registered Wordpress.com users.

12       Automattic Inc. is a California corporation which

13       hosts a blogging website called Wordpress.com.

14       Wordpress.com in turn hosts a blog named Slabbed

15       with the URL Slabbed.wordpress.com.  Telemachus

16       and unslabbed are two registered users on

17       Slabbed.  Soft81_1 is the purported owner and

18       publisher of the blog.  As the entity in charge

19       of the blog, Soft81_1 controls what appears on

20       it.  All three maintain an anonymous identity.

21       Trout Point alleges that their blogs or postings

22       are prima facie defamatory and refers to the

1      publications of Louisiana Media.  And they appear

2      to be closely connected with Louisiana Media.

3      Trout Point asks that I order Automattic Inc. to

4      produce information revealing the identity of

5      these anonymous entities on the basis that they

6      will either be added as defendants in the within

7      action or added as defendants in a separate

8      action and are material witnesses in the within

9      action.  Automattic has no part in what appears

10     in the blogs.  It only provides the service.

11          This motion is made pursuant to Civil

12     Procedure Rule 14.12 which permits a judge to

13     order a third party to produce a relevant

14     document.  It is made within this action by Trout

15     Point against Louisiana Media.  It is not a pure

16     motion for production at a pre-commencement of

17     action stage as was the case in AB and Bragg

18     Communications Inc., [2010] N.S.S.C. 215 and in

19     Mosher and Coast Publishing Limited, [2010]

20     N.S.S.C. 153.  However the test is — the same

21     test is applicable to determining whether

1    production of anonymous bloggers' identifying

2    information should be ordered so that it can be

3    added as parties to the within action.  That is

4    the same test as in Bragg and Mosher.

5        In the case at hand there is also a question

6    of whether the requested information is relevant

7    to an issue to be determined in the existing

8    action against Louisiana Media.  I will deal with

9    that first.  2009 Civil Procedure Rule 14.01

10   defines relevant and relevancy for the purposes

11   of production and disclosure as "having the same

12   meaning as a trial of an action or on the hearing

13   of an application."  This trial relevance test

14   replaced the old semblance of relevance test.

15   The Chambers Judge must now assume, as best as he

16   or she can, the vantage point of a trial or an

17   application judge and apply general evidence law.

18   The determination is based on the pleadings and

19   the evidence known to the judge.  However, there

20   should still be liberal disclosure of relevant

21   information and I refer to — in support of this I

1    refer to Brown and Cape Breton Regional

2    Municipality, [2011] N.S.C.A. 32, at Paragraphs 8

3    to 13.    The onus is on the plaintiffs to

4    establish that the information they seek is

5    relevant.   Justice LeBlanc in Murphy and Lawtons

6    Drug Stores Limited, [2010] N.S.S.C. 289 at

7    Paragraph 16 cited with approval at Paragraph 3.3

8    from the Law of Evidence, 5th Edition 2008, David

9    Paciocco and Lee Stuesser which included the

10   following comments:

11

12             "Evidence is relevant where it
13             has some tendency as a matter
14             of logic and human experience
15             to make the proposition for
16             which it is advanced more
17             likely than that proposition
18             would be in the absence of
19             that evidence."
20

21        As the Supreme Court of Canada has said in

22   R. v. Arp, [1998] 3 S.C.R. 339:

23

24             "To be logically relevant, an
25             item of evidence does not have
26             to firmly establish, on any
27             standard, the truth or falsity

1       of the fact in issue.  The
2       evidence must simply tend to
3       increase or diminish the
4       possibility of the existence
5       of a fact in issue.  As a
6       consequence there is no
7       minimal probative value
8       required for evidence to be
9       relevant."
10

11      Trout Point's pleadings allege, among other

12   things, that Louisiana Media's reports and

13   broadcasts relating to the Aaron Broussard

14   investigation improperly included references to

15   Trout Point and photos of its lodge creating the

16   impression that Mr. Broussard was an owner of the

17   Trout Point Lodge and that Trout Point was

18   implicated in his alleged wrongdoings.  Louisiana

19   Media's amended Statement of Defence states, at

20   Paragraph 16:

21

22       "The Defendant states that as
23       to the totality of the
24       broadcast or broadcasts,
25       whether by way of television,
26       internet or otherwise,
27       containing the January 6, 2010
28       interview of Aaron Broussard,
29       it was clearly communicated to
30       and understood by its audience

1       that the Broussard properties
2       were not the Plaintiff, Trout
3       Point Lodge Limited's but
4       rather were properties
5       connected to the Plaintiff
6       Trout Point Lodge Limited.
7
8            And at Paragraph 21:
9
10      "The Defendant denies that any
11      broadcast or broadcasts either
12      by way of television or
13      internet or otherwise made by
14      it with regard to Aaron
15      Broussard were understood by
16      their plain and ordinary
17      meaning or by way of innuendo
18      or otherwise to mean any of
19      the following with regards to
20      the Plaintiff Trout Point
21      Lodge Limited, the Plaintiff
22      Charles L. Leary and the
23      Plaintiff Vaughn J. Perret, or
24      any of them."
25
26           And I won't list all of them.
27
28      d)  That the Plaintiffs or any
29      of them were involved in or
30      connected with or the situs of
31      any conspiracy involving
32      politicians and contractors;
33      g) That the Plaintiffs or any
34      of them were somehow involved
35      in illegal, criminal and/or
36      unethical activities including
37      money laundering, political

```
 1                    (inaudible  due  loud  noise…)
 2                    and kickbacks;
 3                    h)  That the Plaintiffs or any
 4                    of  them  were  involved  in  or
 5                    connected  with  any  kickback
 6                    schemes,   money   laundering,
 7                    misuse   of   public   monies,
 8                    fraud,   general   political
 9                    corruptions,        unsavoury
10                    characters and shady dealings;
11                    i)  That the Plaintiff, Trout
12                    Point Lodge Limited was owned
13                    by  Aaron  Broussard  and  was
14                    illicitly rented to government
15                    contractors   and   was   the
16                    subject  of  allegations  and
17                    investigations   including   by
18                    the   Louisiana   Metropolitan
19                    Crime   Commission   and   the
20                    United States Attorney.
21
22
```

23        Louisiana Media owns and operates WVUE which

24    is a Fox television affiliate.  Charles Leary's

25    affidavit filed May 12, 2011 in support of this

26    motion  attaches  as  Exhibit  A  comments  and

27    publications from the blog Slabbedwordpress.com.

28    In that exhibit unslabbed refers to Val Bracy who

29    was  the  reporter  in  an  investigative  report

30    broadcast by WVUE Louisiana Media on Fox 8 News

31    in  January  2010,  the  contents  of  which  Trout

32    Point alleges are defamatory.  Unslabbed's March

1        8, 2010 posting states:

2

3                      "(inaudible due to mumbling…)
4                      Confirmed there was a new
5                      interview by Bracy with
6                      Theriault. (inaudible due to
7                      mumbling…) refused to go on
8                      camera, also FYI reliable
9                      sources say Fox 8 was sued
10                     recently by Trout Point Lodge.
11                     Apparently they see having any
12                     connection to Aaron Broussard
13                     as a negative. Odd that since
14                     Danny Abel et al, that would
15                     be the Spain connection across
16                     from the (inaudible due to
17                     mumbling…), the Costa Rican
18                     location, seemed to keen on
19                     having the crème de la crème
20                     of the political elite as
21                     investors in and around the
22                     prestigious
23                     property/properties. Odd also
24                     that a resort would object to
25                     any publicity for their
26                     business. Must be nice to be
27                     so special and elite that only
28                     certain people are okay to be
29                     associated with their
30                     endeavours."

31

32       I'll just skip the next paragraph.

33

34                     "So we're back to why would
35                     Trout Point suddenly lash out
36                     at Val Bracy and Fox 8. After
37                     suing the Times Picayune News

1    and    effectively    silencing
2    them, is this an attempt to do
3    the same to Fox 8?  Is Bracy
4    hitting too many nerves?  It
5    seems strange to have waited
6    so long to sue in Canada over
7    a story that is old news.  So
8    maybe they want some more
9    publicity for their joints.
10   Hope they are ready for the
11   depositions and requests for
12   omissions coming their way.
13   FYI Trout Point, if I were
14   you, I would review Aaron's
15   interviews and the Fox 8 new
16   account before I racked more
17   in legal fees suing the wrong
18   parties.    Frivolous    is
19   frivolous and this is a silly
20   lawsuit.  IMHO."
21

22       On March 8th of 2010 the notice of action had

23   not been filed against Louisiana Media.  Only a

24   notice of intended action had been filed on

25   Louisiana Media.  The comments about suing Fox 8,

26   the Defendant's station and waiting so long to

27   sue in Canada and the lawsuit being frivolous are

28   indicative of an insider connection or

29   association with Louisiana Media.  Also in

30   Exhibit A in a blog posted February 16, 2011,

31   Telemachus connects Broussard with Trout Point

1       Lodge, stating well this might be one thing the

2       ethics Board is looking at.

3

4                       "You can take a fishing pole
5                       and catch a trout in your
6                       front yard."

7

8                       "Ed Muniz recalled Aaron
9                       Broussard telling me in 1998
10                      about a real estate investment
11                      opportunity in Nova Scotia
12                      Canada. The subject, Muniz
13                      said, was Trout Point Lodge, a
14                      four hour drive from Halifax
15                      and deep in the pristine
16                      forests of a provincially-
17                      protected wilderness area.
18                      Both men were serving on the
19                      Jefferson Parish Council at
20                      the time and Muniz said
21                      Broussard asked him to buy
22                      into the development 25,000
23                      for a two percent stake. The
24                      Metropolitan Crime Commission
25                      on Wednesday asked for a State
26                      Ethics Investigation into
27                      whether Broussard had been
28                      renting the Nova Scotia
29                      vacation property to Jefferson
30                      Parish contractors. Two days
31                      later Broussard resigned as
32                      Parish President citing
33                      distractions of the widening
34                      federal criminal investigation
35                      into his administration. The
36                      investigation began with
37                      subpoenas relating to the
38                      private insurance businesses

```
1                    of Broussard's former chief
2                    administrator, Tim Whitmer,
3                    who resigned Monday. Federal
4                    authorities also have
5                    subpoenaed records regarding
6                    River Birch Inc. which owns a
7                    Waggaman landfill consigned a
8                    deal in June to be the sole
9                    garbage dump for Jefferson
10                   Parish for the next 25 years.
11                   Charles Leary, Managing
12                   Director of the Lodge, emailed
13                   the Times Picayune on Friday
14                   saying Broussard does not, and
15                   has never had any ownership or
16                   management involvement with
17                   Trout Point Lodge Limited.
18                   The message went on to say
19                   Broussard owns a vacation home
20                   on the same road. But the
21                   familiar names of some of the
22                   investors shed some light on
23                   the political lattice of
24                   Jefferson Parish. They
25                   include Bennett Powell who
26                   said last week he bought a
27                   small share in the lodge
28                   similar to the one described
29                   by Muniz and Larry Stoulig who
30                   is listed as a partner in
31                   Broussard's management company
32                   who had said other investors
33                   bought him out five years ago.
34                   The late Marie Krantz, former
35                   owner of fairgrounds,
36                   Jefferson Downs race tracks
37                   and Nick Baroni, Kenner City
38                   Council member while Broussard
39                   was the Mayor there, also
40                   invested in developing
41                   property near the lodge,
42                   Baroni said. Baroni and
```

1  Stoulig have served in federal
2  prison on fraud charges in
3  separate incidents unrelated
4  to the Nova Scotia
5  investments. The link between
6  Nova Scotia and Southern
7  Louisiana outside of the
8  historical link of Acadian
9  culture seems to have begun
10 with Daniel Abel, a lawyer who
11 made a name for himself in
12 1999 working with the late
13 attorney Wendell Gauthier to
14 sue gun manufacturers for
15 violence in New Orleans.
16 Muniz and Abel served as
17 Broussard's legislative aid
18 when he was on the Jefferson
19 Parish Council. But Louisiana
20 Secretary of State records and
21 documents provided by Muniz
22 show that in 1997 Abel,
23 Charles Leary and Vaughn
24 Perret formed a Louisiana
25 corporation called La Ferme
26 Limited and its Canadian
27 counterpart, La Ferme
28 L'Acadie. The three soon
29 opened the Trout Point Lodge,
30 according to a 2001 travel
31 story in the Times Picayune.
32 After investing in the lodge
33 Muniz said he turned down a
34 second offer from Broussard in
35 1999 to buy nearby property.
36 Having yet to see a financial
37 report about the lodge, Muniz
38 said he demurred on the new
39 opportunity."
40
41 Telemachus in a blog posted February 25,

1    2011, appears to view the Val Bracy interview

2    erred by WVUE Louisiana Media as revealing

3    Broussard's wrongdoings in relation to his Nova

4    Scotia property or properties, stating:

5

6               "On January 7, 2010 the
7               campaign of former Parish
8               President Aaron Broussard paid
9               a Bobby Curvan $1,800 a plate
10              his next fundraiser. Well
11              that sounds like the makings
12              of a great party. The
13              following day actually saw
14              Broussard abruptly resign from
15              office in disgrace."
16

17        And there's a reference to a website.

18

19               "That's pretty sudden, isn't
20               it? Aaron Broussard
21               interviewed by Val Bracy and
22               video January 6, 2010, WVUE
23               Fox 8. Pretty sure it was the
24               day before when the Rocky
25               Marciano of New Orleans TV
26               real journalism pounded,
27               punched and (inaudible due to
28               mumbling…) away at a
29               bewildered and whimpering
30               Aaron Broussard about his Nova
31               Scotia property (properties).
32               As of, and up to that day and
33               the day after it appeared that
34               resignation was not something

1                        he had at least communicated
2                        in any way to anyone in his
3                        campaign."
4

5        Telemachus in a blog posted February 21,

6    2011 connects Broussard with investment in

7    properties at Trout Point Lodge, stating:

8

9                    "According to the 7/22/01 TP,
10                  Peter Butler was an investor
11                  in at least one of the
12                  unidentified properties at
13                  Trout Point Lodge, Nova Scotia
14                  as were Wendell Gauthier and
15                  Aaron Broussard. Were you
16                  and/or was anyone named,
17                  (inaudible due to mumbling…)
18                  Sneed, Ward, Butler and/or any
19                  JP public official, aid or
20                  employee or relatives invested
21                  or themselves in any way
22                  investors in any of the below
23                  entities and if so, in what in
24                  what amounts, which
25                  percentages and which entities
26                  and for what periods?"
27

28    And there's a list and that list includes

29    Trout Point Lodge Limited and Trout Point Lodge.

30    I pause to note that Soft81_1 controls what is

31    posted on those blogs.

32    At Paragraph 9 of his affidavit of May 12,

1    2011, Charles Leary states, in relation to

2    Soft81_1 — in researching the story — sorry:

3

4              "Soft81_1 published the
5              following on
6              Slab.wordpress.com on April
7              26, 2011 in a post entitled,
8              'Slab takes a look at the
9              Trout Point business venture.
10             Let's start at the end and
11             work back.'"
12

13   And then there's a further reference to the

14   quote that's found in that blog and it states:

15

16             "In researching the story,
17             what I have found is a pattern
18             of Leary, Abel and the girls
19             being first-class bitches and
20             I think it is safe to assume,
21             based upon the retractions
22             they made, the Times Picayune
23             and its corporate parent their
24             bitch in this fiasco because
25             Rainnie was onto something
26             big, albeit a bit dated in the
27             fleecing of several local
28             individuals that were marketed
29             and sold ownership in the
30             Trout Point by Aaron Broussard
31             who had close personal ties
32             and business ties to Abel,
33             Leary and the girls."
34

18                     <u>DECISION BY THE COURT</u>

1          At Paragraph 15, and Charles Leary states —

2     sorry this quotation that I just quoted, sorry —

3     implicates Trout Point and its principals in Mr.

4     Broussard's alleged wrongdoings.   At Paragraph 15

5     Charles Leary states:

6

7                    "The publisher of the Slabbed
8                    blog  also  posted  material
9                    stating   that   there   is   a
10                   mystery and grandiose cover-up
11                   underway   involving   me,   my
12                   business   associates,   Aaron
13                   Broussard   and   the   Louisiana
14                   News Media."
15

16         Charles Leary provided oral evidence that on

17    April 26, 2011 Soft81 posted the following:

18

19                   "I think by now even our most
20                   casual   readers   know   our
21                   successor website, Slabbed.org
22                   was  knocked  offline  courtesy
23                   of   the   Times   Picayune's
24                   corporate   parent,   Advanced
25                   Publications and this started
26                   a   chain   of   events   that
27                   resulted  in  Slab  temporarily
28                   being moved back to Wordpress.
29                   I'd   submit   this   was   a
30                   miscalculation  of  gargantuan
31                   proportions   for   several
32                   reasons   which   will   become

1    clear as I roll out this
2    series of posts on Aaron
3    Broussard's connections to
4    Trout Point Lodge and its
5    purported owners, Charles
6    Leary, Danny Abel and Vaughn
7    Perret. I say purported
8    because others were sold two
9    percent ownership interest in
10   the Trout Point development as
11   touted by Broussard and those
12   folks are the bag holders in
13   this deal."
14

15   That's the end of that quote. These are

16   further clear comments that Broussard is

17   connected to Trout Point Lodge and that its

18   principals are involved in the corruption as "bag

19   holders." In these and other postings the

20   anonymous users bloggers appear generally to be

21   denouncing the retraction actions of Times

22   Picayune while applauding Val Bracy, the reporter

23   in the investigative report broadcast by

24   Louisiana Media and writing comments that clearly

25   connect Trout Point and its principals with Mr.

26   Broussard and his alleged wrongdoings. That

27   tends to show that they interpret the Louisiana

28   Media broadcast as supporting their comments.

1      They are anonymous.  It is not known for sure

2      whether they are biased against Trout Point for

3      any reason and have set themselves to deducing

4      some unusual meaning from Louisiana Media's

5      broadcast or they are part of a reasonable

6      audience of ordinary intelligence, even though

7      the content of their blogs does suggest some

8      bias.  If they are part of a reasonable audience

9      of average intelligence, that tends to show that

10     Louisiana Media's audience did not understand

11     this broadcast as alleged in Louisiana Media's

12     amended statement of defence at Paragraphs 16 and

13     21.  If they are biased for any reason it will

14     tend to show that they have set themselves to

15     deducing an unusual meaning from the broadcast

16     and reached a slanted interpretation of Louisiana

17     Media's broadcast that is different from what

18     WVUE Louisiana Media's unbiased and reasonable

19     audience of ordinary intelligence would

20     understand.  The existence or non-existence of

21     bias in the anonymous bloggers' users may be

1    determined  if  their  identity  is  revealed.

2    Therefore,  in  my  view,  considering  the  principles

3    of  liberal  disclosure,  their  identity  is  relevant

4    to    interpreting    whether    the    content    that

5    Louisiana Media's broadcast was defamatory.

6         Paragraph 7 of Charles Leary's affidavit of

7    May 18, 2011 refers to a Slabbed posting entitled

8    "Whitmergate" which includes a transcription of

9    Val  Bracy's  interview  with  Aaron  Broussard  on

10   January 6, 2011.  According to Dr. Leary, it is

11   an  accurate  transcription  and  is  in  accord  with

12   the video provided by WVUE but contains sections

13   not  appearing  in  the  video.   The  identity  of  the

14   publisher of the blog will help determine whether

15   the  posted  transcript  is  authentic  or  not.   The

16   more  credible  the  publisher,  the  more  likely  it

17   is  to  be  authentic.    In  assessing  whether  a

18   broadcast   publication   was   defamatory   it   is

19   important to determine what the full and complete

20   content was.  The identity of the publisher, as

21   it  relates  to  authenticity,  is  relevant  to  that

<u>DECISION BY THE COURT</u>

1     determination.

2           Trout Point has pleaded injurious falsehood

3     and intentional interference with economic

4     relations. Consequently the intention and

5     knowledge of falsehood are issues to be

6     determined. As noted above, the contents of some

7     of the blogging is indicative of a close or

8     insider connection between the anonymous blogger

9     and Louisiana Media. The bloggers are clearly

10    implicating Trout Point and its principals in

11    Broussard's wrongdoings in stating Broussard was

12    involved in Trout Point Lodge. That is

13    continuing more than one year after the January

14    2010 broadcasts. That those bloggers are from

15    within or closely connected to Louisiana Media,

16    it would tend to make it more likely that

17    Louisiana Media intentionally created the

18    impression of a direct connection between Trout

19    Point and Aaron Broussard as well as his alleged

20    wrongdoings. Thus the identity of the bloggers

21    is relevant to intentionality.

1          Trout   Point   advised   the   court   that   it
2     intends   to   add   the   anonymous   bloggers   as   parties
3     if  they  have  a  sufficiently  close  connection  to
4     Louisiana  Media  or  to  sue  them  separately  if  they
5     do   not.    They   are   making   the   motion   within   the
6     current   action,   therefore,   the   motion   must   be
7     considered   on   the   basis   that   there   is   an
8     intention   to   add   them   as   parties.    Trout   Point
9     has  no  way  of  knowing  how  close  the  connection  is
10    even   though   there   are   indicia   of   a   close
11    connection.    Trout   Point   recognizes   that   if   it
12    were   to   turn   out   that   the   connection   was   not
13    sufficiently   close   to   warrant   joining   the
14    bloggers  as  parties,  the  implied  undertaking  rule
15    outlined   in   Civil   Procedure   Rule   14.03   would
16    require  it  to  seek  the  court's  permission  to  use
17    the   information   in   question   in   connection   with
18    the  matter  outside  of  this  proceeding.

19         The  anonymity  of  the  bloggers  has  left  Trout
20    Point   in   the   position   where   it   is   making   the
21    motion  based  on  what  appears  to  it  to  be  the  most

1   likely result, i.e. that the bloggers will be

2   added as parties. Either way it is intended that

3   they will become Defendants in an action against

4   them by Trout Point. Consequently in my view the

5   test to determine whether the bloggers' identity

6   is to be disclosed for that purpose is the same

7   whether it is within an existing proceeding or in

8   relation to a separate proposed proceeding. The

9   relevant test in a defamation action was outlined

10   in Warman and Wilkins-Fournier, [2010] O.N.S.C.

11   2126 and approved by the Supreme Court of Nova

12   Scotia in AB and Bragg Communications Inc.,

13   [2010] N.S.S.C. 215. Under that test the

14   application must establish the following:

15

16       1.   A prima facie case;

17       2.   Involvement of the third party from

18            whom production is sought;

19       3.   That the third party is the only

20            practical source of the information;

21       4.   That the third party will be reasonably

1          compensated   for   expenses   and   legal

2          costs of compliance;  and

3     5.   The   public   interest   in   disclosure

4          outweighs   the   legitimate   privacy

5          interests and interests and freedom of

6          expression.

7

8          I will deal with each of those in turn.

9     First whether a prima facie case has been

10    established.   In my view the words in the blogs

11    would tend to lower Trout Point's reputation in

12    the eyes of a reasonable person and do refer to

13    Trout Point.  The blogs are posted on a publicly-

14    accessible website.  They were accessed freely by

15    Charles Leary.  The most likely inference is that

16    they were communicated to persons other than

17    Trout Point.   As such, Trout Point has

18    established a prima facie case that they were

19    published and were defamatory.

20

21         2.   Regarding involvement of the third party

1      from whom production is sought, Automattic Inc.

2      is involved in the sense that it hosts and

3      publishes the blogging website on which the blogs

4      were posted even though it is not implicated in

5      the alleged wrongful acts.

6

7          3.   The third party is the only practical

8      source of information.   Automattic has a policy

9      of generally producing information identifying

10     anonymous bloggers on its website if directed to

11     do so by court order including a court order

12     originating from outside the US.   It appears that

13     in the circumstances to be the only avenue to

14     obtain the information sought.

15

16         4.   The third party will be reasonably

17     compensated for expenses and legal costs of

18     compliance.   The information requested ought to

19     be easily accessible. For the most part it ought

20     to have been obtained when the bloggers signed

21     onto the website.   Automattic's policy indicates

1    it   contemplates   readily   providing   such

2    information when directed to do so by any court.

3    Given that we are talking about a website, more

4    likely than not all the information is in

5    electronic form and can simply be emailed to

6    Trout Point at essentially no cost to Automattic.

7    Further, its standard procedure is to forward

8    court orders to the bloggers themselves in case

9    they want to quash the legal process. Therefore

10   Automattic itself would not incur any legal

11   costs.

12

13       5. The public interest in disclosure

14   outweighs the legitimate privacy interest and

15   interests in freedom of expression. Automattic's

16   policy is to generally provide information it is

17   directed to provide by court order including

18   international orders. Examples include requests

19   for information about anonymous bloggers sued for

20   defamation. In addition the privacy policy

21   states:

1

2                           "If you are a blogger looking
3                           for a completely anonymous
4                           blogging service or if the
5                           fact that the above data could
6                           be revealed in court
7                           proceedings, et cetera bothers
8                           you, please do not use
9                           wordprocess.com (sic) for your
10                         blogging."

11

12       When a blogger signs up he or she agrees to

13   the host's privacy policy.  Therefore there is a

14   diminished expectation of privacy where, as in

15   the case at hand, the anonymous blogger is

16   posting information that is prima facie

17   defamatory.  And in support of that I refer to

18   York University and Bell Canada Enterprises,

19   [2009] O.J. 3689 and that is a decision of the

20   Ontario Superior Court of Justice.  Generally the

21   public interest in not allowing individuals to

22   distribute defamatory materials under the cloak

23   of anonymity will outweigh the public interest in

24   protecting such a person's right to privacy and

25   freedom of expression.  That in principle was the

26   conclusion that was reached in Bragg, Mosher and

1          York University v. Bell Canada Enterprises.

2               In the case at hand the content and tone of

3      the blogs is aggressive.   There is no indication

4      that the bloggers are fearful of the Plaintiff or

5      of other targets of their comments.   There is no

6      indication   that   their   identity   should   be

7      protected for safety reasons.   In addition in the

8      case at hand, the blogs contain comments based on

9      the actual or perceived sexual orientation of the

10     intended targets.   Those comments are clearly

11     meant to be derogatory and insulting.   I will not

12     reproduce   them   here.   It   is   the   type   of

13     expression that engenders harmful results such as

14     discrimination and hatred.   It is not the type of

15     free   expression   that   deserves   protection   and

16     fostering.

17               Considering these factors, I am of the view

18     that the public interest and disclosure outweighs

19     the legitimate privacy interest and interests and

20     freedom of expression of the anonymous bloggers.

21     And given this conclusion and that I have found

1    the requested information to be relevant, it is

2    appropriate that I exercise my discretion under

3    Civil Procedure Rule 14.12(1) to order the third

4    party production requested.   I therefore grant

5    the Plaintiff's motion.   I will initial the order

6    and have it issued and it should be available for

7    pick up fairly shortly.   Clerk, do you know if

8    the Prothonotary is in today?

9          COURT CLERK:    Yes, she is.

10         THE COURT:   She's in today so that should be

11   available for pick up later today, okay?  Now I'm

12   assuming that you're not making any motion for

13   costs where the Defendants did not oppose the

14   motion.   They simply raised the issue of

15   relevance.   Am I correct in that assumption Dr.

16   Leary?

17         DR. LEARY:      That's right, My Lord.

18         THE COURT:   All right, thank you.

19         UNIDENTIFIED MALE VOICE:  My   Lord,   Robert

20   (inaudible due to mumbling...)   Just one point

21   arising out of this.   When the order is served

1    and the materials are produced to the Plaintiff

2    it's understood that they will provide the

3    materials for the Defendant (inaudible due to

4    mumbling…)

5            THE COURT:   Yeah, so from my perception it

6    should be automatic because it's obviously

7    something that's relevant to the proceeding and

8    that they have in their possession.

9            UNIDENTIFIED MALE VOICE:   Thank you My Lord.

10           THE COURT:   Okay, thank you everyone.   We

11   can close the court, clerk.

12           DR. LEARY:      Thank you My Lord.

13           THE COURT:   Thank you.

14

15           [ADJOURNED AT 11:40 A.M.]

16

## CERTIFICATE OF COURT TRANSCRIBER

I, Rita Newton, Court Transcriber, hereby certify that I have transcribed the foregoing and that it is a true and accurate transcript of a decision given in the matter of Trout Point Lodge Limited v. Louisiana Media Company, LLC, YAR 328248 taken by way of electronic recording in Halifax, Nova Scotia on May 30, 2011.

_____

Rita Newton, Certificate No. 2006-56

CERTIFIED COURT TRANSCRIBER,

PROVINCE OF NOVA SCOTIA


Halifax, Nova Scotia

July 7, 2011