# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

ANNE MARIE VANDENWEGHE　　　　*
　　　　　　　　　　　　　　　　　　　　CASE NO.:  2:11-cv-2128
　　　　　　　Plaintiff　　　　　　　*

VERSUS　　　　　　　　　　　　　　*　　SECTION: "　　"

THE PARISH OF JEFFERSON &　　　　*　　JUDGE:
STEVE J. THERIOT
　　　　　　　　　　　　　　　　*　　MAGISTRATE:
　　　　　　　Defendants
　　　　　　　　　　　　　　　　*　　JURY TRIAL REQUESTED

*　　*　　*　　*　　*　　*　　*　　　　*　　*　　*　　*　　*　　*

## COMPLAINT

**NOW INTO COURT**, through undersigned counsel, comes plaintiff, Anne Marie Vandenweghe, a resident of the full age of majority domiciled within the County of Harrison, State of Mississippi, who respectfully represents that:

## I.  PARTIES

1.

Made defendants herein are:

The Parish of Jefferson, a political subdivision organized under the laws of the State of Louisiana, having its principal place of business in the Parish of Jefferson, State of Louisiana;

Steven J. Theriot, an individual of the full age of majority residing and domiciled in the Parish of Jefferson, State of Louisiana.

## II. JURISDICTION AND VENUE

2.

Jurisdiction is proper in this Honorable Court under the provisions of 28 U.S.C. § 1331, for claims brought pursuant to 42 U.S.C. § 1983, the First Amendment of the Constitution of the United States of America, the Fourteenth Amendment of the Constitution of the United States of America, and pursuant to 28 U.S.C. § 1367 for all other claims pendent thereto.

3.

Venue is proper in the Eastern District of Louisiana, pursuant to 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of Louisiana and defendants reside in this district.

## III. PRELIMINARY STATEMENT

Plaintiff claims that she was involved in First Amendment protected activity concerning matters of public concern, which included, but were not limited to, illegal activities of duly elected and appointed governmental officials of the Parish of Jefferson. As a result of exercising her right to freedom of speech, as guaranteed by the First and Fourteenth Amendments, plaintiff has suffered grievous retaliation by defendants, who embarked on a concerted effort to force plaintiff's involuntary resignation and/or prevent plaintiff from performing her duties properly, such that she would be terminated. Additionally, plaintiff alleges that defendants purposefully and systematically defamed her in statements to the press and at recorded meetings whereby they wrongfully and with malice accused her of "blogging" and inappropriate use of computers at the workplace, and publicly placed her on administrative leave for such alleged behavior. Inevitably, the plaintiff's employer terminated her employment from the Parish of Jefferson in retaliation for plaintiff's whistleblower activities, expressions of free and protected speech

regarding criminal activity on the part of governmental officials, and for her cooperation with the Federal Bureau of Investigation ("FBI") and United States Attorney's Office ("USAO").

## IV. FACTS AND ALLEGATIONS

### 4.

At all times material hereto, plaintiff, Anne Marie Vandenweghe ("plaintiff") was an employee of the Parish of Jefferson as an Assistant Parish Attorney, who was assigned to the Public Records Section of the Parish Attorney's Office, but whose job did not entail reporting of illegal activities.

### 5.

At all times material hereto, the Parish of Jefferson ("Parish") was the plaintiff's employer under the provisions of Louisiana Revised Statute 23:967.

### 6.

At all times material hereto, defendant, Steven J. Theriot ("Theriot"), was an employee of the Parish of Jefferson in the position of Interim Parish President, and who was appointed by and directly answerable to the citizens of the Parish through their duly elected representatives on the Parish Council. As Interim Parish President, Theriot had the power to appoint and remove administrative officers and employees of the parish responsible to him; or, at his discretion, authorize the head of a department or office responsible to him to appoint and remove subordinates in such department or office.

### 7.

Defendants, the Parish and Theriot, were acting under color of state and municipal law and were cloaked with the authority of the State of Louisiana and the Parish for purposes of 42 U.S.C. § 1983 when taking the actions against the plaintiff complained of herein.

8.

Plaintiff had a constitutionally protected right to enjoy her employment without retaliation or interference except for cause.

9.

Plaintiff had a constitutionally protected right to be free from retaliation for reporting illegal activity under Louisiana Revised Statute 23:967 and for exercising her right to free speech under the United States Constitution, First Amendment, made applicable to the state and its actors through the Fourteenth Amendment and 42 U.S.C. § 1983.

## V. VILLIO'S AND WHITMER'S ILLEGAL ACTIVITIES

10.

In August of 2009, it came to the attention of the plaintiff that Deborah Villio ("Villio"), Director of Code Enforcement for the Parish of Jefferson, had engaged in prohibited political activities in violation of the Jefferson Parish Code of Ordinances (JPCO), Section 23, in that in March of 2007, Villio "resigned" as the then-Director of the Community Justice Agency for the Parish of Jefferson to run for a state judgeship. However, upon being defeated for that judgeship position, Villio's resignation was converted to a "leave without pay" status retroactively by then-Parish Chief Administrative Officer ("CAO"), Timothy Whitmer for the sole purpose of allowing Villio to maintain her accrued service for retirement purposes. This practice was later denounced by newly-elected Parish President, John Young ("Young") as irregular and as an act that was not to repeat itself in the future.

11.

Upon learning of Villio and Whitmer's conduct, which further constituted criminal violations of Louisiana Revised Statutes 14:26 (criminal conspiracy), 14:132 (injuring a public

record), 14:133 (filing or maintaining a false public record), and 14:138 (public payroll fraud), plaintiff brought this to the attention of Assistant Parish Attorney, Louis Gruntz ("Gruntz"), the plaintiff's supervisor, who did nothing in response thereto.

12.

Furthermore, Villio, as a public employee, violated JPCO Section 23 in October of 2009, when she made a prohibited campaign contribution to the political campaign of Elton Lagasse, a candidate for public office in Jefferson Parish. Plaintiff once again brought the illegal nature of this conduct on the part of Villio to the attention of Assistant Parish Attorney Gruntz, who did nothing in response thereto.

13.

In February of 2010, Villio "resigned" from her position as Director of Code Enforcement to again run for a state judgeship in Jefferson Parish, yet prior to that time, and while in the employ of the Parish, Villio engaged in prohibited political activities by soliciting campaign contributions and participating in a fundraiser for this same judgeship position. Plaintiff brought this to the attention of Assistant Parish Attorney Gruntz, who did nothing in response thereto.

14.

Upon information and belief, the Parish of Jefferson, through its Interim Parish President, Theriot, failed to take any action in the form of discipline against Villio and Whitmer in order to stop improper use of public office, as well as the criminal violations of Louisiana law, including improper use of public property and abuse of public payroll.

15.

The Parish of Jefferson, through its Interim Parish President, Theriot, failed to take any

steps to protect plaintiff from reprisal and retaliation and to take steps to remove Villio and Whitmer from public office.

## VI. THE RIVER BIRCH CONTRACT

### 16.

In August 2009, plaintiff, the Assistant Parish Attorney in charge of responding to public records requests, received a Public Records Request ("PRR") from legal counsel for Waste Management, the operator of the public landfill for the Parish, seeking the production of any contracts which may exist between River Birch Landfill ("River Birch") and the Parish.  As part of her duties, plaintiff obtained a copy of an un-executed contract between River Birch and the Parish from Eula Lopez ("Lopez"), the Clerk and Custodian of Records for the Parish Council. Shortly afterward, plaintiff received yet another contract between River Birch and the Parish, this one signed only by Parish Chairman, Thomas Capella.  Upon bringing this apparent discrepancy to the attention of then-Parish Attorney, Thomas Wilkinson ("Wilkinson"), the plaintiff was ordered by Wilkinson, her ultimate supervisor, not to make any further inquiries.  Wilkinson directed plaintiff that only he would personally handle this issue.  Wilkinson then provided plaintiff with a fully executed copy of a contract between River Birch and the Parish.  Plaintiff then brought theses blatant discrepancies in the River Birch contracts to the attention of Assistant Parish Attorney Gruntz and Parish Attorney Wilkinson, who failed to take any appropriate action thereto.  Gruntz, against plaintiff's advice, issued a letter of non-production of the documents requested pursuant to the PRR.

### 17.

In preparation for a return for a Federal subpoena request, Lopez certified a return dated December 16, 2009, of a partially executed River Birch contract signed only by Jim Ward of

River Birch, knowing that there were other multiple, signed copies of the same contract in the possession of the Parish. Lopez informed plaintiff via an email that her brother-in-law, Wilkinson, had instructed her not to send it to the Council Chairman for signature. All different versions of said document were made part of plaintiff's return to the Federal Grand Jury subpoena in December of 2009.

18.

Upon information and belief, the Parish of Jefferson, through its Interim Parish President, Theriot, failed to take any action in the form of discipline against Wilkinson in order to stop improper use of public office, as well as other criminal violations of Louisiana law, including forgery, injuring public records, maintaining false public records, and malfeasance.

19.

The Parish of Jefferson, through its Interim Parish President, Theriot, failed to take any steps to protect plaintiff from reprisal and retaliation and to take steps to remove Wilkinson from public office.

## VII. TIM COULON CAMPAIGN COMMITTEE, INC.

20.

In September of 2009, plaintiff was instructed by her supervisor, Assistant Parish Attorney Gruntz, to assist in the investigation of Parish CAO Whitmer's alleged illegal insurance transactions with various Jefferson Parish entities and employees.

21.

In the course of the insurance transaction investigation, it came to plaintiff's and Gruntz's attention that both Whitmer and Wilkinson were identified as officers of the Tim Coulon Campaign Committee, Inc., corporate domicile of which was identified as the Yenni Jefferson

Parish Governmental Building.

22.

Gruntz indicated the severity of the offense to plaintiff, representing that he would refer it to the Jefferson Parish District Attorney for further investigation and prosecution. Upon plaintiff noticing the inaction of Gruntz, plaintiff reported these offenses to the FBI and USAO, and ultimately to the Parish Personnel Board. On information and belief, plaintiff is not aware of the fact that Gruntz ever reported these offenses to the FBI, USAO or even the Jefferson Parish District Attorney.

23.

Upon information and belief, the Parish of Jefferson, through its Interim Parish President, Theriot, failed to take any action in the form of discipline against Wilkinson and Whitmer in order to stop their improper use of public office, as well as other violations of the JPCO, including prohibited political activity by a Jefferson Parish employee.

24.

The Parish of Jefferson, through its Interim Parish President, Theriot, failed to take any steps to protect plaintiff from reprisal and retaliation and to take steps to remove Wilkinson and Whitmer from public office.

## VIII. PAYROLL FRAUD

25.

In January of 2010, as a result of a Channel 8 Fox News PRR inquiring about payroll irregularities, plaintiff uncovered that Wilkinson, with full cooperation and assistance of the office of the Parish Attorney, and then supervisor of paralegal personnel, Peggy Barton ("Barton"), committed payroll fraud in regard to three "paralegals" listed in the Parish Attorney's

office payroll. Said paralegals, Karen Parker Broussard, Kenneth Trahan, and Antoine "Tony" Thomassie were designated as such despite the lack of necessary professional credentials or training, all with Wilkinson's full knowledge. Wilkinson carried these individuals on his payroll with the knowledge that they were not working in his office, were being paid for not working at all, and were not in the performance of duties charged to a paralegal. Plaintiff made these transgressions known to her immediate supervisor, Assistant Parish Attorney Gruntz, who did nothing in response thereto.

26.

Wilkinson admitted on a television news interview that the three paralegals had been placed on his payroll while not working in the capacity for which they were being paid. Shortly after the Channel 8 Fox News PRR regarding the three paralegals was received, Wilkinson met with each one, and all three were dismissed.

27.

Barton tampered with the Jefferson Parish Attorney's organizational chart after receiving a PRR from Channel 8 Fox News. Instead of supplying the chart in place at the time of the PRR, Barton revised said chart by removing Karen Parker Broussard from under Barton's administrative control. Barton certified that Charlie Knopp ("Knopp"), Chief of Security, was Broussard's supervisor despite the fact that the organizational chart showed Broussard as under Barton's supervision since approximately 2007. Deano Bonano ("Bonano"), Director of Security for the Parish and Homeland Security Liaison, was Knopp's direct supervisor and interfered by email with Knopp's certified response to the PRR for the administrative organizational chart and information as to who was Karen Parker Broussard's supervisor, instructing Knopp not to respond until cleared with Bonano. Knopp had already submitted a

signed certification which was later followed by another with a different response.  Knopp and Peggy Barton submitted conflicting certifications as to the responsible party.

28.

At all times that Barton altered public records, she conspired with others, including Wilkinson, to facilitate the alteration of public records.  As a result of their actions, Barton and Wilkinson criminally conspired to commit payroll fraud, injury to public records, filing or maintaining false public records, as well as malfeasance in office.

29.

Upon information and belief, the Parish of Jefferson, through its Interim Parish President, Theriot, failed to take any action in the form of discipline against Wilkinson and Barton in order to stop improper use of public office, improper use of public property and abuse of public payroll, as well as other violations of Louisiana law, including payroll fraud, injury to public records, filing or maintaining false public records, as well as malfeasance in office.  Plaintiff had apprised her supervisor, Assistant Parish Attorney Gruntz, of this illegal and criminal activity, and he did nothing in response thereto.

30.

The Parish of Jefferson, through its Interim Parish President, Theriot, failed to take any steps to protect plaintiff from reprisal and retaliation and to take steps to remove Wilkinson and Barton from public office.

## IX. ADMINISTRATIVE LEAVE, HOSTILE WORKPLACE & IMPROPER TERMINATION

31.

On February 22, 2010, the plaintiff discovered that her computer was being "mirrored" somewhere in the Parish system and reported same.  The following morning, plaintiff found her

office door had been broken down, her computer and a number of files taken by unknown individuals. There was a note tacked to the wall instructing her to report to Theriot's office and within minutes of calling to advise Theriot that she was on her way, she was met by Chief of Secuity Knopp, who escorted her from the third floor office to the tenth floor, all in plain sight of her co-workers and others in the Yenni Building Government Complex. She was then confronted by Theriot and six other men.

32.

Each and every one of the above referenced individuals had been reported by plaintiff for egregious, illegal actions on a variety of issues against a variety of employees:

Feliciano "Junior "Mendoza ("Mendoza") - cover-up and attempted obstruction of an investigation into allegations of abuse made by an employee during a disciplinary hearing. Plaintiff was sent by Gruntz to investigate an altercation reported by Human Resources Department Director Mendoza and ultimately prepared a written report which contained firsthand observations by plaintiff of Mendoza and his employees, Phil Rupp ("Rupp") and William Fortenberry ("Fortenberry"), attempting to intimidate and obstruct an employee who wanted to file charges against Rupp. Mendoza, Rupp, and Fortenberry attempted to cover-up an altercation between Rupp and an African-American employee during a Disciplinary Hearing. Plaintiff, upon entering Mendoza's office, observed Mendoza on the telephone asking that the Sheriff be immediately contacted to prevent Sheriff Deputies in the Yenni Building from taking a Complaint of Assault from the aggrieved employee who was alleging that Rupp struck and threatened him, blocking his exit from the Disciplinary Hearing Room. Plaintiff immediately advised the three men to stop their obstruction, after which she contacted the Deputy on Duty and confirmed that the aggrieved employee was being allowed to file his complaint. Plaintiff's

report was submitted via email to Assistant Parish Attorney Gruntz, who did nothing in response thereto;

Bert Smith - falsifying public records, conspiracy and malfeasance in office, related to claims that he had participated in illegal activities while Director of the Jefferson Parish Animal Shelter;

Deano Bonano - falsifying public records, conspiracy, payroll fraud and malfeasance in office, related to the Bert Smith matter and to the Paralegal payroll fraud matter;

Jose Gonzalez - cover-up and attempted obstruction of an investigation into allegations of abuse made by an employee during a disciplinary hearing, while Chief Administrative Assistant of the employee being intimidated;

Clem Donelon - intimidation and attempt to obstruct employee reporting of illegal and unethical activities

Gruntz - failing to act and/or report illegal activities of Jefferson Parish employees. Due to supervisor Gruntz's inaction, plaintiff was forced to forward evidence of criminal behavior to the FBI and USAO, in compliance with their request and the Jefferson Parish Council's written instructions to cooperate and assist in the ongoing investigation of widespread political corruption in Jefferson Parish.

33.

Interim Parish President Theriot accused plaintiff of "blogging" and "internet surfing" while on the job. She was further asked to return her laptop computer, as well as former Parish President Broussard's and former CAO Whitmer's laptop computers. Broussard's and Whitmer's computers had been placed in a locked file cabinet in plaintiff's office, at the request of the FBI and the Jefferson Parish IT director. These laptops had been inspected by the State

Legislative Auditor due to the ongoing insurance fraud investigation and were scheduled to be handed over to the FBI. Plaintiff at no time during her employment with the Parish of Jefferson possessed a laptop, having been denied the use of one by Wilkinson despite the request by Gruntz that she be issued one to assist her in her duties.

34.

At this meeting on February 23, 2010, plaintiff was placed on paid administrative leave by Interim Parish President Theriot, while an investigation into her alleged inappropriate actions was conducted. Theriot then instructed Chief of Security Knopp and Director of Human Resources Mendoza to escort plaintiff to her office to collect her personal effects and to then escort her out of the building. While plaintiff was collecting her personal effects, her immediate supervisor Gruntz arrived in her office with a rolling cart on which her belongings were then placed. Plaintiff was escorted out of the building by Gruntz and Knopp (Mendoza having left to prepare paperwork) in plain sight of her co-workers, others in the Yenni Building Government Complex and passers-by in the Elmwood Shopping Center complex and surrounding apartments, offices and businesses. Plaintiff's pastor, Marion Lauricella, and many of her fellow church members contacted plaintiff upon learning in the press and other media of her removal from the Parish Attorney's office. Plaintiff's elderly mother and other family members and friends contacted her with grave concerns upon hearing the news accounts linking her removal with that of Wilkinson and with the ongoing corruption scandals in Jefferson Parish.

35.

On February 25, 2010, plaintiff filed for whistleblower protection with the Jefferson Parish Personnel Board.

36.

On March 31, 2010, Theriot ended plaintiff's paid administrative leave and reassigned her to the Recovery Section of the Parish Attorney's Office.

37.

Upon her return to work, it came to plaintiff's attention that the individual assigned to her previous position in Public Records, a younger, less experienced male, was being paid a higher salary than she had received for performing the same job duties. Moreover, due to the actions of Whitmer and Wilkinson, when plaintiff was reassigned by them in January of 2009, she was informed that she had been "red circled," such that she would not be eligible for a raise in the next seven years.

38.

Upon her return to work, plaintiff was not provided with the necessary materials to perform her tasks, such as not being provided with passwords for research or being connected to the Parish computer system, thus failing to receive information necessary to carry out her duties. Nevertheless, plaintiff was assigned the workload previously handled by five attorneys, including responsibility for a caseload of lawsuits related to recovery of damages. Plaintiff requested a Prescription List or Calendar and was told there was none. Plaintiff further requested a list of all cases in the Recovery Section for which she was responsible and was again told there was no official list. Plaintiff discovered on the day of her return to work that one of the cases in that section was due to prescribe that day and that no lawsuit had been filed. Plaintiff made all requests in emails and reported all discrepancies in emails in an effort to protect herself from what appeared to be a concerted effort on the part of Barton, then Interim Parish Attorney for Jefferson Parish, and others to sabotage her work. Plaintiff was further exposed to

confrontations and a hostile work environment that made it extremely difficult to carry out her duties, all of which were duly reported to her superiors in emails. This hostile work environment was in violation of the Civil Rights Act of 1964, §§ 701 et seq., 703(a)(1), as amended, 42 U.S.C.A. §§ 2000e et seq., 2000e-2(a)(1).

39.

Around the time newly-elected Parish President Young took office in October of 2010, plaintiff was informed by her doctor of anomalies in her heart activity, for which she had to go on sick leave. During that time, Young sent out letters demanding that all Assistant Parish Attorneys sign letters of resignation or be immediately terminated. While on sick leave, on November 2, 2010, plaintiff was presented with a termination notice at her home. Her health insurance was also terminated. Despite being out on documented medical disability, plaintiff was not afforded the opportunity of any pre-termination hearing, due process, or other administrative hearing despite the fact that Whitmer had been accorded same and that the Parish's outside counsel had advised the Parish that such was required prior to the termination of an employee. The improper termination of the plaintiff while on medical disability leave was a direct violation by the Parish of the Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq., as well as La. Rev. Stat. Ann. § 14:122 which identifies the offense of public intimidation and retaliation against a public employee with the specific intent to influence his/her conduct in relation to his/her duties.

40.

Plaintiff applied for unemployment benefits, but was turned down when the Personnel Department challenged her eligibility. The plaintiff also applied to the Parochial Retirement System for the opportunity to "buy back" service time to allow her to retire, but was informed

that it could not be done because she was not currently employed by an entity participating in said system.

### 41.

Plaintiff has since lost her home and has moved out of State due to her inability to procure a job due to her being labeled as a poor employee and whistleblower, causing her and her family great distress, humiliation, and embarrassment.

### 42.

The claims of plaintiff's blogging while on the job were not true, which Interim Parish President Theriot, and other members of the governmental authority knew. These defamatory and retaliatory statements were made by officials of the Parish of Jefferson solely to discredit the plaintiff and discourage her ongoing cooperation with the FBI and USAO. Nevertheless, no apology was ever offered to her, she was moved to a different job not involving public records release, and her name and reputation were damaged. To date, plaintiff has not been provided with the outcome of any investigation into the false allegations made by Interim Parish President Theriot, and the Parish, and was subsequently unfairly and improperly terminated. Thus, defendant, The Parish of Jefferson, through its Interim Parish President, Theriot, retaliated against plaintiff for having disclosed publicly the information regarding the illegal activities of a number of Parish officials under La. R.S. 23:967 and exercising her free speech rights under the First Amendment to the United States.

## X. RETALIATORY ACTIONS IN VIOLATION
## OF THE FIRST AMENDMENT

### 43.

Plaintiff asserts that her First Amendment protected activity as referenced herein was the substantial motivating factor in the actions taken against her as a concerted effort to make her

work environment so untenable as to force her to resign, or, alternatively, to make it such that plaintiff did not have the necessary tools and communications to complete her job duties properly.

44.

Plaintiff asserts that her speech involved and exposed misconduct and malfeasance in office, and involved matters which impacted the use of public funds and the use of taxpayer money. As such, this conduct involved matters of grave public concern.

45.

Plaintiff alleges that she has an established constitutional right to speak out on matters of public concern such as the proper use of funds.

46.

Plaintiff's speech was properly made within the confines of Louisiana law and was not likely to impede the defendants' general performance or operations; in fact, her speech was more likely to cause a more efficient working environment within the Parish and the Parish Attorney's Office, in that it would help expose and eliminate misconduct and malfeasance in public office.

47.

Plaintiff alleges that her interest in commenting on matters of the public concern outweighs the defendants' interests in avoiding controversy or promoting efficiency.

48.

Plaintiff alleges that defendant, The Parish of Jefferson, through its Interim Parish President, Theriot, retaliated against her by reassigning her to a lesser position not related to the disclosure of public documents. Moreover, plaintiff was directly discriminated against because of her age and her conduct as evidenced by the assignment of a younger, less qualified employee

to her former position, yet at a much higher rate of pay.

49.

The plaintiff's reassignment was directly motivated by her cooperation with the FBI and USAO in their requests for documents pertaining to the ongoing investigation into allegations surrounding former Parish President Aaron Broussard and his then-CAO, Tim Whitmer, and a blatant attempt to silence her.

50.

The plaintiff alleges that she was the subject of harassment on the job, confrontations and a hostile work environment, making it difficult to carry out her duties.

51.

Plaintiff alleges that defendant, The Parish of Jefferson, through its Parish President, Young, retaliated against her by wrongfully terminating her employment with the Parish of Jefferson and not affording the opportunity of any type of administrative hearing.

52.

The plaintiff's termination was directly motivated by her cooperation with the FBI and USAO, as well as her public statements and whistleblower activities, and was designed to terminate the plaintiff's cooperation with the government and silence her free speech.

54.

Plaintiff further alleges that defendant, The Parish of Jefferson, through its Interim Parish President, Theriot, retaliated against her by publishing defamatory statements about her, including that she was being placed on administrative leave for using office computers and taxpayer resources by "blogging" and using the internet at work inappropriately, knowing these statements to be false.

55.

Plaintiff contends that the Parish of Jefferson and Interim Parish President Theriot, knew, or should have known, that the placement of plaintiff on administrative leave was unjustified, and statements that she was placed on administrative leave to the press were known to be untrue, yet were stated for the sole purpose of damaging plaintiff's public reputation and discrediting her prior speech regarding the illegal conduct of the Parish officials, which illegal conduct had been brought to the attention of her supervisors. The defendants further made these false and defamatory statements about the plaintiff in an effort to stifle her cooperation with the FBI and USAO pertaining to the ongoing investigation into allegations surrounding former Parish President Aaron Broussard and his then-CAO, Tim Whitmer, as well as other Parish governmental officials.

56.

Plaintiff specifically alleges that these statements were included in the defamatory words stated against her by defendants as indicated.

57.

Plaintiff alleges that defendants stated these words in public hearings, recorded meetings, and to the press.

58.

Plaintiff alleges that Interim Parish President Theriot, in his individual capacity and as employee of the Parish of Jefferson and the Parish as an entity, knew the statements were false and asserts that defendants acted with actual malice in making said statements.

59.

Plaintiff alleges that such statements under these circumstances are *per se* defamatory.

60.

Accordingly, plaintiff alleges that her business and community reputation has been irreparably harmed as a public and/or private attorney. As such, defendants are liable for compensatory damages, actual damages, emotional distress damages, punitive damages, attorney's fees, and costs.

61.

Due to the above and foregoing allegations, defendants are liable unto plaintiff for retaliation in violation of the First Amendment for:

A.    Mental anguish;

B.    Humiliation and embarrassment;

C.    Loss of enjoyment of life;

D.    Legal interest;

E.    Punitive damages (against the individual defendants);

F.    Attorney's fees; and

G.    Costs of these proceedings.

62.

Plaintiff requests a trial by jury on all claims.

WHEREFORE, plaintiff, Anne Marie Vandenweghe, prays that defendants, Steve J. Theriot and the Parish of Jefferson, be duly cited to appear and answer this Complaint and Jury Demand and, after due proceedings and legal delays, there be judgment herein in favor of plaintiff and against defendants, jointly and severally, as detailed in the foregoing Complaint and Jury Demand and in an amount reasonable in the premises, together with legal interest from the

date of judicial demand, all costs of these proceedings, reasonable attorney's fees, punitive damages and any and all equitable relief deemed appropriate by this Honorable Court under the circumstances.

Respectfully submitted,

**THE TRUITT LAW FIRM**
A Limited Liability Company

*S/Jack E. Truitt*
_____
JACK E. TRUITT, BAR NO. 18476, T.A.
149 North New Hampshire Street
Covington, Louisiana 70433
Telephone: (985) 327-5266
Facsimile: (985) 327-5252
Email: mail@truittlaw.com
Counsel for plaintiff, Anne Marie Vandenweghe