UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DANIEL G. ABEL      *    CASE NO. 13-cv-00088

VERSUS      *    JUDGE SUSIE MORGAN

DOUGLAS K. HANDSHOE AND      *    MAG. JUDGE ALMA CHASEZ
ANNE-MARIE VANDENWEGHE A/K/A
BOUDREAUX & ABC INSURANCE CO.      *

## MEMORANDUM IN SUPPORT OF DEFENDANT
## DOUGLAS K. HANDSHOE'S SPECIAL MOTION TO STRIKE

**MAY IT PLEASE THE COURT:**

This *Memorandum in Support of Motion to Strike* is respectfully submitted on behalf of Defendant Douglas K. Handshoe (hereafter "Handshoe" or "Defendant").

## INTRODUCTION

Before the Court is Defendant's Special Motion to Strike the defamation actions in Plaintiff's Complaint. Plaintiff, Daniel "Danny" Abel ("Abel"), is an associate of former Jefferson Parish President Aaron Broussard ("Broussard"), who was recently sentenced to 46 months in prison after pleading guilty to theft and conspiracy to commit bribery, wire fraud and federal program fraud.[1] Defendant Handshoe is a journalist who regularly breaks news and comments on Jefferson Parish public affairs on his blog, *Slabbed.org* ("Slabbed"). Abel alleges many of the comments made by Handshoe on *Slabbed* are defamatory.

Handshoe is protected from these allegations, however, by Louisiana Code of Civil Procedure Article 971, which was passed into law to controvert "a disturbing increase in lawsuits

---

[1] *See,* "Aaron Broussard fesses up, admits conspiracy, theft in Jefferson Parish," NOLA.com | *The Times-Picayune, available at* http://www.nola.com/crime/index.ssf/2012/09/aaron_brousssard_fesses_up_adm.html and "Aaron Broussard Sentenced to 46 Months," Nola.com | *The Times-Picayune, available at* http://www.nola.com/crime/index.ssf/2013/02/aaron_broussard_sentenced_to_6.html.

brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances."[2]   Lawsuits brought to chill speech about public issues are commonly called "strategic lawsuits against public participation," or "SLAPP suits," leading Article 971 and its counterparts in more than half of the American states to be known as "anti-SLAPP" laws.[3]   Article 971 provides defendants targeted by SLAPP suits with "a procedural device to be used early in legal proceedings to screen meritless claims," called a Special Motion to Strike.[4]

Although Handshoe's style is unorthodox and at times uncouth and unpleasant, offensive speech cannot be punished merely because it offends.[5]   We live in a country where comedians and satirists such as Jon Stewart and the cast of Saturday Night Live are celebrated.   To allow this lawsuit to go forward would have a substantial chilling effect on such speech which goes to the heart of the First Amendment.

Each and every element of Plaintiff Abel's alleged defamatory statements is either substantially true or based on reasonable opinion.   In any event, Abel cannot show the requisite falsity, fault or damages to succeed in a defamation action in Louisiana.   Handshoe invokes Article 971 as Plaintiff's lawsuit is clearly a lawsuit in retaliation for exercising his constitutionally protected right of free speech and prays that this Court will recognize and defend his right to comment on the issues of the day and dismiss Abel's claims.

---

[2] *Louisiana Crisis Assistance Ctr. v. Marzano-Lesnevich*, 827 F.Supp.2d 668, 673-74 (E.D. La. 2011), *order vacated on reconsideration,* 878 F.Supp.2d 662 (E.D. La. 2012) (*citing* La. Code Civ. P. art. 971, Legislative Findings).

[3] *Guam Greyhound, Inc. v. Brizill,* 2008 WL 4206682, at *2 (Guam Terr. Sep. 11, 2008).

[4] *Lee v. Pennington,* 830 So.2d 1037, 1041 (La. App. 4 Cir. 10/16/02).

[5] *See, Snyder v. Phelps,* 131 S.Ct. 1207 (2011).

### *DRAMATIS PERSONAE*

**Douglas K. Handshoe, Defendant**
CPA and Blogger. Owner, *Slabbed* New Media, LLC. Primary blogger, *Slabbed.org*.

**Daniel G. Abel, Plaintiff**
Plaintiff, Owner of Trout Point Lodge, Cerro Coyote, S.A., La Farme d'Acadie, Chicory Farms, Attorney and associate of Aaron Broussard, Charles Leary, Vaughn Perret and Shane Gates.

**Charles Leary**
Associate and business partner of Abel and Perret.  Owner and Manager of Trout Point Lodge. In 2011, sued *Slabbed* for defamation in Canada and attempted to execute a default judgment in Mississippi.

**Vaughn Perret**
Associate and business partner of Abel and Leary.  Owner and Manager of Trout Point Lodge. In 2011, sued *Slabbed* for defamation in Canada and attempted to execute a default judgment in Mississippi

**Aaron Broussard**
Former Jefferson Parish President arrested and sentenced to 46 months in prison.  Connected to Abel through business, politics and sharing of office space.  Also involved with marketing investments in Cerro Coyote, S.A. At one time owned property on Trout Point Rd. in Canada, immediately adjacent to the Trout Point Resort.

**Karen Parker Broussard**
Former wife of Aaron Broussard.
Her hiring and pay ultimately lead to his resignation and indictment on Federal charges.

**Chief Judge Louis Guirola, Jr.**
Chief Judge of the U.S. District Court for the Southern District of Mississippi.  Denied Leary and Perret's attempt to execute default judgment from earlier Canadian defamation case.

**Shane Gates a/k/a Shane D'Antoni**
Associate of Daniel Abel.  Served as plaintiff in some of Abel's cases.

**Roy D'Aquila**
Deceased former member/partner in Nova Scotia Enterprises, L.L.C. which federal authorities identified as a conduit for bribes to Aaron Broussard.

**Carl J. Eberts**
Investor in Cerro Coyote who wrote Aaron Broussard in 2007 asking him to help sell his share.

***LOCALE***

**Trout Point Lodge**
A Nova Scotia, Canada, hotel on the Trout Point Resort.  Owned by Abel, Perret and Leary.

**Cerro Coyote, S.A.**
A Costa Rican resort owned by Abel, Perret and Leary.

**Chicory Farms**
A defunct goat farm on the Northshore of the New Orleans area which received a grant from the U.S. Department of Agriculture.  Owned by Abel, Perret and Leary.

**La Ferme d'Acadie**
A defunct cheesemaking business in Canada that received a loan and later was sued by the Atlantic Canada Opportunity Agency. Also owned by Abel, Perret and Leary.

**Nova Scotia Enterprises, LLC**
A Louisiana Limited Liability Company which owned property in Trout Point Road in Nova Scotia.  Later identified as a conduit for bribes to Aaron Broussard.

**Kempt Wilderness Lodge Services**
A Canadian Partnership which owned property on Trout Point Road.

## FACTUAL BACKGROUND

Handshoe is the proprietor and primary journalist on his website, *Slabbed.org*, which is owned by Slabbed New Media, L.L.C., a Mississippi Limited Liability Company.  *Slabbed* is a legal and public affairs blog that covers the Gulf Coast and has, since its beginning in 2007, been recognized as one of the foremost blogs on the goings-on in the Jefferson Parish political establishment and the corruption scandal surrounding Aaron Broussard.[6]

*Slabbed* exists as a forum for local residents and other interested parties to gather and

---

[6] Indeed, NOLA.com | *The Times Picayune* regularly references and links to Slabbed as a news and commentary source for Jefferson Parish:  *See:*
http://www.nola.com/politics/index.ssf/2012/11/_jefferson_parish_politics_lin.html;
http://www.nola.com/politics/index.ssf/2013/02/jefferson_performing_arts_soci_1.html;
http://www.nola.com/politics/index.ssf/2013/02/jefferson_parish_politics_link_12.html;  and also credits *Slabbed.org* when it ̏breaks̏ news relating to legal filings: *See:*
http://www.nola.com/crime/index.ssf/2013/02/waste_management_sues_jefferso.html.

share information regarding various political and legal issues that impact the Gulf Coast. *Slabbed* began commenting on insurance coverage after Hurricanes Katrina and Rita, and eventually turned to public affairs, focusing on Jefferson Parish and the ongoing corruption scandal unfolding around Broussard, including his associations with Thomas Wilkinson and Tim Whitmer, as well as the investigation surrounding Fred Heebe and the River Birch Landfill.  In his blog posts on *Slabbed*, Handshoe comments on these issues in a biting, satirical, and taunting style.

Abel has been associated in public,[7] in Court filings,[8] and in Court opinions[9] with Trout Point Lodge Limited, a Limited Company organized under the laws of Nova Scotia, Canada. Trout Point Lodge is an eco-tourism vacation destination located on Trout Point Road in Nova Scotia.  Abel's two business partners in Trout Point Lodge include (or have included) Charles Leary and Vaughn Perret.  Broussard owned two cabins immediately adjacent to Trout Point Lodge that were marketed on the Trout Point Lodge website as if they were part of Trout Point Lodge's operations.  The Trout Point Lodge's website confirmed that Broussard owned two cottages, called "Black Bear" and "Cub."[10]  Trout Point Lodge "managed rentals of his property."[11]  As noted by the Court in the Southern District of Mississippi, Leary and Perret "helped manage Broussard's property in Nova Scotia, which is located very close to Trout Point

---

[7] Abel is an author of the "Trout Point Lodge Cookbook," *available at*: http://www.troutpoint.com/cookbook.htm.

[8] *See* Exhibit 1, Affidavit of Danny Abel (Filed in Trout Point Lodge defamation suit in Canada).

[9] *See* Exhibit 2: Order Denying Plaintiff's Motion for Summary Judgment and Granting Defendant's Motion for Summary Judgment, Southern District of Mississippi; Case No. 1:12-cv-0090-LG-JMR.

[10] *See* Exhibit 3: Trout Point Lodge Blog Post.

[11] *Id.*

Lodge.ö[12]

In its commentary on public affairs, *Slabbed* regularly connected Trout Point Lodge and its proprietors, including Abel, to Broussard, a character central to this political drama. Broussard received a law degree from Loyola University New Orleans in 1973 and began his political climb on the Jefferson Parish School Board in 1974. He later served several terms as a Parish Councilman, four terms as the Mayor of Kenner, and in 2003 was elected Jefferson Parish President. In 2007 he was re-elected Parish President. His political star began to fall as his administration of Jefferson Parish came under investigation by Federal prosecutors probing the Parishøs hiring practices. On December 17, 2010, the Louisiana Board of Ethics filed charges against Lagniappe Industries, LLC, Tim Whitmer, Dawn Whitmer and Aaron Broussard in the State of Louisiana Division of Administrative Law in the matters numbered 2009-1030, 2009-1053, 2010-029 and 2010-707. The charges against Aaron Broussard included receiving payments, gifts and/or gratuities from Lagniappe Industries, LLC. Shortly after, Aaron Broussard resigned his position as Jefferson Parish President on January 8, 2010 and shared office space with Plaintiff. The U.S. Attorneyøs Office for the Eastern District of Louisiana announced Broussardøs indictment on September 24, 2012. Broussard shortly thereafter pleaded guilty to two counts of corruption, notably stating that: õAt 23 I came into politics as a dragon slayer. At 63 years old Iøm going out as the dragon."[13]

Abeløs ties to Broussard cannot be gainsaid. He is a known associate of Aaron Broussard in the legal community. Abel worked as Broussardøs Council aide when he was first elected to

---

[12] *See* Exhibit 2: Order Denying Plaintifføs Motion for Summary Judgment and Granting Defendantøs Motion for Summary Judgment, Southern District of Mississippi; Case No. 1:12-cv-0090-LG-JMR; Rec. Doc. 35; Filed 12/19/12, p.15 at n.15.

[13] *See* õAaron Broussard pleads guilty to two corruption counts,ö Nola.com, *available at* http://www.nola.com/crime/index.ssf/2012/09/aaron_broussard_arrives_at_fed.html.

the Jefferson Parish Council.   Abel and Broussard maintained their professional relationship, until they eventually worked out of the same law office, a room at the Super 8 Motel at 2421 Clearview Parkway in Metairie, La.[14]  They also filed appeals together and represented clients as "Attorneys at Law."[15]   For example, an appellate brief cited the following address for the two associates:

> AARON F. BROUSSARD
> DANIEL G. ABEL
> Attorneys at Law
> 2421 Clearview Parkway
> Legal Department, Suite 106
> Metairie, Louisiana 70001
> COUNSEL FOR DEFENDANT/APPELLANT[16]

In 2012, Broussard's former wife Karen Parker took a plea deal from Federal attorneys, who filed a "Factual Basis" alleging that had the prosecution gone to trial, it would have proven certain facts beyond a reasonable doubt, including:

> Moreover, Broussard was a majority owner in a holding company which owned an investment property in Canada.  Broussard received income from this Canadian property. This property was partially funded by individuals and/or entities who were contractors and/or vendors doing business with Jefferson Parish during the period of time Broussard was the Jefferson Parish President.[17]

Because it is not specifically named in the Factual Basis, we do not know the name of the Canadian holding company from which Broussard received income.  However, as noted above, we do know that Aaron Broussard owned two cabins near Trout Point Lodge.  We also know that Broussard used his Canadian investments to break the law.[18] He particularly used a vehicle

---

[14] *See* Exhibit 4: *Carr v. Abel,* 64 So.3d 292, 297 (La. App. 5th Cir. 2011), *writ denied*, 63 So.3d 1016 (La. 2011).

[15] *Id.; See,* Exhibit 5: *Lowe's Home Construction, LLC v. Julius Lips, Jr.,* No. 10-CA-762 (La. App. 5 Cir. 2011).

[16] *Id.*

[17] Exhibit 6, Factual Basis for Karen Parker Plea Deal, p. 7.

[18] See Exhibit 7, 404(B) Filing for Aaron Broussard, Exhibit 6, Factual Basis for Karen Parker Plea Deal, p. 7.

known as Nova Scotia Enterprises, LLC, a company in which he had a 46% interest but to which he made no capital contribution, to receive bribes from Jefferson Parish contractors.[19]   Roy D'Aquila, an attorney and member/partner of both Nova Scotia Enterprises, LLC and Kempt Wilderness Lodge Services, once asked if Trout Point Lodge could insure his property as "an endorsement" on the Trout Point Lodge insurance policy, as suggested by Aaron Broussard.[20]   The many connections between Broussard and Canada remain largely unexplored.  When Aaron Broussard was sentenced in February 2013, the sentencing judge, U.S. District Judge Hayden Head, Jr., noted that the allegations of impropriety related to Broussard's property in Canada should be investigated further.[21]

In addition to Trout Point Lodge in Canada, Abel, Perret and Leary also owned a resort in Costa Rica called Cerro Coyote, S.A.   They have tried to market themselves as overseas investment opportunists with expert advice on international living and the associated wealth and business benefits which can be obtained by living in Costa Rica.[22]   They have also owned several other businesses, including a goat farm in Louisiana called Chicory Farm's American Gourmet, LLC.[23]   This farm received a United States Department of Agriculture grant of more than $100,000.00[24]   In addition, Abel, Perret and Leary began La Ferme d'Acadie in Canada, another goat cheese farm and tourism destination.[25]

Through the years, Handshoe has made many posts about Abel and his connections both

---

[19] *Id., See also* Exhibit 8, Exhibit A to 404(B) Filing RE: Nova Scotia Enterprises, LLC

[20] *See* Exhibit 9, Letter of Roy D'Aquila and Exhibit 10, Affidavit of Roy D'Aquila.

[21] *See* "Broussard Sentenced to 46 Months in Prison," *The Advocate,* February 26, 2013, *available at* http://theadvocate.com/home/5281989-125/broussard-sentenced-to-46-months.

[22] Exhibit 11, Costa Rica Benefits, www.living-abroad-consultants.com.

[23] Exhibit 12, La. Secretary of State corporate document for Chicory Farm's American Gourmet, LLC.

[24] See Exhibit 13, Grant Database (also noting that the business is both women and minority owned).

[25] *See* Exhibit 14, Series of articles by *Rural Delivery* on ACOA-backed Goat Cheese Creamery.

to Trout Point Lodge and to Leary and Perret, all directed at their association with the political scandal and corruption investigation surrounding Broussard.

## PROCEDURAL BACKGROUND

Trout Point Lodge, Perret, and Leary filed a complaint in Nova Scotia, Canada, alleging defamation against Handshoe.  Handshoe was served but never appeared in court in Nova Scotia, and therefore, a default judgment was taken against him.  The Canadian judge did not inquire as to the truth or falsity of the allegations against Handshoe, and instead only took testimony regarding damages.  A judgment was rendered in the amount of $525,000.00, and Leary and Perret attempted to have the judgment enforced in the Southern District of Mississippi.

In December of 2012, Chief U.S. District Judge Louis Guirola, Jr. of the Southern District of Mississippi in Gulfport granted Handshoe's Motion for Summary Judgment, dismissing defamation claims quite similar to the ones before the Court today.[26]  Chief Judge Guirola held that not only did the Canadian judicial system not allow the requisite protection for freedom of speech that an American proceeding would have, but that Leary and Perret could not show that Handshoe could be found liable under American defamation law.

Abel has now decided to take his own shot at Handshoe in the present venue.  On January 16, 2013, Plaintiff filed the instant action against Defendants Handshoe and Anne-Marie Vandenweghe, alleging a "history, habit, and practice of libel," and seeking damages.  However, as Defendant will show, Plaintiff cannot prove any of the allegedly defamatory statements as false and would fail on the merits even if he could.  As a result, Abel's Complaint should be dismissed, with prejudice, as was the action brought by Leary and Perret in the Southern District

---

[26] *See* Exhibit 2, Order Denying Plaintiffs' Motion for Summary Judgment and Granting Defendant's Motion for Summary Judgment, *Trout Point Lodge Limited v. Doug K. Handshoe,* 1:12CV90-LG-JMR (S.D. Miss. 2012).

of Mississippi.

## **LAW AND ARGUMENT**

**I.    AN ARTICLE 971 SPECIAL MOTION TO STRIKE IS PROPER IN FEDERAL COURT.**

Louisiana's anti-SLAPP law states that:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.[27]

If successful, "a prevailing party on a special motion to strike shall be awarded reasonable attorney fees and costs."[28] All discovery is stayed pending the Court's ruling on the Motion.[29] The instant case is tailor-made for the Article 971 Special Motion to Strike—the statements complained of are either truthful or are ideas and opinions which cannot be proven substantially false, and therefore protected by the First Amendment.

Federal Courts in Louisiana have held that ruling on the Article 971 Special Motion to Strike is proper, despite its state law origins, as Article 971 does not "directly collide" with the Federal Rules of Civil Procedure.[30] Indeed, Article 971 occupies a similar field of procedure; this "commonality of purpose, however, does not constitute a ‘direct collision'—there is no indication that Rules 8, 12, and 56 were intended to ‘occupy the field' with respect to pretrial

---

[27] La. Code Civ. Proc. Ann. art. 971(A).

[28] *Id.* at art. 971 (B).

[29] *Id.* at D.

[30] *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 171 (5th Cir. 2009); *Armington v. Fink,* CIV.A.09-6785, 2010 WL 743524 (E.D. La. 2010); *Louisiana Crisis Assistance Ctr. v. Marzano-Lesnevich*, 827 F. Supp. 2d 668, 74 (E.D. La. 2011), *order vacated on reconsideration,* 878 F.Supp.2d 662 (E.D. La. 2012); *Brown v. Wimberly*, CIV.A. 11-1169, 2011 WL 5438994 (E.D. La. 2011), *aff'd,* 477 Fed.App'x. 214 (5th Cir. 2012) (unpublished).

procedures aimed at weeding out meritless claims."[31]  This is further proven by the fact that the Article 971 motion creates "substantive rights, which are beyond the purview of the Federal Rules of Civil Procedure" in the form of attorneys' fees for the prevailing maker.[32]  In summary, this Motion is properly before the Court.

## II.   ARTICLE 971 APPLIES TO THE SPEECH AT ISSUE.

When a Special Motion to Strike is filed, the defendant must make a *prima facie* showing that the claims asserted against him arise from an act in furtherance of the exercise of his right of petition or free speech under the Louisiana or United States Constitution in connection with a public issue.[33]

After defendant has made this showing, the burden then shifts to the Plaintiff to demonstrate a probability of success on the merits of his claim.[34]  If he fails to do so, his claims will be dismissed, and the prevailing defendant will be entitled to recover attorneys' fees and costs.[35]

The forty-one statements of which Abel complains are clearly acts "in furtherance of [Handshoe's] right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue."  The statute provides examples of an "act in furtherance" of one's free speech rights, including, but not limited to:

---

[31] *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.,* 190 F.3d 963, 972 (9th Cir. 1999) (holding that California's anti-SLAPP law could be applied in a Federal diversity case).  Louisiana's anti-SLAPP law is "virtually identical" and "very similar" to the California anti-SLAPP statute.  *See Thomas v. City of Monroe Louisiana*, 833 So.2d 1282, 1286 (La. App. 2d Cir. 2002) and *Lee v. Pennington*, 830 So.2d 1037 at n.3 (La. App. 4th Cir. 2002), *writ denied,* 836 So.2d 52 (La. 2003).

[32] *Louisiana Crisis Assistance Ctr. v. Marzano-Lesnevich,* 827 F.Supp.2d 668, 676 (E.D. La. 2011), *order vacated on reconsideration,* 878 F.Supp.2d 662 (E.D. La. 2012).

[33] *Carr v. Abel,* 64 So.3d 292, 297 (La. App. 5th Cir. 2011), *writ denied,* 63 So.3d 1016 (La. 2011).

[34] *Id.*

[35] La. Code Civ. P. art. 971(B).

(b) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law.

(c) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.

(d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.[36]

Commentary like the statements complained of, no matter how offensive or satirical, is clearly an act in furtherance of Handshoe's right to freedom of speech under the United States and Louisiana constitutions. *Slabbed* regularly breaks news and comments on "public issues" such as the Jefferson Parish corruption scandal. Plaintiff correctly points out in his petition that Handshoe is a publisher[37] who regularly has "statements published" which he claims subjected him to contempt and ridicule "due to Defendants' Internet publications."[38]

All this, combined with earlier citations in this brief, should lead this Court to find that the commentary was clearly on an issue of public concern, as Defendant regularly was quoted and linked to as a source for Jefferson Parish public affairs news.[39] The burden therefore shifts to the Plaintiff to show he would succeed on the merits of a defamation action under Louisiana law, and he cannot do so.

## III.    PLAINTIFF HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS.

After showing that the speech relates to a public issue, "the burden is on Abel to

---

[36] *Id.* at F.

[37] Rec. Doc. 1, Original Complaint, ¶6-7.

[38] Rec. Doc. 1, Original Complaint, ¶9.

[39] *See* Note 6, *supra*.

demonstrate a probability of success on his claim."[40]  This is a "difficult burden" for the plaintiff faced with an Article 971 Motion.[41]

      To succeed on a defamation action under Louisiana law, the Louisiana Supreme Court has stated that the test requires: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury.[42]  In addition, the U.S. Supreme Court has required that the plaintiff bear the burden of showing falsity, as well as fault, before recovering damages.[43]

      Defendant does not dispute that element (2) is satisfied because the complained of acts were published.  However, Handshoe believes that there are significant defects in elements (1), (3) and (4).  Defendant will address them in reverse order in an attempt to streamline the arguments.

### a.  Plaintiff Cannot Claim Personal Injury

      It is notable that Plaintiff claims injury from a blog written in "code," using derogatory colloquialisms like "the legal Department at the Super 8 Motel on Clearview" and "the girls" to ambiguously refer to Broussard and his cohorts.  Truthfully, few but the most dedicated readers would understand these statements relate to Abel in any way.  Handshoe doubts this is so and avers that, even if these statements are defamatory, no real damage has come to Plaintiff's reputation.

### b.  Plaintiff Cannot Show the Required "Fault" or "Actual Malice."

      In his petition, Plaintiff claims he is not a public figure.  However, while Defendant

---

[40] *Abel*, 64 So. 3d at 297.

[41] *Henry v. Lake Charles American Press, L.L.C.,* 566 F.3d 164, 181 (5th Cir. 2009).

[42] *Kennedy v. Sheriff of E. Baton Rouge*, 935 So.2d 669, 674 (La. 2006).

[43] *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986)

agrees that Plaintiff is not an "all-purpose" or general public figure– that is to say that he is not a celebrity– Abel is still deeply involved in a particular public controversy and should be classified as a "limited public figure."  As a known friend of Aaron Broussard and Wendell Gauthier, Abel is no stranger to controversy.[44]  If Abel is found to be a limited public figure, he must show that every statement was published with "actual malice," that is, knowing falsity or reckless disregard for whether the statement was false or not.[45]  If he is a private figure, he must show a failure to exercise reasonable care under the circumstances, or negligence, unless the statement can be classified as opinion, in which case Louisiana law states that he must show actual malice regardless.[46]

In any case, Abel cannot satisfy the fault requirement of Louisiana defamation law.

### i. Daniel Abel is a Limited or Vortex Public Figure And Must Show Actual Malice to Succeed in his Defamation Claims.

According to the U.S. Supreme Court, limited public figures are those who have thrust themselves or are "drawn into a particular public controversy and thereby become[] a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions."[47]  Or, they are involuntarily drawn into a public controversy.[48]  Limited purpose public figures must prove actual malice, or knowing falsity or reckless disregard for whether the statement was false or not, "by clear and convincing evidence.[49]  The Fifth

---

[44] Abel is a published author, having written about his times as a lawyer in the employ of prominent trial attorney Wendell Gauthier, in "Outgunned: Up Against the NRA--The First Complete Insider Account of the Battle Over Gun Control," Published in 2002.  He has also appeared in local media stories concerning his lawsuits filed against various governmental entities and actors.

[45] *New York Times v. Sullivan,* 376 U.S. 254, 279 (1964).

[46] *Fitzgerald v. Tucker,* 737 So.2d 706, 717 (La. 1999).

[47] *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 351 (1974).

[48] *Id.*

[49] *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 273 (1986).

Circuit has enunciated the following test to determine if an individual is a limited purpose public figure:

> (1) The controversy at issue must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution; (2) the plaintiff must have more than a trivial or tangential role in the controversy; and (3) the alleged defamation must be germane to the plaintiff's participation in the controversy.[50]

Aaron Broussard's downfall is the textbook public controversy. Abel's role in Trout Point Lodge and Cerro Coyote, both connected to Broussard, as well as his position as Broussard's sometimes-law-partner, make him more than a tangential participant or someone drawn into the controversy. Furthermore, all the alleged defamation in Plaintiff's Complaint surrounds, encompasses, and involves the Broussard corruption scandal.

Due to his close association with Aaron Broussard, Abel has also been drawn in to the public controversy, or become an involuntary limited public figure, as originated in *Gertz v. Robert Welch*.[51] An involuntary public figure is one "directly affected by the action of public officials,"[52] who is drawn centrally into the public controversy, thus attaining limited public figure status and requiring proof of actual malice by clear and convincing evidence.[53] Abel's association with Broussard drew him into the public controversy surrounding his indictment and also assigned him limited public figure status. The compelling argument for this theory states that just because the business partner, or the law partner, of a public figure such as Broussard claims to be a private figure, that he or she should not be afforded that status strictly. Sometimes, partners are drawn into the controversy merely by their association with the figure

---

[50] *Trotter v. Jack Anderson Enterprises, Inc*., 818 F.2d 431, 433-34 (5th Cir. 1987).

[51] 418 U.S. 323, 339 (1974).

[52] *Trentecosta v. Beck*, 703 So. 2d 552, 565 (La. 1997) (Taylor, J. Dissenting).

[53] *Foretich v. Adv. Mag. Publishers, Inc*., 765 F. Supp. 1099, 1108 (D.D.C. 1991).

and the controversy.[54]

In *Broussard v. Kaplan,* an insurance agent seeking out a city contract was found to be a limited purpose public figure because the mismanagement of the city's finances had become the "talk of the town."[55]  In *Wood v. Del Giorno,* the Louisiana Fourth Circuit Court of Appeal, applying the above test, found that the plaintiff, an environmentalist, was a limited purpose public figure because he agreed to go on a single radio show and discuss a controversial topic of "canned hunts" and represent his animal rights organization.[56]   In *Alexanian v. Brown,* the Western District of Louisiana found that a private citizen became a limited purpose public figure when he sent a press release to a local newspaper regarding a local animal shelter.[57]

Surely Abel's connexity with Broussard and Trout Point Lodge warrants limited purpose public figure status in this case.  Abel himself admits that he is "closely associated" with the public reputation of Trout Point Lodge.[58]  Abel is part-owner of the Lodge and is the author of a cookbook about Trout Point Lodge.[59]  Abel was brought into the limelight of this public scandal when Trout Point Lodge became associated with Broussard.  The public controversy surrounding Broussard and Trout Point render Plaintiff a limited purpose public figure who must show actual malice in the allegedly defamatory postings, which Defendant submits he cannot show as all postings were either true or protected opinion formed by reviewing facts found in the public

---

[54] *Id. See Dameron v. Washington Magazine, Inc.,* 779 F.2d 736, 742-643 (D.C.Cir.1985); *Atlanta Journal-Constitution v. Jewell,* 555 S.E.2d 175, 185-86 (Ga. App. 2001; *Daniel Goldreyer, Ltd. v. Dow Jones & Co.,* 787 N.Y.S.2d 64, 65 (N.Y. App. Div. 1999); *Bay View Packing Co. v. Taff,* 543 N.W.2d 522, 525 (Wis. Ct. App. 1995). *See also* W. Wat Hopkins, The Involuntary Public Figure: Not So Dead After All, 21 Cardozo Arts & Ent. L.J. 1, 49 (2003).

[55] *Broussard v. Kaplan*, 604 So. 2d 77, 83 (La. App. 3d Cir. 1992)

[56] 974 So.2d 95, 101 (La. App. 4 Cir. 2007).

[57] *Alexanian v. Brown*, 2009 WL 2356443 (W.D. La. 2009).

[58] Rec. Doc. 1, at ¶15.

[59] *Id.*

records.

Plaintiff also cannot show that Handshoe published any defamatory statements with knowing falsity or with reckless disregard for whether they were false or not.   The Supreme Court has said that "reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." Instead, there must be "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."[60]   In *Thompson,* the Supreme Court stated that the speaker had no reason to doubt the slanderous charges he read aloud at a forum, and no reason to doubt the reliability of the source.[61]   In addition, the Court said that "failure to investigate does not in itself establish bad faith."[62]   In fact, Handshoe's own opinions are formed by facts obtained from the public records, and his reasonable inferences *at the time of investigation*— which could not be verified by review in any other record— cannot be shown to be "reckless" to the standard that he "entertained serious doubts as to the truth of his publication."   Each of his publications must be taken in temporal context— they were written as more and more evidence in the prosecution of Broussard was unveiled.   In Canada, Handshoe saw the smoke, and looked for the fire.

In conclusion, Abel is a limited purpose public figure for the particular public controversy of the connections from Aaron Broussard to the Trout Point Lodge in Nova Scotia, Canada.   Because he is a limited public figure, he must, but cannot, show actual malice by clear and convincing evidence.

---

[60] *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

[61] *Id.*

[62] *Id.* at 733.

### ii. If Not a Limited Public Figure, Abel Cannot Show that Handshoe Failed to Exercise Reasonable Care Under the Circumstances.

If this Court finds that Plaintiff is a private figure, Abel still cannot satisfy the fault requirement of Louisiana Libel Law.  The standard in Louisiana for defamation of a private figure making a false statement of fact— not opinion or opinion that implies fact--is negligence: or the failure to exercise reasonable care under the circumstances.

Given the overwhelming amount of information found in the local media and on the Internet about Trout Point Lodge and its connections to Broussard, the allegedly defamatory statements are reasonable inferences.   Given the ongoing investigation of Broussard's relationships on display in the legal system that *Slabbed* monitors, the supposedly defamatory statements do not rise to the level of failure to exercise reasonable care under the circumstances.

### iii. Abel Cannot Show that All of Handshoe's Expressions of Opinion Imply False and Defamatory Facts Made with Actual Malice.

Because "without an assertion of fact there can be no falsity,"[63] the Louisiana Supreme Court has noted that an expression of opinion is actionable only if it "implies the existence of underlying facts ascertainable by a reasonable person with some degree of certainty, and the implied factual assertions are false, defamatory, ***made with actual malice***, and concern another."[64]

In *Mashburn v. Collin*, the Louisiana Supreme Court first established that the First Amendment and Article 1, Section 7, of the Louisiana Constitution protect expression of opinions about matters of public concern that were made without knowing or reckless falsity.[65] In *Bussie v. Lowenthal*, the Court further stated that a statement of pure opinion, based totally on

---

[63] *Bussie v. Lowenthal*, 535 So.2d 378, 381 (La.1988).

[64] *Fitzgerald v. Tucker*, 737 So.2d 706, 717 (La. 1999) (emphasis added).

[65] 355 So.2d 879 (La.1977).

the speaker's subjective view which does not state or imply the existence of underlying facts, is afforded complete protection under the First Amendment. [66] Other opinions which state or infer that certain false facts are true will still be protected if the statements were made ōwithout knowing or reckless falsity.ö[67]

As noted above, actual malice requires the knowledge that the statement was false and/or reckless disregard for whether it was false or not.  Because Handshoe regularly sourced the factual basis for his opinions, Abel cannot show that he acted with actual malice.  In *Bussie,* the Louisiana Supreme Court held that an expression of opinion is actionable only if it implies ōthe existence of underlying facts, and in turn the implied factual assertion was false, defamatory and made with actual malice.ö  In that case, a Boeing employee stated that as long as a certain labor union leader was still in Baton Rouge, the company would not move operations to Louisiana. The labor leader sued and alleged actual malice.  The Court could find none, as the opinion was just thatô the subjective opinion of and interpretation of facts by the speakerô and was therefore protected.ö[68]

Therefore, pure opinions about Plaintiff are protected.  Opinions which imply facts are protected unless Plaintiff can show that they were published with knowledge the statements were false or with reckless disregard for the truth.  As with the above discussion of the similar standard of actual malice for limited purpose public figures, Plaintiff cannot make such a showing.

---

[66] *Bussie,* 535 So.2d at 381.

[67] *Id.*

[68] *Id.* at 382.

    **c.    The Alleged Defamatory Statements Are Not False Statements of Fact and/or Of and Concerning the Plaintiff.**

In the following sections, Handshoe will address the law protecting the use of opinion and hyperbole in his commentary.  Handshoe will then address each and every allegedly defamatory statement and show why Plaintiff cannot succeed on the merits of his Complaint.

    **i.    Statements of Opinion Are Not Actionable Unless They Are Sufficiently Factual to Be Proven True or False.**

The U.S. Supreme Court has stated that, "Under the First Amendment there is no such thing as a false idea."[69]  Although false statements of fact are not protected if made with fault, before "the test of reckless or knowing falsity can be met, there must be a false statement of fact."[70]  This requires a statement that is "sufficiently factual to be susceptible of being proved true or false."[71]  In the instant case, Abel complains of many statements which are "subjective assertions" and not "an articulation of an objectively verifiable event."[72]

In *Milkovich v. Lorain Home Journal,* the U.S. Supreme Court announced the principle that "matters of public concern must be provable as false before there can be liability under state defamation law."[73]  Louisiana libel law has also adopted this rule, stating that "[A] statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection."[74]

Because "without an assertion of fact there can be no falsity,"[75] the Louisiana Supreme

---

[69] *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339 (1974).

[70] *Old Dominion Branch No. 496, Nat. Ass'n of Ltr. Carriers, AFL-CIO v. Austin,* 418 U.S. 264, 284 (1974).

[71] *Milkovich v. Lorain J. Co.,* 497 U.S. 1, 21 (1990).

[72] *Id.* at 22.

[73] *Id.* at 19.

[74] *Romero v. Thomson Newspapers (Wisconsin), Inc.,* 648 So.2d 866, 870 (La. 1995).

[75] *Bussie v. Lowenthal,* 535 So.2d 378, 381 (La.1988).

Court has noted that an expression of opinion is actionable only if it "implies the existence of underlying facts ascertainable by a reasonable person with some degree of certainty, and the implied factual assertions are false, defamatory, made with actual malice, and concern another."[76] In *Marshall Investments v. R.P. Carbone,* the Eastern District of Louisiana refused to find actionable under defamation law the statement that a potential lender should "stay away from the project" because the defendant was a "bad person."[77]  In *Singleton v. St. Charles Parish,* the assertions that the plaintiff was "lazy or not wanting to work" were found to be "clearly expressions of opinion" which "can be neither true nor false."[78]

Recent cases involving bloggers being sued by their subjects have appropriately held that: "Statements are generally considered to be nonactionable opinion when the facts supporting the opinion are disclosed."[79] In *Redmond v. Gawker Media,* the California anti-SLAPP statute was applied to a posting claiming that the plaintiff's new venture was the "Greatest Scam in Tech." But "scam í  means different things to different people and is used to describe a wide range of conduct,"[80] and because the blogger was merely offering the reader his interpretation of the facts, the statement was not actionable.[81]

Handshoe's opinions are similarly researched conjectures based on the facts available to him at the time of publication.  The Ninth Circuit Court of Appeals, citing supporting law in the First Circuit and several district court cases, has held that: "[W]hen an author outlines the facts

---

[76] *Fitzgerald v. Tucker*, 737 So.2d 706, 717 (La. 1999).

[77] *Marshall Investments Corp. v. R.P. Carbone Co.*, 2006 WL 2644959, *3 (E.D. La. 2006).

[78] *Singleton v. St. Charles Parish*, 833 So.2d 486, 496 (La. App. 5th Cir. 2002), *writ denied*, 839 So.2d 44 (La. 2003); *See also Tatum v. Orleans Parish Sch. Bd.,* 982 So.2d 923, 926 (La. App. 4th Cir. 2008), *writ denied*, 989 So.2d 102 (La. 2008) (recommendation that teacher not be rehired was not defamatory).

[79] *Redmond v. Gawker Media, LLC*, 2012 WL 3243507 (Cal. App. 1st Dist. 2012).

[80] *Id.* at *6.

[81] *Id.*

available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment."[82]   This statement best describes Handshoe's approach to his sleuthing about Abel, Broussard and the Trout Point Lodge.

Louisiana's own law of libel states that the threshold of fault is higher for statements of opinion.   In *Mashburn v. Collin*, the Louisiana Supreme Court established that the First Amendment protects expression of opinions about matters of public concern that were made without knowing or reckless falsity.[83]   In *Bussie v. Lowenthal*, the Court further stated that a statement of pure opinion, based totally on the speaker's subjective view which does not state or imply the existence of underlying facts, is afforded complete protection under the First Amendment. [84] Other opinions which state or infer that certain false facts are true will still be protected if the statements were made "without knowing or reckless falsity, or actual malice."[85]

Therefore, pure opinions about Plaintiff are protected.  Plaintiff must show that opinions which imply facts were published with knowing or reckless falsity.  As with the above discussion of the similar standard of actual malice for limited purpose public figures, Plaintiff cannot make such a showing.  Because a statement must be "sufficiently factual to be susceptible to be proved true or false," in order to be actionable under defamation law,[86] all of the statements complained of in Abel's petition should not survive this Motion.

---

[82] *Partington v. Bugliosi*, 56 F.3d 1147, 1156-57 (9th Cir. 1995).

[83] 355 So.2d 879 (La.1977).

[84] 535 So.2d 378 (La.1988),

[85] *Id.*

[86] *Id.*at 21.

### ii. Figures of Speech or Statements of Hyperbole Are Similarly Not Actionable.

Similar to opinion, statements of hyperbole or satire are not actionable as they cannot be reasonably interpreted by the reader as stating "actual facts" about a person.  Hyperbole and words used in the "loose figurative sense," are not actionable because the reasonable reader does not believe the literal truth or falsity of the use of the words.[87]  The U.S. Supreme Court has said that protection for these words "provides assurance that public debate will not suffer for lack of ˗imaginative expression˗ or the ˗rhetorical hyperbole˗ which has traditionally added much to the discourse of our Nation."[88]

In the case of *Greenbelt Co-Op. Pub. Ass'n v. Bresler,* the U.S. Supreme Court directly addressed the issue of hyperbole in defamation.  The case centered around a newspaper's account of speakers at public meeting who used the word "blackmail" to describe the plaintiff's negotiating tactics.  Bresler sued, claiming defamation.  He argued that since the newspaper and the speakers knew that he had not committed the crime of blackmail, "they could be held liable for the knowing use of falsehood."  Bresler was successful on the trial and appellate level, until the U.S. Supreme Court reversed, arguing that:

> It is simply impossible to believe that a reader who reached the word "blackmail" in either article would not have understood exactly what was meant: it was Bresler's public and wholly legal negotiating proposals that were being criticized. No reader could have thought that either the speakers at the meetings or the newspaper articles reporting their words were charging Bresler with the commission of a criminal offense.  On the contrary, even the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a

---

[87] *Greenbelt Co-op. Pub. Ass'n v. Bresler*, 398 U.S. 6, 14 (1970); *Old Dominion Branch No. 496, Nat. Ass'n of Ltr. Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 284 (1974); *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 16-17 (1990); *See also Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988) (ad parody which "could not reasonably have been interpreted as stating actual facts about the public figure involved"); *See also In re Baxter,* 2001 WL 34806203 at n.20 (W.D. La. 2001).

[88] *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990).

vigorous epithet used by those who considered Bresler's negotiating position extremely unreasonable.[89]

The U.S. Supreme Court again addressed the requirement that a statement is not actionable unless it can reasonably be interpreted as stating actual facts about a person in *Letter Carriers v. Austin,* declaring it was "similarly impossible to believe that any reader of the *Carrier's Corner* would have understood the newsletter to be charging the appellees with committing the criminal offense of treason."[90]

Louisiana Courts, citing the above cases, have recognized that "speakers may use language that is insulting, offensive, or otherwise inappropriate, but constitutes no more than rhetorical hyperbole." Statements that are mere hyperbole cannot reasonably be understood to convey a false representation of fact."[91]  Also, the Louisiana Supreme Court has explicitly stated that "[h]yperbole, which could not reasonably be interpreted as stating actual fact, is protected."[92]

Indeed, in *Wood v. Del Giorno*, a talk radio guest filed a libel action against a host when he interrupted and made several rude comments to and/or about the plaintiff including: "The man is a fraud. He is a complete fraud!"; "Everything you've said so far is out-and-out lying!"; and, "You're an idiot!"[93]  The trial court found and the Court of Appeal affirmed that the statements were not defamatory as they did not "necessarily imply, in the mind of a listener of ordinary intelligence and sensitivity, that Wood is guilty of the crime of fraud." Del Giorno's reference to Wood as an "idiot," was

---

[89] *Greenbelt*, 398 U.S. at 14.

[90] *Old Dominion Branch No. 496, Nat. Ass'n of Ltr. Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 285 (1974)

[91] *Wood v. Del Giorno*, 974 So. 2d 95, 100 (La. App. 4th Cir. 2007) *writ denied,* 977 So. 2d 933 (La. 2008) (citations omitted).

[92] *Romero v. Thomson Newspapers (Wisconsin), Inc.,* 648 So. 2d 866, 870 (La. 1995).

[93] *Wood,* 974 So.2d at 100.

merely an opinion and is not likely to be understood by a normal listener to convey the false idea that Wood lacks normal mental capacity. Similarly, Del Giorno's remarks that Wood is a fraud and a liar cannot be understood to convey to the average listener that Wood is a person lacking moral character or untruthful in his business practices. í   The remarks were plainly abusive words not intended to be taken literally as statements of fact. Accordingly, we find that Del Giorno's remarks, while rude and insulting, are not defamatory.[94]

Based on the clear holdings of the U.S. Supreme Court and Louisiana Courts, any statements deemed hyperbole or that which were not intended to be taken as literal statements of fact cannot be actionable.

### iii.   Statements Made Before February 4, 2012, Have Prescribed and Are Not Actionable.

Claims for defamation are delictual in nature and are subject to La. Civ. Code art. 3492's one-year prescriptive period, which commences to run from the day injury or damage is sustained.[95]   The õre-publishingö claimed õin the 2nd week of February, 2012ö[96] in Abel's Complaint is simply not a õre-publishing,ö but instead, a server change.

The õsingle publication ruleö is a theory in defamation law which states that when an allegedly defamatory statement is published in a new format, such as when a hardcover book is republished in paperback form, it is considered õrepublishedö and the statute of limitations begins to run from the date of republication.[97]   That is not the case here, as the post remained õpublishedö since its original publication date of April 11, 2011.   The fact that a publisher continues to make allegedly defamatory material available does not create a situation involving

---

[94] *Id.*

[95] *See Wiggins v. Creary*, 475 So.2d 780, 781 (La. App. 1st Cir.), *writ denied,* 478 So.2d 910 (La. 1985); *Clark v. Wilcox,* 928 So.2d 104, 112 (La. App. 1st Cir. 2005), *writ denied,* 929 So.2d 1252 (La. 2006); *James v. Clark*, 767 So.2d 962, 964 (La. App. 1st Cir. 2000).

[96] Rec. Doc. 1 at ¶91.

[97] *Nationwide Bi-Wkly. Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 146 (5th Cir. 2007) (*citing* Restatement (Second) of Torts § 577A cmt. *d.*).

republication.[98] "Likewise, the continued availability of an article on a website should not result in republication, despite the website's ability to remove it."[99] Following *Firth v. State,* a New York State Court decision which held that every "hit" an article receives does not constitute republication, and applying the single publication rule to Internet postings,[100] every Court which has addressed the issue "has followed suit."[101] "Therefore, the statute of limitations begins to accrue on the first date of publication where subsequent republications have the same content as the original publication."[102]

In February 2012, *Slabbed* did move its website hosting service provider from BlueHost to Dreamhost, but to the reader or the regular visitor, there was no evidence of this move or change to the site.[103] Such backstage construction does not constitute "re-publishing," and would lead to absurd policy if it did. Since a server change could not interrupt the one-year prescriptive period, all statements that were published before January 16, 2012, including those listed in Paragraphs 66 through 92, have prescribed and should be summarily dismissed by this Honorable Court.

---

[98] *Van Buskirk v. New York Times Co.*, No. 99 Civ. 4265, 2000 WL 1206732, at *2 (S.D.N.Y. Aug. 24, 2000), a*ff'd.,* 325 F.3d 87 (2d Cir. 2003).

[99] *Nationwide Bi-Wkly. Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 145 (5th Cir. 2007).

[100] *Firth v. State*, 775 N.E.2d 463, 465 (N.Y. 2002).

[101] *Shepard v. TheHuffingtonPost.com, Inc.*, 2012 WL 5584615, *2 (D. Minn. 2012) (citing *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 174 (3d Cir.2012); *Oja v. Army Corps of Eng'rs*, 440 F.3d 1122, 1133 (9th Cir.2006); *Van Buskirk v. New York Times Co.*, 325 F.3d 87, 89 (2d Cir.2003); *Mitan v. Davis*, 243 F.Supp.2d 719, 724 (W.D.Ky.2003); *Churchill v. State*, 378 N.J.Super. 471, 876 A.2d 311, 316 (N.J.2005); *McCandliss v. Cox Enters.*, 265 Ga.App. 377, 593 S.E.2d 856, 858 (Ga.2004); *Traditional Cat Ass'n v. Gilbreath*, 118 Cal.App.4th 392, 13 Cal.Rptr.3d 353, 361‐62 (Cal.2004).).

[102] *Shepard*, 2012 WL 5584615 at *2.

[103] *See* http://www.slabbed.org/2012/02/08/the-move-back-to-slabbed-org-is-almost-complete/ and http://thehayride.com/2012/02/local-anti-corruption-blog-silenced-by-canadian-judge-cowardly-web-host/ for coverage of said move.

### iv. Each Statement Can Be Refuted as Opinion, Hyperbole, Factually True and/or Prescribed.

From what counsel can discern, Plaintiff has alleged forty-one statements defamed him. As noted above, he will have to prove these statements substantially false and made with actual malice in order to defeat the Article 971 Motion.  Handshoe preemptively responds to each statement in order to fully enunciate for this Honorable Court why all of these statements are not actionable, since they are substantially true, not provably false, are statements of opinion, are reasonable conjectures and not actual malice, or have prescribed.

### 1.  Statement One

In Paragraphs 21 through 23 of his Original Complaint, Plaintiff states that Handshoe defamed him by stating that "travel media in Canada" were "taking payola for promoting Aaron Broussard and Danny Abel's business interests at the resort at Trout Point in Nova Scotia."

Travel media in Canada did take free stays at the Trout Point Lodge and wrote positive reviews about the resort.[104]  Handshoe's opinion that this was unethical was expressed in the hyperbolic term of "payola."  In addition, this is not a statement that Plaintiff can prove substantially false as it is based in opinion.  Payola is susceptible to many meanings. Abel and Broussard both, at one time, owned property at or which was managed by Trout Point Lodge and would stand to benefit from favorable travel reviews.[105]

### 2.  Statement Two

In Paragraph 24 of his Original Complaint, Plaintiff states that Handshoe defamed him by stating that "the brand of law he practices is straight from the shit house as *Slabbed* once again illustrates how this guy would have never made it in the legal profession period had it not been

---

[104] *See* Exhibit 15, Moore, Oliver, "On a night safari in Nova Scotia," *The Globe and Mail,* 8/26/2011.

[105] Rec. Doc. 1,  Original Complaint, ¶15,

for his associations with Wendell Gauthier and Aaron Broussard.ö

These statements are all protected opinions, which cannot be proven false.   These opinions were formed based on sanctions levied against Abel by the U.S. Fifth Circuit Court of Appeals for failure to uphold standards of the legal profession.[106]   Abeløs clients have also sued him for malpractice.[107]   This is a reasonable inference by Handshoe and Plaintiff cannot show it is provably false.   Much like the öblackmailö case above, östraight from the shit houseö is hyperbole.   It is meant to be funnyô a reasonable person would not conclude that Abel works in a privy.   Furthermore, Plaintiff is connected to Wendell Gauthier[108] and to Broussard, as noted above.

### 3.   Statement Three

In Paragraphs 26 and 27 of his Original Complaint, Plaintiff states that Handshoe defamed him by stating:

> At this point I must point out that there has been one media outlet that has stayed on the case of Aaron Broussard and his band of grifting goatherders and that would be Slabbed Newmedia. While Steve Newhouseøs Times Picayune and Fox 8 ran from these SLAPP happy nut jobs like scared schoolgirls *Slabbed* remained hot on the trail following leads, despite the threats, bringing this aspect of the massive scandal in Jefferson Parish home.

Plaintiff claims this statement defamed him because it implies that he files lawsuits against participation in matters of public interest, that he is involved in a scandal or coverup, and that he is a ögrifter.ö

In response, Handshoe avers that the post is not of and concerning Plaintiff Abel, but instead referring to the lawsuits against Handshoe by Leary, Perret and Trout Point Lodgeô a

---

[106] *See* Exhibit 16. (Sanctions against Abel, D. in Case 2:10-cv-02786).

[107] *Carr v. Abel,* 64 So.3d 292, 297 (La. App. 5th Cir. 2011), *writ denied,* 63 So.3d 1016 (La. 2011).

[108] *See* Exhibit 17 (*Weekly Standard* Article of 3/20/2006, p.5).

place that he is, according to his own Complaint "closely associated with."[109]  Trout Point Lodge

did file a lawsuit which Handshoe believes, in his opinion, was directly related to his

participation in a matter of public interest.[110]  Because Abel is not identified in the comment, he

cannot possibly have any damages associated with it.  The word "grifter" is not defamatory *per

se*, despite Plaintiff's claims, due to its susceptibility to multiple meanings, as held by the Eastern

District of Louisiana in *Russo v. Conde Nast Publications*.[111]  In *Russo,* the Court noted "the

numerous definitions of ÷grifterø include but are not limited to the following: gambler,

confidence man, swindler, person who operates a sideshow at a circus, and dishonest person."[112]

The use of the word "goatherder" is hyperbole and satire associated with Abel's

participation in the Chicory Farms Goat Farm.  Abel was, in fact, associated with at least two

goat farms.[113]  Finally, Plaintiff cannot show that this comment is provably false.

### 4.   Statement Four

In Paragraph 28, Plaintiff alleges that Handshoe "published a video clip of a retraction

broadcast," which "implied that the retraction was untrue."  However, he alleges no specific facts

to support this allegation.  The publication of a video clip is not defamatory; it is in fact, true.

The publication is not "of and concerning" the Plaintiff as required by defamation law.  Any

implication as to the truth or falsity of the video clip exists only in the Plaintiff's mind, and is not

provably false to boot.

---

[109] Rec. Doc. 1, Original Complaint, ¶15.

[110] *See* Exhibit 2.

[111]  806 F. Supp. 603, 608 (E.D. La. 1992).

[112] *Id.* at 607.

[113]*See,* Exhibit 12, Chicory Farms Corporation Database, Exhibit 14, *Rural Delivery* articles.

### 5. *Statement Five*

In Paragraph 29 of his Original Complaint, Plaintiff states that Handshoe published: "I've got more coming on the US taxpayer fleecing that was Chicory Farms." He claims this accuses him of criminal fraud.

In fact, a reasonable reader would not truly believe, as in the *Del Giorno* case above, that Handshoe was arguing Abel actually committed *criminal* fraud. Abel is not identified in the defamatory statement, and "fleecing" is not a crime. "Fleecing" is susceptible to several meanings, like "blackmail," or "grifter," as noted above. Plaintiff cannot prove that he was reasonably identified or that Chicory Farms did not "fleece" the United States Department of Agriculture for a loan for Chicory Farms, as it is true Chicory Farms received a USDA grant[114] and that many people hold the opinion that these grants "fleece" the Federal Government.[115] Finally, due to the prevalent use of opinion and satire in this comment, Plaintiff cannot show that it is provably false.

### 6. *Statement Six*

In Paragraphs 31 and 32 of his Original Complaint, Plaintiff states that Handshoe called him a terrorist and stated that he was inflicting harm on the news media when he published: "Folks like I said last month I've maybe shown 10% of the accumulated jackassery inflicted upon the journalism profession by Eco Libel Terrorists Vaughn Perret, Charles Leary and Danny Abel."

Handshoe was again engaged in a hyperbolic way of showing Abel's connection to

---

[114] *See* Exhibit 13, Grant Database (also noting that the business is both women and minority owned).

[115] *See, e.g. Hutchinson v. Proxmire,* 443 U.S. 111 (1979) (Speech and Debate Clause of U.S. Constitution did not insulate Senator who gave out "golden fleece of the month award" to Professor who received government money for research).

õLibel Tourism,ö the practice of getting a libel judgment in a foreign country with lower free speech protections than the United States, and attempting to enforce that judgment in an American Court.  Indeed, as noted above, Leary and Perret, and Trout Point Lodge, have filed lawsuits against journalists, including Handshoe, in Canada and attempted to do just that.[116]  In addition, Leary has faxed information to Twitter under the heading õAbel Law Firmö in an attempt to shut down the *Slabbed* Twitter Account.[117] This statement is substantially true.

### 7.  Statement Seven

In Paragraphs 33 through 36 of his Original Complaint, Plaintiff states that Handshoe defamed him by stating that:

> There is gonna be more folks as I do not think Aaron Broussard has been completely forthright in his squeal-a-thon with the United States Department of Justice, especially the intersection of the –Legal Department at the Super 8 Motelø on Clearview Parkway to Broussardøs business enterprise in Costa Rica, Cerro Coyote, SA, which a reasonable person could conclude laundered Broussardøs ill gotten gains based upon the written statements of Broussardøs business associates, Charles Leary, Vaughn Perret and Daniel –Dannyø Abel.[118]  Iøm within inches of tying the whole sordid affair together.

This statement contains Handshoeøs opinion that Broussard had more to tell regarding his connections to Abel and Cerro Coyote.  Broussard was connected to Cerro Coyote, which was also owned by Leary and Perret.[119]  Abel cannot prove Handshoeøs ability, as a reasonable person, to conclude that Broussardøs connection to Cerro Coyote and Leary, Perret and Abel was nefarious.   The fact that Handshoe believed he was õwithin inches of tying the whole sordid affair togetherö is not defamatory and is, in fact, Handshoeøs present state of mind as he

---

[116] *See* Exhibit 2.

[117] *See* Exhibit 18.

[118] Exhibit 11, Costa Rica Benefits, www.living-abroad-consultants.com.

[119] *See* Exhibit 19: Letter from Carl Eberts.

attempted to dissect the Broussard indictment and sentencing.   This statement represents

Handshoe's opinion and Plaintiff cannot prove it substantially false.

### 8.   Statement Eight

In Paragraphs 37 and 38 of his Original Complaint, Plaintiff states that Handshoe

defamed him by stating that: "Conflicting legal positions contrived to satisfy the moment is a

common theme with Abel, Leary and Perret."

Conflicting legal positions contrived to satisfy the moment could also be called practicing

law, considering the differences in client needs that often arise.  This statement is not defamatory

as it merely describes lawyering, such as it is.  It is also not provably false.

### 9.   Statement Nine

In Paragraphs 39 through 41 of his Original Complaint, Plaintiff states that Handshoe

defamed him by stating that:

> Abel and Broussard were the "legal department" at Desai's Super 8 Motel.  Desai,
> via his parents, also owns property at the Trout Point Resort in Nova Scotia along
> with a bevy of highly politically collected Louisianans, the Lodge itself at the
> resort being owned by Abel, Leary and Perret.  The resort has been mentioned in
> Federal Court filings as a bribery conduit for Broussard, an allegation to which he
> copped a plea.  In light of a couple of new friends that I have made of the past
> couple of months and all the ties the gang has to each other that literally span the
> world, it did not surprise me when sources familiar with the operations of the
> legal department at the Super 8 Motel disclosed to Slabbed that Desai was a
> frequent traveler to Costa Rica and his visits included stops at the Inn at Coyote
> Mountain aka Cerro Coyote SA.  Of course there is more so please stay tuned
> because Slabbed is on the verge of breaking this bad boy wide open.  Oh boys!

This statement is not defamatory because it is substantially true.   Broussard owned

property adjacent to the Trout Point Lodge in Canada and a resort property was mentioned in the

404(B) filing by Federal Authorities and in Karen Parker's Factual Basis.[120]   Defendant did not

---

[120] *See* Exhibit 7, 404(B) Filing for Aaron Broussard, Exhibit 6, Factual Basis for Karen Parker Plea Deal, p. 7.

explicitly allege that Broussard pled guilty to using Trout Point Lodge as a bribery conduit – this implication comes from the brain of Plaintiff only.  None of the statements here are provably false by Plaintiff.  The use of the word "gang" is hyperbole, not reasonably intended as fact, and no reasonable reader would think otherwise. In fact, the allegations claimed defamatory are substantially true, or opinion of the Defendant, which is protected.

### 10. Statement Ten

In Paragraphs 42 and 43 of his Original Complaint, Plaintiff states that Handshoe defamed him by stating that:

> Last night after the 6 p.m. WWL TeeVee newscast I started getting e-mails from segments of the local legal community that know the walking lawsuits that are Attorney Danny Abel and his "son" Shane Gates.  Now I'll grant it is not unusual for a practicing lawyer to be associated with lawsuits but Abel practices a curious version of the law indeed and wore many hats, from being Nipun Desai's staff attorney at the Super 8 Motel to Aaron Broussard's law partner at the Super 8 Motel on Clearview.  Gates, along with Abel business associates Charles Leary and Vaughn Perret often served as Abel's in-house plaintiffs for his lawsuits but before I get to all that we need more background for you newbies reading this.

Plaintiff claims this implies unprofessional conduct on his part and that he was not Aaron Broussard's law partner.  Plaintiff represented himself to the public to be Aaron Broussard's law partner.[121]  He did, in fact, file lawsuits with his friends and business associates Gates, Leary and Perret as plaintiffs.[122]

### 11. Statement Eleven

In Paragraphs 44 and 45 of his Original Complaint, Plaintiff states that Handshoe defamed him by stating: "Finally Danny Abel is having money trouble himself folks. It will get

---

[121] *See* Exhibit 5: *Lowe's Home Construction, LLC v. Julius Lips, Jr.,* No. 10-CA-762 (La. App. 5th Cir. 2011).

[122] *See D'Antoni (Shane Gates) v. City of New Orleans et al,* Case No. 96-cv-03083, (E.D. La. 1996); *Gates v. Strain,* 2011 WL 2690607 (E.D. La. 2011); *Leary v. Federal Fiber Mills* Case No., 2:96-cv-01975-MLCF (E.D.La. 1996); *Perret v. Phillip Morris,* 2:96-cv-02779-HGB (E.D.La. 1996)*; Condolary v. Campbell,* 1995 WL 555581 (E.D.La. 1995).

its own post" —

This is a reasonable inference given the Suit on Open Account filed by ASAP Court Reporting Services, Inc. on May 13, 2011, for over $6,000.00 in unpaid fees.[123]  The post represents Handshoe's opinion given his review of the legal filings in that case.

### 12. Statement Twelve

In Paragraphs 46 through 48 of his Original Complaint, Plaintiff states that Handshoe defamed him by posting:

> Folks what I could never figure out was why Aaron Broussard was marketing those overseas travel investments for Danny Abel, Vaughn Perret and Charles Leary and I still do not know why, but I got me the smoking gun today and will publish it soonest along with some other dynamite documents I also nabbed today.  It is my hope that all the perpetrators to this massive political corruption enterprise that Aaron Broussard led are called to account.  I know I'll be doing my level best to facilitate the process.

It is reasonable to conclude that Aaron Broussard did market overseas travel investments for Abel, Perret, and Leary, given he was solicited to sell Carl Eberts' stake in Cerro Coyote in June 2007.[124]  Handshoe's conjecture that he may have solved the mystery is not defamatory, as his opinion is not provably true or false.

### 13. Statement Thirteen

In Paragraphs 49 and 50 of his Original Complaint, Plaintiff states that Handshoe defamed him by stating: "Let's talk a bit more about Aaron Broussard's ÷evidence of other crimes' involving the resort at Trout Point Nova Scotia and the use of SLAPP suits by his business associates in Canada."

This statement is not "of and concerning" Plaintiff Abel.  This statement is not

---

[123] *See ASAP Court Reporting Services, Inc. v. Abel,* 2012 WL 6738170 (La. App. 1 Cir. 2012).

[124] *See* Exhibit 19.

defamatory as it does not imply any facts.  It is simply a predicate statement to a discussion.  As documented above, Broussard's business associates in Canada, through Trout Point Lodge, did file a lawsuit which Handshoe believes, in his opinion, was directly related to his participation in a matter of public interest.[125]

### 14. Statement Fourteen

In Paragraphs 51 through 54 of his Original Complaint, Plaintiff states that Handshoe defamed him by stating:

> After reading Drew Broach's piece and the latest filing by the federal prosecutors in the bribery case involving disgraced former Parish President Aaron Broussard I came away with the distinct feeling I had seen the name of his original Louisiana based LLC set up to accept bribes from Parish contractors that went to buy real estate at the Trout Point resort, Nova Scotia Enterprises, LLC. The connection is Broussard's long time associate and part owner of the Lodge at Trout Point, Danny Abel but Abel's name does not show up in the Team USA legal filing, rather we have a redacted list of the original investors. There is some interesting things in the redacted ownership document that was presented to the court however and I bet Slabbed can shed some light on the names which were redacted from the court filing. To set things up though I feel compelled to point out the Times Picayune trail blazed this topic, was SLAPP sued in Nova Scotia by Broussard's property managers Charles **Leary and Vaughn Perret who are Abel's** business partners that are based at the Lodge. Val Bracy at Fox 8 also had a great report on the topic which was retracted earlier this year as part of the SLAPP suit settlement in Nova Scotia filed by Leary and Perret. Through time I have also learned this same bunch has availed themselves of Canada's defamation laws against several Canadian media outlets such as the Rural Delivery, which did an excellent expose on Leary, Abel and Perret's attempted fleecing of the Atlantic Canada Opportunities Agency among others.  I have also been SLAPP sued by this same bunch in Canada but continued to investigate the topic of Broussard's use of a real estate development in Canada to launder the alleged bribes that were paid to him. This litigation is currently awaiting a ruling by US District Court Judge Louis Guriola.  They have also repeatedly threatened a new media journalist in the Town of Shelburne Nova Scotia for reporting on the court case they filed against me among other things for they simply do not want this topic discussed.

Plaintiff claims it defames him for several reasons.  He claims it implies he was the

---

[125] *See* Exhibit 2.

connection between Broussard and a criminal enterprise through Nova Scotia Enterprises.  This is not provably false.  Abel was, in fact, connected to Broussard through the goings-on at Trout Point Lodge, and Handshoe's reasonable opinion was that they may have been involved in Broussard's criminal activity. In any event, the blog truthfully states that Abel's name <u>does not show up in the Court filing.</u>

Abel alleges that the "attempted fleecing" of the Atlanta Canada Opportunities Agency defames him, but the ACOA filing would lead a reasonable reader to determine that not only did Abel's company receive a loan from the ACOA, but that it was a loan that was later questioned by local media.[126]  Again, the use of the word "fleecing" is the opinion of the speaker, and no reasonable reader would believe that "fleecing" meant the actual criminal act of fraud.

Abel also complains that the statement implies that the retracted publications were actually true and that he has not "sued Canadian Media."  This is simply not the case.  The publication does not imply or expressly state that Abel sued anyone himself.  Furthermore, Fox 8 and The Times-Picayune were sued in Canadian Court and settled out of court rather than fight a Canadian defamation action which provides far less protection than American libel law. Handshoe's assertion that the report was "great" or that the Times-Picayune "trail-blazed" the topic does not imply that a retraction was "strong-armed."  These connections exist only in the Plaintiff's mind.  The connections and musings of Handshoe are otherwise protected opinion and not provably true or false.

### 15. Statement Fifteen

In Paragraphs 55 and 56 of his Original Complaint, Plaintiff states that Handshoe defamed him by stating:

---

[126] *See* Exhibit 20, Suit against La Ferme D'Acadie.

So ol Roy was a member of NSE and surely Leary and Perret knew all about the company as this exhibit to their SLAPP defamation case against Fox 8 illustrates. I think we can figure out the other owners a couple of different ways, the first being by illustrating those local people that inserted themselves into Leary and Perret's Canadian SLAPP suits against the US media: David Loeb Danny Abel Bennett Powell And really this is just a start for there are others as well.

Abel complains that this defames him because it implicates him as a possible owner of Nova Scotia Enterprises, the company that was listed in the Federal Government's 404(B) filing for the laundering of money to Aaron Broussard.  He also claims he never inserted himself into a SLAPP suit against the U.S. media, but this claim is untrue.[127]  Abel *has* filed an affidavit in the referenced suit against the U.S. Media.

The remainder of the statement is conjecture and opinion based on Handshoe's attempt to solve the mystery as to who were the owners of Nova Scotia Enterprises who had their names redacted in the aforementioned Federal filings.

### *16. Statement Sixteen*

In Paragraphs 57 and 58 of his Original Complaint, Plaintiff states that Handshoe defamed him by stating:

> Long story short is with Broussard out of commission these days, his shadow law partner Danny Abel had to take up Broussard's slack including at Coastal Shoring, where Kershenstine took a $30,000 HGMP down payment and did not follow it up with requested paperwork. The homeowner was kicked from her position in the program and put at the end of the funding list which in turn caused her to ask for her money back. Kershenstine refused.

> Normally the Goatherders like to go on the attack even if it is ill-advised but in this case the homeowner beat them to the punch pressing criminal charges against Kershenstine for fraud. As is his wont Abel attacked the victim by issuing a subpoena to her despite the prohibition against pre trial subpoenas of crime victims, employing a legal strategy that is most charitably described as unconventional but most lawyers recognize as shithouse lawyering. This while Abel was unsuccessfully trying to quash a State subpoena on Coastal's bank

---

[127] *See* Exhibit 1, Affidavit of Danny Abel (Filed in Trout Point Lodge defamation suit in Canada).

accounts where the victimøs HMGP money allegedly resides these days. Something tells me Kershenstine is in big trouble these daysí ..but he is not the only one.

Abel claims this defames him because he is not Aaron Broussardøs law partner. However, that is not how he represented himself to the public.[128]  Plaintiff claims he is not a ögoatherder.ö  Plaintiff was, in fact, a business owner and involved with more than one goat farm, La Ferme døAcadie and Chicory Farms.  This is also a derogatory term used by Handshoe. The remainder of the statement is protected opinion based on Handshoeøs evaluation of Plaintifføs legal ethics and skill, see commentary *supra.*

### 17. Statement Seventeen

In Paragraph 59 of his Original Complaint, Plaintiff states that Handshoe defamed him by stating:

> I called them out for lying about Abel as he had no law office in New Orleans in 2005 instead practicing law with Aaron Broussard out of the Super 8 Motel on Clearview Parkway in Metairie before moving to the offices of Dr. Manuel Mariano De La Rua on Williams Blvd. in Kenner when Broussard filed suit against author Peter Brown on Danny Abeløs behalf on July 11, 2011. For those keeping score, Abel is the owner of Trout Point Lodge who still lives in New Orleans area that often affiliates with Broussard in civil legal matters. Abel and his girls are known down here as professional plaintiffs dating to their days working for Wendell Gauthier.

This statement is not defamatory.  Abel did (and does) practice law at a Super 8 Motel on Clearview Parkway in Metairie.  He did engage in litgation with Aaron Broussard against Peter Brown.[129]  He is an owner of Trout Point Lodge.  He is affiliated with Aaron Broussard.  He is affiliated with Wendell Gauthier.[130]  The rest of the statement is the opinion of Handshoe after hearing stories related to him by other lawyers.

---

[128] *See* Exhibit 4 and Exhibit 5; *See* Exhibit 1.

[129] *See* Exhibit 21, *D'Antoni & Abel v. Brown* (Plaintiffs Represented by Aaron Broussard).

[130] *See* Exhibit 17 (*Weekly Standard* Article of 3/20/2006, p.5).

### 18. Statement Eighteen

In Paragraph 61 of his Original Complaint, Plaintiff states that Handshoe defamed him by stating that: "Abel and the girls are nuts. They still think Broussard is gonna skate.  Post Turtle has it nailed. I won't say anything further les it be construed that I am bragging. Sop."

This statement is not defamatory.   Reference to Plaintiff and "the girls" is rhetorical hyperbole and derogatory, but not defamatory.  Furthermore, no reader would reasonably believe that Handshoe had actual knowledge of what Plaintiff and his associates thought of Aaron Broussard.  It is Handshoe's opinion and nothing more.

### 19. Statement Nineteen

In Paragraphs 62 and 63 of his Original Complaint, Plaintiff states that Handshoe defamed him by stating that:

> Oh I think the girls will be be soiling the panties when they talk to the authorities alright. Remember what Stephanie Grace said last week in her column? Team Fed included the Nova Scotia references for a reason. How long do you reckon people like D'Aquilla and Abel have been talking on a party line? I don't pretend to know all the answers but we're finding enough to understand why Team fed included that language in Karen Parker's Bill of Information.

This statement is not defamatory.  It is opinion.  In fact, Hanshoe states that he doesn't "pretend to know all the answers" while making his conjectures about Plaintiff.

### 20. Statements Twenty – Thirty-Four

In Paragraphs 64 through 97 of his Original Complaint, Plaintiff states that Handshoe defamed him with several statements which have all prescribed under Louisiana law, as they were published more than one year from the date of filing of this petition.[131]   In addition, Handshoe avers that the posts form a protected opinion, are hyperbole or satire, or are

---

[131] *See* Exhibits 22-28. *See* Section III(B)(iii).

substantially true,[132] and cannot be proven false by Plaintiff Abel.

### 21. Statement Thirty-Five

In Paragraph 144 of his First Amended Complaint, Plaintiff states that Handshoe defamed him by stating that Handshoe linked him õto criminal illegalities falsely alleged against a number of persons in the federal River Birch criminal investigations,ö but offers no proof of this defamation.  In addition, Plaintiff cannot show the required defamation elements for this ambiguous and amorphous claim.

### 22. Statement Thirty-Six

In Paragraphs 145-182 Plaintiff makes numerous wild allegations of defamation and conspiracy which involve other parties, and attempts to connect these statements back to Defendant Handshoe.  These statements were not published by Handshoe, made by Handshoe and no conspiracy is alleged here.  Handshoe is not the proper party to be sued for statements made by other parties.

### 23. Statement Thirty-Seven

In Paragraphs 185-187, Plaintiff makes the allegation that Handshoe defamed him by stating the true fact that he was notified by the FBI that Slabbed was a potential victim of cyber crime.  He then surmises that Defendant Abel may have been capable of organizing the hacking or obtaining of information from Slabbed.  This statement is not defamatory.  It merely expresses the sincerely held opinion by the writer that Abel has the motivation to seek the IP addresses of Slabbed commenters, as he and his associates regularly engage in lawsuits against it and other media.

---

[132] *See, e.g.* Paragraph 64-65 96-97 of Rec. Doc. 1; For example, Abel and his business partners *did* have several failed businesses in Louisiana. *See* Exhibit 29, corporations inactive in Louisiana; Businesses referenced in Paragraphs 89-90, Rec. Doc. 1. Abel *did* represent WWL Newscaster Eric Paulsen. *See, Paulsen v. State Farm Insurance Company,* Case 2:06-cv-09546-LMA (E.D. La 2008).

### 24. Statement Thirty-Eight

In Paragraph 188 of his First Amended Complaint, Plaintiff makes the allegation that Handshoe defamed him by titling a post ö Slabbed examines the harassment of private citizens expressing their opinion on Jefferson Parish Corruption: Part 3.ö  This statement is not defamatory, it is the protected, sincerely held opinion of the writer based on the true and documented interest in Abel and his associates in suing Slabbed and other local media for implications regarding their business interests with Aaron Broussard in Canada and in Costa Rica.

### 25. Statement Thirty-Nine

In Paragraph 189 of his First Amended Complaint, Plaintiff makes the allegation that Handshoe defamed him by stating that Abel ö controls Leary and Perretö and that they were ö invading the privacy of 4 Slabbed internet commentersö and they were ö Aaron Broussardø s corrupt business associates.ö In addition, Plaintiff argues that ö If a crime was committed I think it is in these activities. The Goatherders obtained the court order by fraud and deception and are using the results of a perjured affidavit here in the US.ö  Four Slabbed Internet commenters did have their denies revealed in the earlier Fox 8 libel case, and Handshoeø s opinion that this was an invasion of their anonymity online is based on that fact.  However, the ö perjured affidavitö mentioned in this long post commenting on the previous libel cases and the instant case, refers to the affidavit of Charles Leary in October of 2011, which indicated to the Supreme Court of Nova Scotia that he did not know Handshoeø s identity at the time.  This is false.  Leary is the maker of the affidavit, however, and therefore this statement, nor any of the related statements of opinion, does not defame Plaintiff as they are reasonable conclusions given Broussardø s business activities with Plaintiff Abel in Canada.

### 26. Statement Forty

In Paragraph 194 of his First Amended Complaint, Plaintiff makes the allegation that Handshoe defamed him by republishing a letter to the Nova Scotia Supreme Court attempting to dissuade the Court from continuing a lawsuit against him in Canada which he could not afford to defend. The letter is attached.[133] Abel believes these allegations concerned him. In his letter, Handshoe pointed out to the Canadian court that he believed his rights were being violated and that Charles Leary, not Abel, had perpetrated a fraud on the Canadian court by claiming he did not know Handshoe even though he had sworn an affidavit to the contrary two weeks previous. These allegations did not involve Abel. Handshoe's arguments regarding harassment and fraud in Canadian courts are well documented above and are all his protected opinion.

### 27. Statement Forty-One

In Paragraph 199 of his First Amended Complaint, Plaintiff makes the allegation that Handshoe defamed him by stating that: "Has being sanctioned for unethical behavior deterred Abel from engaging in more unethical, at best, behavior in the courts. I think not." This is an opinion based on true facts. As noted above, Abel has been sanctioned in Federal court.

### 28. All Other Statements, Implications, Etc.

Plaintiff's Original and Amended Complaint are filled with accusations of defamation, copyright infringement, and other wild claims against Handshoe. Handshoe has endeavored to reply to each specific alleged defamatory statement applicable to his *Slabbed* postings. To the extent that any other allegations require response, Handshoe avers that they are protected opinion, hyperbole, and/or not provably false by Plaintiff. Plaintiff cannot make the requiste

---

[133] *See* Exhibit 30, Slabbed.org posting titled "Slabbed sends an open letter to Nova Scotia Supreme Court Justice Leon 'Pierre' Muise," posted February 6, 2013.

showing of Actual Malice, and furthermore cannot prove negligence as all opinions are reasonable conclusions given the applicable facts.  In addition, Plaintiff cannot hold Handshoe responsible for the acts, postings and lawsuits filed by other parties– he must bring those actions separately (as he has with Anne-Marie Boudreaux in this very petition).  Finally, Handshoe invokes the immunity provisions of Section 230 of the Communications Decency Act regarding third-party postings in "comments" to articles posted on *Slabbed.org*.  This provision protects publishers from libelous statements made by third parties on their websites.

To allow Plaintiff's petition to survive this Art. 971 motion would allow a dangerous chilling effect on those seeking to uncover the truth about public corruption.  Bloggers like Handshoe are the new frontier of investigative journalism that seeks results and accountability for the people.  Handshoe's particular style celebrates that Americans live in a culture where political satire is acceptable and encouraged.  In South Louisiana, this is ever-present.  Our political culture benefits from conjecture and hyperbole, farce and satire.  It is a "step to the truth" that must be protected.  Plaintiff Abel is not new to this game--he is no babe in the woods. He is not a sole practitioner living a private life.  He is associated with high-profile people, and in our society such associations sometimes come with commentary.

Plaintiff's complaints are the fanciful acts of a thin-skinned man who is simply associated with the wrong people.  Unfortunately for Plaintiff, not only can he not prove the allegations false, as required by American defamation law, but he has done nothing more than further publicize and bring to light his connections to Aaron Broussard and the associated scandal by filing this lawsuit.  His claims should be dismissed summarily.

## CONCLUSION

For the foregoing reasons, Handshoe moves this Court to strike and dismiss Plaintiff's claims against Handshoe, with prejudice, and to cast Plaintiff in judgment for all attorneys' fees and costs associated with the defense of those claims.

Respectfully submitted:
BALDWIN HASPEL BURKE & MAYER, L.L.C.

   s/ Scott L. Sternberg
PAUL N. VANCE - Bar #13007
SCOTT L. STERNBERG - Bar #33390
BRODIE G. GLENN – Bar #33152
3600 Energy Centre
1100 Poydras Street
New Orleans, LA 70163
Telephone: (504) 569-2900
Fax: (504) 569-2099
Attorneys for Defendant, Douglas K. Handshoe

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of March, 2013, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

   s/ Scott L. Sternberg