UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DANIEL G. ABEL | * | NO.: 2:13-CV-00088 |
| | * | |
| VERSUS | * | DIVERSITY OF CITIZENSHIP |
| | * | |
| DOUGLAS K. HANDSHOE, ANNE-MARIE | * | JUDGE: SUSIE MORGAN |
| VANDENWEGHE A/K/A BOUDREAUX, | * | |
| & ABC INSURANCE Cos | * | MAGISTRATE: ALMA CHASEZ |
| | * | |
| | * | JURY TRIAL - DEFAMATION |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

RELY TO HANDSHOE'S OPPOSITION
TO ABEL'S MOTION AND REQUEST
FOR LEAVE TO TAKE ART. 971[D] DISCOVERY

May It Please the Court:

Handshoe repeatedly argues that Plaintiff Daniel Abel is a public figure and must meet the constitutional burden of showing actual malice in this case in order to prevail. In addition, he says that Abel's activities are somehow of public interest and that he (Handshoe) is a journalist. It is also explicit in filing his antiSLAPP pleading that he asserts that the Slabbed blog is a "public forum" as defined by Article 971.

Abel absolutely denies that he is a public figure and that anything he has done related to themes published upon on Slabbed are of public interest. Abel denies Handshoe is a media defendant and that Slabbed is a public forum. Abel says that Handshoe's campaign of defamation is in fact a private vendetta and that Slabbed is not a public forum of discussion on matters of public interest. Abel has also alleged a private conspiracy involving a public official, former Asst. Parish Attorney Anne-Marie Vandenweghe possibly acting in concert with other public officials and Handshoe, and for Abel to have his own right to petition, free speech, and related

discovery curtailed would go against the values inherent in Article 971.

Abel's assertions are supported by the recent findings of the Federal District Court for the Southern District of Mississippi (Trout Point Lodge et. al. v. Doug K. Handshoe, Case 1:12-cv-00090-LG-JMR Document 35 Filed 12/19/12) regarding Handshoe's status not as a journalist, but simply as a web site owner, and Handshoe's motives for publishing about Trout Point Lodge and Abel's business partners Charles Leary and Vaughn Perret.[1]

Handshoe erroneously blamed Abel, Leary, and Perret for losing his web site hosting in April, 2011and that is his motive for libelling Plaintiff.[2] Whether or not Handshoe acted with constitutional malice—a question to be determined at trial after discovery—he clearly acted with non-constitutional malice, which is not the stuff of public interest: Handshoe, apparently in reaction to his blog being taken offline, then began an internet campaign to damage Perret and Leary. Handshoe has published numerous entries on "Slabbed" about Plaintiffs, many of which may be characterized as derogatory, mean spirited, sexist, and homophobic.

The court also later stated, based on the record then before it: "Handshoe, has, however, made numerous more generalized allegations about connections between Leary, Perret, Abel, and Broussard. Some of these statements seem to be based in fact; others appears to be conspiracy theories that may or may not be substantiated." Whether allegations are based in fact and whether Handshoe's conspiracy theories involving Abel are substantiated should reasonably be

---

[1] Although Trout Point, Leary, and Perret lost on cross-motions for summary judgment under the new federal SPEECH Act, the district court subsequently denied Handshoe's request for an appeal bond, and noted that there is no suggestion that the appeal to the 5th Circuit Court of Appeal under the SPEECH Act is frivolous, being a matter of first impression (ORDER DENYING DEFENDANT'S MOTION TO REQUIRE COST BOND FOR APPEAL, February 25, 2013)

[2] The web site was actually taken down by his web host after a copyright takedown notice was served on it by Advance Publications, owner of the Times-Picayune.

discoverable at this stage. In the Mississippi proceeding, astoundingly, Handshoe even admitted against self interest that "the extent of plaintiffs actual involvement in the Broussard scandal is unknown" and that there may be no involvement whatsoever. [Trout Point Lodge, supra, Doc. No. 27]. Such injurious and inflammatory guessing games are not protected by New York Times v. Sullivan and its progeny.

Handshoe makes several admissions in his final brief in that case that unmistakably demonstrate, at a minimum, reckless disregard for the truth in what were unmistakably "black or white," serious allegations of crimes. "A classic example of a statement with a well-defined meaning is an accusation of a crime" Ollman v.Evans, 750 F.2d 970, 980 (C.A.D.C. 1984). Examples of Handshoe's admissions in that brief include:

- "the extent of plaintiffs actual involvement in the Broussard scandal is unknown"
- plaintiffs "may have had no knowledge of the corruption at all"
- "whether they [the plaintiffs] were aware of Broussard's wrongdoings or not"
- "If the statements were false . . ."
- "At most they [the defamatory publications] were made with ill will . . ."
- "Defendant remains confident in the truth of his reporting. However, if it were later discovered that plaintiffs in fact were not involved in any of Broussard's alleged wrongdoings . . ." [Trout Point Lodge, Doc. No. 27].

In. Guam Federation of Teachers v. Ysrael, the Court stated:

In this case, Ysrael's own testimony as an adverse witness is enough to get the plaintiffs to the jury under the New York Times standards. He repeatedly admitted that he did not

know whether what he said was true. He repeatedly admitted that he did nothing, or almost nothing, to verify his charges. As to most of his statements, he repeatedly admitted that he knew of no facts to support them; he either relied upon unspecified rumor or upon nothing at all. He simply asserted that he believed that what he said was true. Such an assertion is not enough to support a directed verdict in his favor. If it were, mere swearing could, as a matter of law, defeat any action to which the New York Times principles are applicable. Guam Federation of Teachers v. Ysrael, 492 F.2d 438, 439 (9th Cir. 1974).

Abel must therefore have discovery to, at a bare minimum, establish the subjective mind of the defendant on the question of actual malice, show that this is a private vendetta, not a matter of public interest, and that Handshoe carefully controls third-party comments on Slabbed thus making the blog something other than a "public forum" as required by Article 971. In addition, the true makeup of "The Slabbed Nation"--those who contribute to Slabbed—must be determined to combat the "public forum" assertion and to flesh out the properly alleged conspiracy.

Louisiana courts have looked to California case law due to the nearly identical language of both states' anti-SLAPP legislation. Defendant also cites California cases in his pleading. The court in Schroeder v. Irvine City Council, 118 Cal. Rptr. 2d 330 - Cal: Court of Appeal, 4th Appellate observed:

> Although a section 425.16 motion to strike stays discovery, the court for good cause may permit specified discovery. (Braun v. Chronicle Publishing Co., supra, 52 Cal.App.4th at p. 1052, 61 Cal. Rptr.2d 58.) The court in Lafayette Morehouse, Inc. v. Chronicle Publishing Co., supra, 37 Cal.App.4th 855, 44 Cal.Rptr.2d 46 recognized the discovery

stay and 30-day hearing requirement of section 425.16, if literally applied in all cases, could adversely affect a plaintiffs due process rights by placing the burden on the plaintiff to show a prima facie case without permitting the collection of evidence needed to satisfy that burden, particularly where the principal source of evidence critical to establishing the prima facie case is in the possession of the defendant and not available from other sources. (Id. at p. 868, 44 Cal.Rptr.2d 46.)

Likewise, as the 5th Circuit Court of Appeal has determined (Henry v. Lake Charles American Press, LLC, 566 F. 3d 164 - 2009), Abel must make his request for discovery now, as failure to do so under Article 971 D would have later consequences and allow negative inferences by the court:

> If [Plaintiff] had a meritorious case, he should have provided more evidence. In line with Article 971, the district court could have allowed limited, special discovery so that [Plaintiff] could muster sufficient evidence to defeat [Defendant's] motion. This ability, alongside Plaintiff's failure to request any such discovery, undercuts any speculation that he did not have access to the evidence necessary to prevail.

To deny discovery explicitly allowed by Article 971 when the Defendant has conducted a lengthy campaign of per se defamation containing numerous libellous allegations would be unjust. The District Court for the Southern District of Mississippi has found that Handshoe conducted a "campaign to damage" Abel's business partners and Trout Point Lodge based on his subjective perception that Abel and his business partners were responsible for shutting down his web site in April, 2011.

This is thus a private matter, not a matter of public interest. Handshoe is also

bootstrapping his defence by creating whole cloth a matter of public interest by publishing extensively on Abel in order to make Abel a public figure, and making false criminal allegations to create a matter of public interest--this is not allowed under any constitutional standard. "Clearly, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." (Hutchinson v. Proxmire, 443 US 111, 99 S. Ct. 2675, 61 L. Ed. 2D 411). causes of action arising out of false allegations of criminal conduct, made under circumstances like those alleged in this case, are not subject to the anti-SLAPP statute.

Otherwise, wrongful accusations of criminal conduct, which are among the most clear and egregious types of defamatory statements, automatically would be accorded the most stringent protections provided by law, without regard to the circumstances in which they were made—a result that would be inconsistent with the purpose of the anti-SLAPP statute . . . Weinberg v. Feisel, 2 Cal. Rptr. 3d 385 - Cal: Court of Appeal, 3rd Appellate Dist. 2003 Abel must be able to inquire into the subjective mind of Handshoe to make a showing of actual malice, no matter by what standard. As the Supreme Court stated in Herbert v. Lando (441 US 153 - Supreme Court 1979):

> We are thus being asked to modify firmly established constitutional doctrine by placing beyond the plaintiff's reach a range of direct evidence relevant to proving knowing or reckless falsehood by the publisher of an alleged libel, elements that are critical to plaintiffs such as Herbert. The case for making this modification is by no means clear and convincing, and we decline to accept it.
> In the first place, it is plain enough that the suggested privilege for the editorial process would constitute a substantial interference with the ability of a defamation plaintiff to

establish the ingredients of malice as required by New York Times. As respondents would have it, the defendant's reckless disregard of the truth, a critical element, could not be shown by direct evidence through inquiry into the thoughts, opinions, and conclusions of the publisher, but could be proved only by objective evidence from which the ultimate fact could be inferred. It may be that plaintiffs will rarely be successful in proving awareness of falsehood from the mouth of the defendant himself, but the relevance of answers to such inquiries, which the District Court recognized and the Court of Appeals did not deny, can hardly be doubted. To erect an impenetrable barrier to the plaintiff's use of such evidence on his side of the case is a matter of some substance, particularly when defendants themselves are prone to assert their good-faith belief in the truth of their publications, and libel plaintiffs are required to prove knowing or reckless falsehood with "convincing clarity." New York Times Co. v. Sullivan, 376 U. S., at 285-286.

And permitting plaintiffs such as Herbert to prove their cases by direct as well as indirect evidence is consistent with the balance struck by our prior decisions. If such proof results in liability for damages which in turn discourages the publication of erroneous information known to be false or probably false, this is no more than what our cases contemplate and does not abridge either freedom of speech or of the press.

II.   Conclusion

To deny discovery allowed by Article 971[D] when the Defendant Handshoe has conducted a campaign of per se defamation would be contrary to the principles established by the United States Supreme Court in Herbert [Herbert v. Lando (441 US 153 - Supreme Court 1979)].

While Abel is not a public figure and has never been one, Handshoe repeatedly argues that Plainitff is a public figure and therefore must meet the constitutional standard that Handshoe acted with actual malice—suggest that the Court should permit the discovery permitted under Section D of art. 971. Abel is required to make his art. 971 D discovery now, otherwise the Court can and may draw the negative inferences envisioned by the 5th Circuit in Henry v. Lake Charles American Press, LLC.. Abel is entitled to discovery and should be given leave to discover what these and most other courts have envisioned. Abel requests leave to do so.

| Respectfully submitted, | Certificate of Service |
|---|---|
| s/ Daniel G. Abel | s/ Daniel G. Abel |
| Daniel G. Abel [LSB No. 8348]<br>2421 Clearview Parkway<br>Legal Department - Suite 106<br>Metairie, LA 70001<br>Telephone: 504.284.8521<br>Facsimile: 888.577.8815<br>Email: danielpatrickegan@gmail.com | I have filed this pleading and exhibit using the CM/ECF system: 28 March 2013 or served at #15 Colonial Club Lane, Harahan, Louisiana. |