YAR 1 SC 110520
YAR 328248

## IN THE SUPREME COURT OF NOVA SCOTIA

BETWEEN:

TROUT POINT LODGE LIMITED

APPLICANT

— and —

LOUISIANA MEDIA COMPANY, LLC

RESPONDENT

_____

DECISION

_____


| | |
|---|---|
| HEARD BEFORE: | The Honourable Justice Pierre Léon Muise |
| COUNSEL: | Dr. Charles Leary Self-Represented as Agent and Officer of Trout Point Lodge Limited |
| PLACE: | Yarmouth JC1, Yarmouth, N.S. |
| DATE HEARD: | May 30, 2011 |

<u>INDEX</u>
<u>TROUT POINT LODGE LIMITED V. LOUISIANA MEDIA LLC</u>
<u>MAY 30, 2011</u>

Decision by the Court ...............................3

DECISION BY THE COURT

1

2

3     <u>THE COURT:</u>      And Sheriff, you can open the

4     door to the courtroom as well, okay.  This is the

5     matter of Trout Point Lodge Limited and Louisiana

6     Media Company, LLC.  It is File Number YAR

7     328248.  There is a motion before the court by

8     Trout Point for an order requiring Automattic

9     Inc., "Automattic" spelled with two t's at the

10    end, to reveal the information regarding the

11    identity of some registered Wordpress.com users.

12    Automattic Inc. is a California corporation which

13    hosts a blogging website called Wordpress.com.

14    Wordpress.com in turn hosts a blog named Slabbed

15    with the URL Slabbed.wordpress.com.  Telemachus

16    and unslabbed are two registered users on

17    Slabbed.  Soft81_1 is the purported owner and

18    publisher of the blog.  As the entity in charge

19    of the blog, Soft81_1 controls what appears on

20    it.  All three maintain an anonymous identity.

21    Trout Point alleges that their blogs or postings

22    are prima facie defamatory and refers to the

<u>DECISION BY THE COURT</u>

1    publications of Louisiana Media.  And they appear

2    to be closely connected with Louisiana Media.

3    Trout Point asks that I order Automattic Inc. to

4    produce information revealing the identity of

5    these anonymous entities on the basis that they

6    will either be added as defendants in the within

7    action or added as defendants in a separate

8    action and are material witnesses in the within

9    action.  Automattic has no part in what appears

10   in the blogs.  It only provides the service.

11       This motion is made pursuant to Civil

12   Procedure Rule 14.12 which permits a judge to

13   order a third party to produce a relevant

14   document.  It is made within this action by Trout

15   Point against Louisiana Media.  It is not a pure

16   motion for production at a pre-commencement of

17   action stage as was the case in AB and Bragg

18   Communications Inc., [2010] N.S.S.C. 215 and in

19   Mosher and Coast Publishing Limited, [2010]

20   N.S.S.C. 153.  However the test is — the same

21   test is applicable to determining whether

1    production of anonymous bloggers' identifying

2    information should be ordered so that it can be

3    added as parties to the within action.  That is

4    the same test as in Bragg and Mosher.

5         In the case at hand there is also a question

6    of whether the requested information is relevant

7    to an issue to be determined in the existing

8    action against Louisiana Media.  I will deal with

9    that first.  2009 Civil Procedure Rule 14.01

10   defines relevant and relevancy for the purposes

11   of production and disclosure as "having the same

12   meaning as a trial of an action or on the hearing

13   of an application."  This trial relevance test

14   replaced the old semblance of relevance test.

15   The Chambers Judge must now assume, as best as he

16   or she can, the vantage point of a trial or an

17   application judge and apply general evidence law.

18   The determination is based on the pleadings and

19   the evidence known to the judge.  However, there

20   should still be liberal disclosure of relevant

21   information and I refer to – in support of this I

1       refer to Brown and Cape Breton Regional

2       Municipality, [2011] N.S.C.A. 32, at Paragraphs 8

3       to 13.    The onus is on the plaintiffs to

4       establish that the information they seek is

5       relevant.   Justice LeBlanc in Murphy and Lawtons

6       Drug Stores Limited, [2010] N.S.S.C. 289 at

7       Paragraph 16 cited with approval at Paragraph 3.3

8       from the Law of Evidence, 5th Edition 2008, David

9       Paciocco and Lee Stuesser which included the

10      following comments:

11

12              "Evidence is relevant where it
13              has some tendency as a matter
14              of logic and human experience
15              to make the proposition for
16              which it is advanced more
17              likely than that proposition
18              would be in the absence of
19              that evidence."
20

21      As the Supreme Court of Canada has said in

22      R. v. Arp, [1998] 3 S.C.R. 339:

23

24              "To be logically relevant, an
25              item of evidence does not have
26              to firmly establish, on any
27              standard, the truth or falsity

1    of the fact in issue. The
2    evidence must simply tend to
3    increase or diminish the
4    possibility of the existence
5    of a fact in issue. As a
6    consequence there is no
7    minimal probative value
8    required for evidence to be
9    relevant."
10

11   Trout Point's pleadings allege, among other

12   things, that Louisiana Media's reports and

13   broadcasts relating to the Aaron Broussard

14   investigation improperly included references to

15   Trout Point and photos of its lodge creating the

16   impression that Mr. Broussard was an owner of the

17   Trout Point Lodge and that Trout Point was

18   implicated in his alleged wrongdoings. Louisiana

19   Media's amended Statement of Defence states, at

20   Paragraph 16:

21

22   "The Defendant states that as
23   to the totality of the
24   broadcast or broadcasts,
25   whether by way of television,
26   internet or otherwise,
27   containing the January 6, 2010
28   interview of Aaron Broussard,
29   it was clearly communicated to
30   and understood by its audience

1                       that the Broussard properties

2                       were not the Plaintiff, Trout

3                       Point Lodge Limited's but

4                       rather were properties

5                       connected to the Plaintiff

6                       Trout Point Lodge Limited.

7

8        And at Paragraph 21:

9

10                     "The Defendant denies that any

11                   broadcast or broadcasts either

12                   by way of television or

13                   internet or otherwise made by

14                   it with regard to Aaron

15                   Broussard were understood by

16                   their plain and ordinary

17                   meaning or by way of innuendo

18                   or otherwise to mean any of

19                   the following with regards to

20                   the Plaintiff Trout Point

21                   Lodge Limited, the Plaintiff

22                   Charles L. Leary and the

23                   Plaintiff Vaughn J. Perret, or

24                   any of them."

25

26        And I won't list all of them.

27

28                     d)  That the Plaintiffs or any

29                   of them were involved in or

30                   connected with or the situs of

31                   any conspiracy involving

32                   politicians and contractors;

33                   g) That the Plaintiffs or any

34                   of them were somehow involved

35                   in illegal, criminal and/or

36                   unethical activities including

37                   money laundering, political

```
 1                    (inaudible  due  loud  noise…)
 2                    and kickbacks;
 3                    h)  That the Plaintiffs or any
 4                    of  them  were  involved  in  or
 5                    connected  with  any  kickback
 6                    schemes,   money   laundering,
 7                    misuse   of   public   monies,
 8                    fraud,   general   political
 9                    corruptions,        unsavoury
10                    characters and shady dealings;
11                    i)  That the Plaintiff, Trout
12                    Point Lodge Limited was owned
13                    by  Aaron  Broussard  and  was
14                    illicitly rented to government
15                    contractors   and   was   the
16                    subject  of  allegations  and
17                    investigations   including   by
18                    the     Louisiana     Metropolitan
19                    Crime    Commission    and    the
20                    United States Attorney.
21
22
```

23        Louisiana Media owns and operates WVUE which

24   is a Fox television affiliate.  Charles Leary's

25   affidavit filed May 12, 2011 in support of this

26   motion  attaches  as  Exhibit  A  comments  and

27   publications from the blog Slabbedwordpress.com.

28   In that exhibit unslabbed refers to Val Bracy who

29   was  the  reporter  in  an  investigative  report

30   broadcast by WVUE Louisiana Media on Fox 8 News

31   in  January  2010,  the  contents  of  which  Trout

32   Point alleges are defamatory.  Unslabbed's March

1        8, 2010 posting states:

2

3                          "(inaudible due to mumbling…)
4                          Confirmed there was a new
5                          interview by Bracy with
6                          Theriault. (inaudible due to
7                          mumbling…) refused to go on
8                          camera, also FYI reliable
9                          sources say Fox 8 was sued
10                         recently by Trout Point Lodge.
11                         Apparently they see having any
12                         connection to Aaron Broussard
13                         as a negative. Odd that since
14                         Danny Abel et al, that would
15                         be the Spain connection across
16                         from the (inaudible due to
17                         mumbling…), the Costa Rican
18                         location, seemed to keen on
19                         having the crème de la crème
20                         of the political elite as
21                         investors in and around the
22                         prestigious
23                         property/properties. Odd also
24                         that a resort would object to
25                         any publicity for their
26                         business. Must be nice to be
27                         so special and elite that only
28                         certain people are okay to be
29                         associated with their
30                         endeavours."

31

32                 I'll just skip the next paragraph.

33

34                         "So we're back to why would
35                         Trout Point suddenly lash out
36                         at Val Bracy and Fox 8. After
37                         suing the Times Picayune News

```
 1          and    effectively    silencing
 2          them, is this an attempt to do
 3          the same to Fox 8?  Is Bracy
 4          hitting too many nerves?   It
 5          seems strange to have waited
 6          so long to sue in Canada over
 7          a story that is old news.  So
 8          maybe  they  want  some  more
 9          publicity  for  their  joints.
10          Hope  they  are  ready  for  the
11          depositions  and  requests  for
12          omissions  coming  their  way.
13          FYI Trout Point, if I were
14          you, I would review Aaron's
15          interviews and the Fox 8 new
16          account before I racked more
17          in legal fees suing the wrong
18          parties.     Frivolous      is
19          frivolous and this is a silly
20          lawsuit.  IMHO."
21
```

22          On March 8th of 2010 the notice of action had

23     not been filed against Louisiana Media.  Only a

24     notice  of  intended  action  had  been  filed  on

25     Louisiana Media.  The comments about suing Fox 8,

26     the Defendant's station and waiting so long to

27     sue in Canada and the lawsuit being frivolous are

28     indicative   of   an   insider   connection   or

29     association  with  Louisiana  Media.   Also  in

30     Exhibit A in a blog posted February 16, 2011,

31     Telemachus connects Broussard with Trout Point

1          Lodge, stating well this might be one thing the

2          ethics Board is looking at.

3

4                          "You can take a fishing pole
5                          and catch a trout in your
6                          front yard."

7

8                          "Ed Muniz recalled Aaron
9                          Broussard telling me in 1998
10                         about a real estate investment
11                         opportunity in Nova Scotia
12                         Canada. The subject, Muniz
13                         said, was Trout Point Lodge, a
14                         four hour drive from Halifax
15                         and deep in the pristine
16                         forests of a provincially-
17                         protected wilderness area.
18                         Both men were serving on the
19                         Jefferson Parish Council at
20                         the time and Muniz said
21                         Broussard asked him to buy
22                         into the development 25,000
23                         for a two percent stake. The
24                         Metropolitan Crime Commission
25                         on Wednesday asked for a State
26                         Ethics Investigation into
27                         whether Broussard had been
28                         renting the Nova Scotia
29                         vacation property to Jefferson
30                         Parish contractors. Two days
31                         later Broussard resigned as
32                         Parish President citing
33                         distractions of the widening
34                         federal criminal investigation
35                         into his administration. The
36                         investigation began with
37                         subpoenas relating to the
38                         private insurance businesses

```
1                   of Broussard's former chief
2                   administrator, Tim Whitmer,
3                   who resigned Monday. Federal
4                   authorities also have
5                   subpoenaed records regarding
6                   River Birch Inc. which owns a
7                   Waggaman landfill consigned a
8                   deal in June to be the sole
9                   garbage dump for Jefferson
10                  Parish for the next 25 years.
11                  Charles Leary, Managing
12                  Director of the Lodge, emailed
13                  the Times Picayune on Friday
14                  saying Broussard does not, and
15                  has never had any ownership or
16                  management involvement with
17                  Trout Point Lodge Limited.
18                  The message went on to say
19                  Broussard owns a vacation home
20                  on the same road. But the
21                  familiar names of some of the
22                  investors shed some light on
23                  the political lattice of
24                  Jefferson Parish. They
25                  include Bennett Powell who
26                  said last week he bought a
27                  small share in the lodge
28                  similar to the one described
29                  by Muniz and Larry Stoulig who
30                  is listed as a partner in
31                  Broussard's management company
32                  who had said other investors
33                  bought him out five years ago.
34                  The late Marie Krantz, former
35                  owner of fairgrounds,
36                  Jefferson Downs race tracks
37                  and Nick Baroni, Kenner City
38                  Council member while Broussard
39                  was the Mayor there, also
40                  invested in developing
41                  property near the lodge,
42                  Baroni said. Baroni and
```

1       Stoulig have served in federal
2       prison on fraud charges in
3       separate incidents unrelated
4       to the Nova Scotia
5       investments. The link between
6       Nova Scotia and Southern
7       Louisiana outside of the
8       historical link of Acadian
9       culture seems to have begun
10      with Daniel Abel, a lawyer who
11      made a name for himself in
12      1999 working with the late
13      attorney Wendell Gauthier to
14      sue gun manufacturers for
15      violence in New Orleans.
16      Muniz and Abel served as
17      Broussard's legislative aid
18      when he was on the Jefferson
19      Parish Council. But Louisiana
20      Secretary of State records and
21      documents provided by Muniz
22      show that in 1997 Abel,
23      Charles Leary and Vaughn
24      Perret formed a Louisiana
25      corporation called La Ferme
26      Limited and its Canadian
27      counterpart, La Ferme
28      L'Acadie. The three soon
29      opened the Trout Point Lodge,
30      according to a 2001 travel
31      story in the Times Picayune.
32      After investing in the lodge
33      Muniz said he turned down a
34      second offer from Broussard in
35      1999 to buy nearby property.
36      Having yet to see a financial
37      report about the lodge, Muniz
38      said he demurred on the new
39      opportunity."
40
41      Telemachus in a blog posted February 25,

1       2011,  appears  to  view  the  Val  Bracy  interview

2       erred  by  WVUE  Louisiana  Media  as  revealing

3       Broussard's  wrongdoings  in  relation  to  his  Nova

4       Scotia property or properties, stating:

5

6                    "On  January  7,  2010  the
7                    campaign  of  former  Parish
8                    President Aaron Broussard paid
9                    a  Bobby  Curvan  $1,800  a  plate
10                   his  next  fundraiser.  Well
11                   that  sounds  like  the  makings
12                   of  a  great  party.  The
13                   following  day  actually  saw
14                   Broussard abruptly resign from
15                   office in disgrace."
16

17      And there's a reference to a website.

18

19                    "That's  pretty  sudden,  isn't
20                   it?  Aaron  Broussard
21                   interviewed  by  Val  Bracy  and
22                   video  January  6,  2010,  WVUE
23                   Fox 8.  Pretty sure it was the
24                   day  before  when  the  Rocky
25                   Marciano  of  New  Orleans  TV
26                   real  journalism  pounded,
27                   punched and (inaudible due to
28                   mumbling…)  away  at  a
29                   bewildered  and  whimpering
30                   Aaron Broussard about his Nova
31                   Scotia property (properties).
32                   As of, and up to that day and
33                   the day after it appeared that
34                   resignation  was  not  something

1        he had at least communicated
2        in any way to anyone in his
3        campaign."
4

5        Telemachus in a blog posted February 21,

6   2011 connects Broussard with investment in

7   properties at Trout Point Lodge, stating:

8

9            "According to the 7/22/01 TP,
10           Peter Butler was an investor
11           in at least one of the
12           unidentified properties at
13           Trout Point Lodge, Nova Scotia
14           as were Wendell Gauthier and
15           Aaron Broussard. Were you
16           and/or was anyone named,
17           (inaudible due to mumbling…)
18           Sneed, Ward, Butler and/or any
19           JP public official, aid or
20           employee or relatives invested
21           or themselves in any way
22           investors in any of the below
23           entities and if so, in what in
24           what amounts, which
25           percentages and which entities
26           and for what periods?"
27

28       And there's a list and that list includes

29   Trout Point Lodge Limited and Trout Point Lodge.

30   I pause to note that Soft81_1 controls what is

31   posted on those blogs.

32       At Paragraph 9 of his affidavit of May 12,

_____

<u>DECISION BY THE COURT</u>                                    17

1    2011,  Charles  Leary  states,  in  relation  to

2    Soft81_1 — in researching the story — sorry:

3

4                  "Soft81_1   published   the
5                  following              on
6                  Slab.wordpress.com  on  April
7                  26,  2011  in  a  post  entitled,
8                  'Slab  takes  a  look  at  the
9                  Trout  Point  business  venture.
10                 Let's  start  at  the  end  and
11                 work back.'"
12

13   And  then  there's  a  further  reference  to  the

14   quote  that's  found  in  that  blog  and  it  states:

15

16                 "In   researching   the   story,
17                 what I have found is a pattern
18                 of  Leary,  Abel  and  the  girls
19                 being  first-class  bitches  and
20                 I  think  it  is  safe  to  assume,
21                 based   upon   the   retractions
22                 they made, the Times Picayune
23                 and  its  corporate  parent  their
24                 bitch  in  this  fiasco  because
25                 Rainnie   was   onto   something
26                 big,  albeit  a  bit  dated  in  the
27                 fleecing   of   several   local
28                 individuals that were marketed
29                 and   sold   ownership   in   the
30                 Trout Point by Aaron Broussard
31                 who  had  close  personal  ties
32                 and  business  ties  to  Abel,
33                 Leary and the girls."
34

1        At Paragraph 15, and Charles Leary states —

2    sorry this quotation that I just quoted, sorry —

3    implicates Trout Point and its principals in Mr.

4    Broussard's alleged wrongdoings.   At Paragraph 15

5    Charles Leary states:

6

7                    "The publisher of the Slabbed
8                    blog also posted material
9                    stating that there is a
10                   mystery and grandiose cover-up
11                   underway involving me, my
12                   business associates, Aaron
13                   Broussard and the Louisiana
14                   News Media."
15

16       Charles Leary provided oral evidence that on

17   April 26, 2011 Soft81 posted the following:

18

19                   "I think by now even our most
20                   casual readers know our
21                   successor website, Slabbed.org
22                   was knocked offline courtesy
23                   of the Times Picayune's
24                   corporate parent, Advanced
25                   Publications and this started
26                   a chain of events that
27                   resulted in Slab temporarily
28                   being moved back to Wordpress.
29                   I'd submit this was a
30                   miscalculation of gargantuan
31                   proportions for several
32                   reasons which will become

1    clear as I roll out this
2    series of posts on Aaron
3    Broussard's connections to
4    Trout Point Lodge and its
5    purported owners, Charles
6    Leary, Danny Abel and Vaughn
7    Perret. I say purported
8    because others were sold two
9    percent ownership interest in
10   the Trout Point development as
11   touted by Broussard and those
12   folks are the bag holders in
13   this deal."
14

15   That's the end of that quote. These are

16   further clear comments that Broussard is

17   connected to Trout Point Lodge and that its

18   principals are involved in the corruption as "bag

19   holders." In these and other postings the

20   anonymous users bloggers appear generally to be

21   denouncing the retraction actions of Times

22   Picayune while applauding Val Bracy, the reporter

23   in the investigative report broadcast by

24   Louisiana Media and writing comments that clearly

25   connect Trout Point and its principals with Mr.

26   Broussard and his alleged wrongdoings. That

27   tends to show that they interpret the Louisiana

28   Media broadcast as supporting their comments.

1      They are anonymous.  It is not known for sure
2      whether they are biased against Trout Point for
3      any reason and have set themselves to deducing
4      some unusual meaning from Louisiana Media's
5      broadcast or they are part of a reasonable
6      audience of ordinary intelligence, even though
7      the content of their blogs does suggest some
8      bias.  If they are part of a reasonable audience
9      of average intelligence, that tends to show that
10     Louisiana Media's audience did not understand
11     this broadcast as alleged in Louisiana Media's
12     amended statement of defence at Paragraphs 16 and
13     21.  If they are biased for any reason it will
14     tend to show that they have set themselves to
15     deducing an unusual meaning from the broadcast
16     and reached a slanted interpretation of Louisiana
17     Media's broadcast that is different from what
18     WVUE Louisiana Media's unbiased and reasonable
19     audience of ordinary intelligence would
20     understand.  The existence or non-existence of
21     bias in the anonymous bloggers' users may be

1    determined if their identity is revealed.
2    Therefore, in my view, considering the principles
3    of liberal disclosure, their identity is relevant
4    to interpreting whether the content that
5    Louisiana Media's broadcast was defamatory.
6         Paragraph 7 of Charles Leary's affidavit of
7    May 18, 2011 refers to a Slabbed posting entitled
8    "Whitmergate" which includes a transcription of
9    Val Bracy's interview with Aaron Broussard on
10   January 6, 2011. According to Dr. Leary, it is
11   an accurate transcription and is in accord with
12   the video provided by WVUE but contains sections
13   not appearing in the video. The identity of the
14   publisher of the blog will help determine whether
15   the posted transcript is authentic or not. The
16   more credible the publisher, the more likely it
17   is to be authentic. In assessing whether a
18   broadcast publication was defamatory it is
19   important to determine what the full and complete
20   content was. The identity of the publisher, as
21   it relates to authenticity, is relevant to that

1      determination.

2              Trout Point has pleaded injurious falsehood

3      and intentional interference with economic

4      relations. Consequently the intention and

5      knowledge of falsehood are issues to be

6      determined. As noted above, the contents of some

7      of the blogging is indicative of a close or

8      insider connection between the anonymous blogger

9      and Louisiana Media. The bloggers are clearly

10     implicating Trout Point and its principals in

11     Broussard's wrongdoings in stating Broussard was

12     involved in Trout Point Lodge. That is

13     continuing more than one year after the January

14     2010 broadcasts. That those bloggers are from

15     within or closely connected to Louisiana Media,

16     it would tend to make it more likely that

17     Louisiana Media intentionally created the

18     impression of a direct connection between Trout

19     Point and Aaron Broussard as well as his alleged

20     wrongdoings. Thus the identity of the bloggers

21     is relevant to intentionality.

1          Trout  Point  advised  the  court  that  it

2     intends  to  add  the  anonymous  bloggers  as  parties

3     if  they  have  a  sufficiently  close  connection  to

4     Louisiana  Media  or  to  sue  them  separately  if  they

5     do  not.   They  are  making  the  motion  within  the

6     current  action,  therefore,  the  motion  must  be

7     considered  on  the  basis  that  there  is  an

8     intention  to  add  them  as  parties.   Trout  Point

9     has  no  way  of  knowing  how  close  the  connection  is

10     even  though  there  are  indicia  of  a  close

11     connection.   Trout  Point  recognizes  that  if  it

12     were  to  turn  out  that  the  connection  was  not

13     sufficiently  close  to  warrant  joining  the

14     bloggers  as  parties,  the  implied  undertaking  rule

15     outlined  in  Civil  Procedure  Rule  14.03  would

16     require  it  to  seek  the  court's  permission  to  use

17     the  information  in  question  in  connection  with

18     the  matter  outside  of  this  proceeding.

19          The  anonymity  of  the  bloggers  has  left  Trout

20     Point  in  the  position  where  it  is  making  the

21     motion  based  on  what  appears  to  it  to  be  the  most

### DECISION BY THE COURT

1.   likely result, i.e. that the bloggers will be

2.   added as parties.  Either way it is intended that

3.   they will become Defendants in an action against

4.   them by Trout Point.  Consequently in my view the

5.   test to determine whether the bloggers' identity

6.   is to be disclosed for that purpose is the same

7.   whether it is within an existing proceeding or in

8.   relation to a separate proposed proceeding.  The

9.   relevant test in a defamation action was outlined

10.  in Warman and Wilkins-Fournier, [2010] O.N.S.C.

11.  2126 and approved by the Supreme Court of Nova

12.  Scotia in AB and Bragg Communications Inc.,

13.  [2010] N.S.S.C. 215.  Under that test the

14.  application must establish the following:

15.

16.       1.   A prima facie case;

17.       2.   Involvement of the third party from

18.            whom production is sought;

19.       3.   That the third party is the only

20.            practical source of the information;

21.       4.   That the third party will be reasonably

1          compensated   for   expenses   and   legal

2          costs of compliance;  and

3     5.   The   public   interest   in   disclosure

4          outweighs   the   legitimate   privacy

5          interests and  interests and  freedom of

6          expression.

7

8          I  will  deal  with  each  of  those  in  turn.

9     First  whether  a  prima  facie  case  has  been

10    established.   In  my  view  the  words  in  the  blogs

11    would  tend  to  lower  Trout  Point's  reputation  in

12    the  eyes  of  a  reasonable  person  and  do  refer  to

13    Trout  Point.   The  blogs  are  posted  on  a  publicly-

14    accessible  website.   They  were  accessed  freely  by

15    Charles  Leary.   The  most  likely  inference  is  that

16    they  were  communicated  to  persons  other  than

17    Trout   Point.    As   such,   Trout   Point   has

18    established  a  prima  facie  case  that  they  were

19    published  and  were  defamatory.

20

21         2.   Regarding  involvement  of  the  third  party

1    from whom production is sought, Automatic Inc.

2    is involved in the sense that it hosts and

3    publishes the blogging website on which the blogs

4    were posted even though it is not implicated in

5    the alleged wrongful acts.

6

7         3.   The third party is the only practical

8    source of information.  Automatic has a policy

9    of generally producing information identifying

10   anonymous bloggers on its website if directed to

11   do so by court order including a court order

12   originating from outside the US.  It appears that

13   in the circumstances to be the only avenue to

14   obtain the information sought.

15

16        4.   The third party will be reasonably

17   compensated for expenses and legal costs of

18   compliance.  The information requested ought to

19   be easily accessible. For the most part it ought

20   to have been obtained when the bloggers signed

21   onto the website.  Automattic's policy indicates

1    it    contemplates    readily    providing    such

2    information when directed to do so by any court.

3    Given that we are talking about a website, more

4    likely than not all the information is in

5    electronic form and can simply be emailed to

6    Trout Point at essentially no cost to Automattic.

7    Further, its standard procedure is to forward

8    court orders to the bloggers themselves in case

9    they want to quash the legal process. Therefore

10   Automattic itself would not incur any legal

11   costs.

12

13        5.   The public interest in disclosure

14   outweighs the legitimate privacy interest and

15   interests in freedom of expression. Automattic's

16   policy is to generally provide information it is

17   directed to provide by court order including

18   international orders. Examples include requests

19   for information about anonymous bloggers sued for

20   defamation. In addition the privacy policy

21   states:

1

> "If you are a blogger looking
> for a completely anonymous
> blogging service or if the
> fact that the above data could
> be revealed in court
> proceedings, et cetera bothers
> you, please do not use
> wordprocess.com (sic) for your
> blogging."

When a blogger signs up he or she agrees to the host's privacy policy. Therefore there is a diminished expectation of privacy where, as in the case at hand, the anonymous blogger is posting information that is prima facie defamatory. And in support of that I refer to York University and Bell Canada Enterprises, [2009] O.J. 3689 and that is a decision of the Ontario Superior Court of Justice. Generally the public interest in not allowing individuals to distribute defamatory materials under the cloak of anonymity will outweigh the public interest in protecting such a person's right to privacy and freedom of expression. That in principle was the conclusion that was reached in Bragg, Mosher and

1        York University v. Bell Canada Enterprises.

2              In the case at hand the content and tone of

3        the blogs is aggressive.  There is no indication

4        that the bloggers are fearful of the Plaintiff or

5        of other targets of their comments.  There is no

6        indication that their identity should be

7        protected for safety reasons.  In addition in the

8        case at hand, the blogs contain comments based on

9        the actual or perceived sexual orientation of the

10       intended targets.  Those comments are clearly

11       meant to be derogatory and insulting.  I will not

12       reproduce them here.  It is the type of

13       expression that engenders harmful results such as

14       discrimination and hatred.  It is not the type of

15       free expression that deserves protection and

16       fostering.

17             Considering these factors, I am of the view

18       that the public interest and disclosure outweighs

19       the legitimate privacy interest and interests and

20       freedom of expression of the anonymous bloggers.

21       And given this conclusion and that I have found

1    the requested information to be relevant, it is

2    appropriate that I exercise my discretion under

3    Civil Procedure Rule 14.12(1) to order the third

4    party production requested.  I therefore grant

5    the Plaintiff's motion.  I will initial the order

6    and have it issued and it should be available for

7    pick up fairly shortly.  Clerk, do you know if

8    the Prothonotary is in today?

9        COURT CLERK:    Yes, she is.

10       THE COURT:  She's in today so that should be

11   available for pick up later today, okay?  Now I'm

12   assuming that you're not making any motion for

13   costs where the Defendants did not oppose the

14   motion.   They  simply  raised  the  issue  of

15   relevance.  Am I correct in that assumption Dr.

16   Leary?

17       DR. LEARY:      That's right, My Lord.

18       THE COURT:  All right, thank you.

19       UNIDENTIFIED MALE VOICE:  My   Lord,   Robert

20   (inaudible due to mumbling…)  Just one point

21   arising out of this.  When the order is served

1    and  the  materials  are  produced  to  the  Plaintiff

2    it's  understood  that  they  will  provide  the

3    materials  for  the  Defendant  (inaudible  due  to

4    mumbling…)

5           THE COURT:   Yeah, so from my perception it

6    should  be  automatic  because  it's  obviously

7    something  that's  relevant  to  the  proceeding  and

8    that  they  have  in  their  possession.

9           UNIDENTIFIED MALE VOICE:   Thank you My Lord.

10          THE COURT:   Okay,  thank  you  everyone.   We

11   can  close  the  court,  clerk.

12          DR. LEARY:      Thank you My Lord.

13          THE COURT:   Thank you.

14

15          [ADJOURNED AT 11:40 A.M.]

16

## CERTIFICATE OF COURT TRANSCRIBER

I, Rita Newton, Court Transcriber, hereby certify that I have transcribed the foregoing and that it is a true and accurate transcript of a decision given in the matter of Trout Point Lodge Limited v. Louisiana Media Company, LLC, YAR 328248 taken by way of electronic recording in Halifax, Nova Scotia on May 30, 2011.

_____

Rita Newton, Certificate No. 2006-56

CERTIFIED COURT TRANSCRIBER,

PROVINCE OF NOVA SCOTIA


Halifax, Nova Scotia

July 7, 2011