IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

TROUT POINT LODGE LIMITED,
A Nova Scotia Limited Company;
VAUGHN PERRET, and CHARLES
LEARY                                                                                                                             PLAINTIFFS

V.                                                       CAUSE NO. 1:12CV90-LG-JMR

DOUG K. HANDSHOE                                                           DEFENDANT

**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT is the [6] Motion for Summary Judgment filed by Plaintiffs Trout Point Lodge Limited, a Nova Scotia Limited Company ("Trout Point Lodge"), Vaughn Perret, and Charles Leary, and the [8] Motion for Summary Judgment filed by Defendant Doug K. Handshoe. This action seeks to enforce a judgment issued by the Supreme Court of Nova Scotia, Canada, in a defamation action. Defendant Handshoe has published, via the Internet, various statements about Plaintiffs. Plaintiffs are Nova Scotia residents, and they sued Handshoe in the Supreme Court Nova Scotia, alleging defamation and other claims. The Supreme Court of Nova Scotia issued a judgment awarding monetary and injunctive relief to Plaintiffs. The parties' motions seek summary judgment with respect to whether a judgment issued by the Supreme Court of Nova Scotia may be enforced in this jurisdiction. The parties have filed a total of five (5) briefs [11, 16, 19, 27, 29] with respect to Plaintiffs' Motion for Summary Judgment, and two with respect to Defendant's Motion for Summary Judgment [10, 20]. The parties have also submitted several affidavits and exhibits. The Court has reviewed the parties'

submissions and the applicable law. For the reasons set forth below, the Court finds that under the provisions of The SPEECH Act, 28 U.S.C. 4101 *et seq.*, it may not enforce the judgment of the Supreme Court of Nova Scotia. Accordingly, Plaintiffs' Motion for Summary Judgment is denied, and Defendant's Motion for Summary Judgment is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are Trout Point Lodge, a vacation lodge in Nova Scotia, and Vaughn Perret and Charles Leary, who serve as Managing Directors, chefs, and proprietors at Trout Point Lodge.[1] Plaintiffs filed a complaint in the Nova Scotia court in 2011 against Defendant Doug Handshoe, alleging, *inter alia*, defamation claims. Handshoe, who is a resident of this judicial district, owns and publishes an Internet website (or blog) entitled "Slabbed."[2] Handshoe submits that "Slabbed" is a "forum for local residents and other interested parties to gather and share information regarding various political and legal issues that impact the Gulf Coast." (Def.'s Mem. 1, ECF No. 10). Handshoe has published numerous statements on "Slabbed" about Trout Point Lodge, Perret, and Leary. Handshoe's publications allege, among other things, that the plaintiffs are connected to Aaron Broussard, former Parish President of Jefferson Parish, Louisiana, who recently pleaded guilty

---

[1] Perret also serves as President of Trout Point Lodge.

[2] Handshoe's pleadings refer to "Slabbed New Media, LLC" as a defendant, but Doug Handshoe is the only named defendant. Slabbed New Media, LLC is not a party to this action.

to engaging in criminal activity while in office. Broussard was indicted in the United States District Court for the Eastern District of Louisiana, and pleaded guilty to charges of bribery and theft in September of this year.

According to the parties' briefs, Broussard had, or has, some ownership interest in property in Nova Scotia, Canada. The record demonstrates that in January 2010, the *Times-Picayune*, a New Orleans publication, published articles regarding the Broussard corruption scandal. Those articles mentioned Trout Point Lodge, and identified Broussard as having an ownership interest in Trout Point Lodge.[3] Plaintiffs then contacted the *Times-Picayune* and "pointed out factual errors in [its] reporting." (Leary Aff. 2, ECF No. 17). Subsequently, the *Times-Picayune* issued a retraction of its identification of Broussard as an owner of Trout Point Lodge, and apologized for publishing that material. (Leary Aff. Ex. 1, ECF No. 17-1).

Defendant Handshoe also began publishing on "Slabbed" about Broussard and his alleged connection to Trout Point Lodge, Perret, and Leary in or about January 2010. The time line is not entirely clear from the record, but it appears that after Plaintiffs demanded the retraction from the *Times-Picayune*, the "Slabbed" blog was taken offline by the *Times-Picayune*'s corporate parent, Advance Publications. Handshoe, apparently in reaction to his blog being taken offline, then

---

[3]According to the record, Broussard's Nova Scotia property is located on Trout Point Road, in close proximity to Trout Point Lodge.

began an internet campaign to damage Perret and Leary.[4] Handshoe has published numerous entries on "Slabbed" about Plaintiffs, many of which may be characterized as derogatory, mean spirited, sexist and homophobic.[5] Handshoe has continued to use his reporting on "Slabbed" as a platform from which to allege a connection between Broussard's crimes and Trout Point Lodge.[6] Among other things, Handshoe has accused Perret and Leary of being involved in a scheme in which Broussard used a Canadian company to launder money proceeds of illegal activities in Jefferson Parish.[7]

Handshoe has also published material about Leary and Perret that is unrelated to the Broussard scandal. For example, Handshoe has published statements regarding litigation involving Perret's and Leary's former business venture and the Atlantic Canada Opportunities Agency (ACOA). Handshoe has

---

[4] Handshoe subsequently found another web host for the "Slabbed" blog.

[5] For example, Handshoe has made a number of off-color sexual remarks about Vaughn and Perret, and has published several photo-shopped images of Vaughn and Perret in an apparent attempt to harass or embarrass them. Handshoe repeatedly refers to Vaughn and Leary, both of whom are male, as "the girls."

[6] Handshoe also publishes his "Slabbed" entries on Twitter.

[7] For example, Handshoe has stated on "Slabbed" that he spoke with a former Trout Point Lodge employee, and "[i]n answer to the question as to who handled the money for Aaron's property? Definitely Trout Point . . . This makes sense and confirms a long-held suspicion that he girls were the fiscal agents for all the cabins owned by Louisianians close to the Lodge including Aaron Broussard. That said the Lodge's financial records would certainly contain evidence to either support the pay-to-Trout Point to play in Jefferson Parish allegations that are at the heart of this story." (Leary Aff. 5, ECF No. 17).

alleged that Plaintiffs were dishonest in dealing with the Canadian agency, and suggested that Leary committed perjury during that proceeding.[8]

"Slabbed" contains numerous entries about, or that Handshoe relates to, the plaintiffs. Some of the entries are simply links to articles by other publications. Some of the blog entries discuss Vaughn and Perret directly.[9] In others, the content of the entry does not mention the plaintiffs, but Handshoe relates the title of the post to the plaintiffs. For example, Handshoe posted an entry about a factual basis filed in the criminal proceeding against Aaron Broussard's ex-wife, Karen Parker Broussard. The factual basis, filed by the United States Attorney's Office, stated:

> Additionally, from approximately 2004 through 2010, Broussard received monies, totaling hundreds of thousands of dollars, that were characterized as, among other things, "retainers," "consulting fees" or "finder's fees" with various contractors and vendors, all of whom were doing business with Jefferson Parish during the period of time Broussard was the President of Jefferson

---

[8] For example, Handshoe stated on "Slabbed:" "You see the girls have left a trail of financial wreckage in Canada reportedly screwing over trade venders [sic] and others building the Lodge and that harebrained exotic cheese farm La Ferme D'Acadie where they shafted the Atlantic Canada Opportunities Agency." (Leary Aff. 5-6, ECF No. 17).

[9] During 2012 alone, there have been approximately sixty publications on "Slabbed" that reference the plaintiffs. The record indicates that there may be hundreds of posts regarding the plaintiffs. Some of his posts were entitled, among other things: "Slabbed travels back in time with the girls and ties a few things together. A Trout Point Lodge / Jefferson PARISH Political Corruption Scandal Update Part 1;" (this was followed by "Part 2") and "First class bitches, common thugs or plain ol' morons: The Girls at Trout Point Lodge sue Fox 8 and Slabbed. A Trout Point Lodge / Jefferson Parish Political Corruption Scandal Update." Handshoe claimed he would "meticulously lay down the trail of scams and political corruption that leads to Nova Scotia and Trout Point Lodge."

5

> Parish. Moreover, Broussard was a majority owner in a holding company which owned an investment property in Canada. Broussard received income from this Canadian property. This property was partially funded by individuals and/or entities who were contractors and/or vendors doing business with Jefferson Parish during the period of time Broussard was the Jefferson Parish President.

(Def.'s Reply, Ex. 2 at 7, ECF No. 27-2). The factual basis says that Broussard was "a majority owner in a holding company that had investment property in Canada." It says nothing about Trout Point Lodge, Leary, Perret, or even Daniel Abel. However, Handshoe entitled his blog entry, "BREAKING: Aaron Broussard Laundered his money through Nova Scotia!!!!! A Trout Point update." In that entry, he references Leary and Perret and addresses them, stating, "So girls . . . rest assured I have a complete series of posts coming that will explore both Karen Parker's latest revelations and soooo much more."

Other blog entries contain no content about Vaughn or Perret or Trout Point Lodge, but Handshoe links the entries to their names with "tags." For example, on October 6, 2012, Handshoe posted a blog entry entitled "How I Spent My Summer Vacation," which essentially states that Handshoe examined "thousands" of public documents from Aaron Broussard's office. The blog entry does not mention Perret or Leary; it does not claim that the plaintiffs were mentioned in any of the documents Handshoe examined. However, Handshoe provides "tags" for Vaughn, Perret, and Trout Point Lodge at the bottom of the entry, therefore linking their names to the entry about Broussard's files. Moreover, Handshoe characterizes

6

posts about the Broussard scandal as "Trout Point development(s)," whether or not the substance of the entry actually relates to Nova Scotia.

In response to the publications on "Slabbed," the Plaintiffs filed a complaint (their First Amended Statement of Claim) in the Supreme Court of Nova Scotia against Handshoe for "defamation, invasion of privacy, injurious falsehood, intentional interference with contractual relations, intentional interference with economic relations, intentional infliction of emotional and mental distress and assault." (Pls.' Mot. Ex. 5 at 3, ECF No. 6-5). Defendant Handshoe was served with process in Wiggins, Mississippi. (Pls.' Mot. Ex. 1, ECF No. 6-1). Handshoe never appeared in the Supreme Court of Nova Scotia, and that court entered a default judgment against him. As the Nova Scotia court explained, the effect of the default judgment is that "the claims against Mr. Handshoe are . . . to be treated . . . as proven," and that Handshoe had admitted the claims against him. (Pls.' Mot. Ex. 5 at 5, ECF No. 6-5; Pls.' Mot. Ex. 3, ECF No. 6-3). The Nova Scotia court held a hearing on the assessment of damages and heard evidence from Perret and Leary. The court issued an Oral Decision following the hearing.

The court's decision summarized the evidence put forth by Perret and Leary about the harm they suffered as a result of Handshoe's publications. This included testimony about emotional distress and physical manifestations of stress they experienced. The plaintiffs stated that they believed the publications on "Slabbed"

7

were harmful to their business, but admitted that this was very difficult to prove.[10] The court discussed the content of Handshoe's publications about the plaintiffs, noting that Handshoe had made accusations of fraud and criminal activity against the plaintiffs, as well as a number of anti-gay, personal attacks on them. The court entered a judgment in which it awarded Trout Point Lodge general damages in the amount of $75,000, and Perret and Leary each $100,000 in general damages, $50,000 in aggravated damages,[11] and $25,000 in punitive damages. The court also issued injunctive relief, stating:

> In addition, I order a permanent injunction to issue against the defendant, Douglas K. Handshoe, restraining him from disseminating, posting on the Internet or publishing, in any manner whatsoever, directly or indirectly, any statements or comments about the plaintiffs, Trout Point Lodge, Charles L. Leary, and Vaughn J. Perret. This injunction shall include the publication, circulation and promotion on the blog named Slabbed, and any similar or other publications. For further particularity, the defendant shall not publish or cause to be published or otherwise disseminate or distribute in any manner whatsoever, whether by way of the Internet or other medium, any statements or other communications which refer to the plaintiffs by name, depiction or description.
>
> I also order a mandatory injunction to issue against the

---

[10] Plaintiffs submitted that occupancy rates at Trout Point Lodge were three percent (3%) lower in 2011 than in 2010. (Pls.' Mot. Ex. 5 at 8, ECF No. 6-5).

[11] Under Canadian law, "[a]ggravated damages may be awarded in circumstances where the defendant's conduct has been particularly high handed or oppressive thereby increasing the plaintiffs' humiliation and anxiety arising from the libellous statement." *Hill v. Church of Scientology of Toronto* (1995), S.C.R. 1130, para. 188 (Can.).

8

> above-named Defendant regarding continued publication
> in any manner whatsoever, whether by way of the
> Internet or other medium, any statements or other
> communications which refer to the plaintiffs by name,
> depiction or description. All such material is hereby
> ordered to be immediately removed from publication.

Pls.' Mot. Ex. 2, ECF No. 6-2.

Plaintiffs now seek to enforce the judgment of the Supreme Court of Nova Scotia in this Court. Plaintiffs filed a Motion to Enroll Foreign Judgment in the Circuit Court of Hancock County, Mississippi, and Defendant removed the action to this Court pursuant to 28 U.S.C. § 1441. Defendant Handshoe argues that under the SPEECH Act, 28 U.S.C. 4101 *et seq.*, the judgment of the Canadian court is unenforceable in the United States because (1) Canadian law provides less stringent protections for freedom of speech than United States laws and (2) Handshoe would not have been found liable for defamation in a domestic court. Plaintiffs Trout Point Lodge, Perret, and Leary argue they are entitled to summary judgment, and execution of the Nova Scotia judgment, because the requirements of the SPEECH Act have been satisfied. They submit that Canadian law afforded Defendant Handshoe "as much free speech protection as he would have received in a state or federal district court of the United States." (Pls.' Mem. 11, ECF No. 7). They also argue that had Defendant Handshoe been sued in a court in Mississippi, he would have been liable for defamation.

9

**DISCUSSION**

*The SPEECH Act*

The question before the Court is whether the judgment of the Supreme Court of Nova Scotia is enforceable as a matter of law. The Securing the Protecting of Our Enduring and Established Constitutional Heritage Act, or the SPEECH Act, was passed by the United States Congress in 2010. The Act governs recognition of foreign defamation judgments in courts in the United States. The SPEECH Act was passed in an attempt to counteract "libel tourism," or the practice of "circumventing First Amendment protections" by filing lawsuits in foreign jurisdictions that lack similar protections. *See* H.R. Rep. No. 111-154, at 2 (2009). Congress was concerned that such forum-shopping could have a chilling effect on free speech here in the United States, and undermine the First Amendment protections provided by our Constitution.[12] The SPEECH Act intended to "provide a single, uniform standard for addressing . . . foreign libel judgments." (S. Rep. No. 111-224 at 4 (2010). It provides for removal to federal courts where, as here, an

---

[12] In passing the SPEECH Act, Congress reacted, at least in part, to defamation actions brought in Britain, which has a plaintiff-friendly approach to defamation law and allows injunctions that would be prohibited in the United States. One example of these British libel actions was the lawsuit brought by Saudi billionaire Khalid Bin Mahfouz against author and United States citizen Rachel Ehrenfeld, who accused Bin Mahfouz of providing financial support for terrorism in her book, *Funding Evil: How Terrorism is Financed and How to Stop It*. Bin Mahfouz, who was not a British citizen, successfully sued Ehrenfeld in a British court and received monetary damages and injunctive relief prohibiting publication of the book in Britain and ordering its removal from public libraries. *See* S. Rep. No. 111-224 at 3 (2010).

10

enforcement action has been filed in state court. See 28 U.S.C. § 4103.

The Act essentially provides that an American court shall not enforce a foreign defamation judgment unless the plaintiff has demonstrated that the foreign court provided at least as much protection for freedom of speech as a court in the United States would have, **or** that the defendant would have been found liable for defamation in a domestic court applying state and federal law. The statute provides, in pertinent part:

> (a) First Amendment considerations.--
>
> (1) In general.--Notwithstanding any other provision of Federal or State law, a domestic court shall not recognize or enforce a foreign judgment for defamation unless the domestic court determines that--
>
> (A) the defamation law applied in the foreign court's adjudication provided at least as much protection for freedom of speech and press in that case as would be provided by the first amendment to the Constitution of the United States and by the constitution and law of the State in which the domestic court is located; or
>
> (B) even if the defamation law applied in the foreign court's adjudication did not provide as much protection for freedom of speech and press as the first amendment to the Constitution of the United States and the constitution and law of the State, the party opposing recognition or enforcement of that foreign judgment would have been found liable for defamation by a domestic court applying the first amendment to the Constitution of the United States and the constitution and law of the State in which the domestic court is located.
>
> (2) Burden of establishing application of defamation laws.--The party seeking recognition or enforcement of the foreign judgment shall bear the burden of making the showings required under subparagraph (A) or (B).

11

28 U.S.C. § 4102.[13]

The Court finds that Plaintiffs have not demonstrated that either (A) that the Supreme Court of Nova Scotia provided the level of protection for freedom of speech in this case as an American court, or (B) that Handshoe would have been found liable for defamation in a court in this state.

It is well-established under the law of the United States and Mississippi that in order to hold a defendant liable for defamation, the plaintiff must demonstrate that the statement complained of is false. *See Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986); *P.L. Blake v. Gannet Co.*, 529 So. 2d 595, 602 (Miss. 1988). Truth is an "absolute defense" to a claim of defamation under Mississippi law. *Blake*, 529 So.2d at 602 (citing *Fulton v. Miss. Publishers Corp.*, 498 So. 2d 1215, 1217 (Miss. 1986); *Prescott v. Bay St. Louis Newspapers, Inc.*, 497 So. 2d 77 (Miss. 1986) (citation omitted); *Smith v. Byrd*, 225 Miss. 331, 83 So. 2d 172, 174 (1955); *Conroy v. Breland*, 185 Miss. 787, 189 So. 814, 816 (1939); and Miss. Const. Art. 3, § 13 (1890)). The Mississippi Supreme Court has held that even statements that are only "substantially true" are not an adequate basis to establish defamation. *See Armistead v. Minor*, 815 So. 2d 1189, 1194 (Miss. 2002).

---

[13]Section (c) of the SPEECH Act addresses foreign defamation judgments against providers of interactive computer services, as defined by section 230 of the Communications Act of 1934, 47 U.S.C. 230, and requires that the judgment be consistent with the Communications Act. There is no suggestion that Handshoe qualifies as a provider of an interactive computer service.

In contrast, under Canadian law, falsity is not an element of defamation; rather, truth may be raised as a defense. *See Grant v. Torstar* (2009) 3 S.C.R. 640, para. 28-32 (Can.). In *Grant v. Torstar*, the Supreme Court of Canada stated:

> A plaintiff in a defamation action is required to prove three things to obtain a judgment and an award of damages: (1) that the impugned words were defamatory, in the sense that they would tend to lower the plaintiff's reputation in the eyes of a reasonable person; (2) that the words in fact referred to the plaintiff; and (3) that the words were published, meaning that they were communicated to at least one person other than the plaintiff. If these elements are established on a blaance of probabilities, **falsity and damages are presumed** . . . **[t]he tort is thus one of strict liability.** If the plaintiff proves the required elements, the onus then shifts to the defendant to advance a defence in order to escape liability.

*Id.* at para. 28-29 (emphasis added).

According to the record before this Court, the decision of the Supreme Court of Nova Scotia does not contain specific findings of fact with respect to the falsity of Handshoe's statements. Because Handshoe did not defend against the plaintiffs' claims, the Nova Scotia court entered a default judgment, and then focused solely on damages. A Mississippi court would require proof of damages only if the plaintiff first proved the statements at issue were false. To establish a *prima facie* claim of defamation in Mississippi, the plaintiff has the burden to prove the following:

> (1) a false and defamatory statement concerning plaintiff;
> (2) unprivileged publication to third party;
> (3) fault amounting at least to negligence on part of publisher;
> (4) and either actionability of statement irrespective of special harm or existence of special harm caused by

13

publication.

*Armistead v. Minor*, 815 So. 2d 1189, 1193 (Miss. 2002)(citing *Franklin v. Thompson*, 722 So. 2d 688, 692 (Miss. 1998). The "threshold question in a defamation suit is whether the published statements are false." *Id.* Thus, without a showing of falsity, a court in this jurisdiction would never reach the question of damages.

In addition, if the plaintiff is deemed to be a public figure, he or she must prove that the defendant acted not with mere negligence, but with "actual malice" under the familiar standard set forth in *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964), and must do so with 'clear and convincing proof.' *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974). Defendant Handshoe argues that plaintiffs are "vortex public figures" under Mississippi law, and therefore the "actual malice" requirement applies to their claims of defamation. The Court need not determine, at this point, whether the plaintiffs are public figures for the purposes of the *New York Times v. Sullivan* standard. The Court finds that it is sufficient that, in this case, the plaintiffs have not demonstrated that they were required to prove the falsity of Handshoe's statements, and therefore have not established they are entitled to enforcement of the Nova Scotia judgment under the SPEECH Act.[14]

---

[14] The Court does note, however, that Canada has declined to adopt the *New York Times Co. v. Sullivan* standard. *See Hill v. Church of Scientology of Toronto* (1995), S.C.R. 1130, para. 137 (Can.). The Supreme Court of Nova Scotia describes *Hill v. Church of Scientology* as "[t]he leading case on defamation in Canada." (Pls.' Mot. Ex. 5 at 16, ECF No. 6-5). *See also Investorshub.com, Inc. v. Mina Mar Group*, No. 4:11cv9-RH-WS (N.D. Fla. 2011) (where, in a Stipulated Final Judgment, the

14

Under our well-established First Amendment principles, truthful speech is protected, and it is the plaintiff's burden to prove falsity in a defamation action. This is not the case in Canada, and it does not appear from the record that the Nova Scotia court conducted an inquiry into the truth of Handshoe's assertions. Likewise, had the Plaintiffs filed their defamation action in Mississippi, they would be required to prove falsity before they would be entitled to damages. Handshoe has not published any specific allegations about what role he believes Leary and Perret played in Broussard's crimes. It is possible this is because Handshoe does not have any information indicating Plaintiffs were involved in Broussard's criminal activity. Handshoe, has, however, made numerous more generalized allegations about connections between Leary, Perret, Abel, and Broussard. Some of these statements seem to be based in fact; others appears to be conspiracy theories that may or may not be substantiated.[15] As noted above, under the law of

---

United States District Court for the Northern District of Florida found that Canadian law did not provide the same protections for freedom of speech as United States laws).

[15] The record indicates that Vaughn and Perret lived in Louisiana prior to establishing their business in Nova Scotia. A New Orleans attorney, Daniel Abel, was (or is) a long-time business partner of Vaughn's and Perret's, and he is also a former law partner of Aaron Broussard's. The plaintiffs have admitted that they, or their company, helped manage Broussard's property in Nova Scotia, which is located very close to Trout Point Lodge. The record contains a letter to Leary and Perret from Roy D'Aquila, a New Orleans attorney connected to Broussard, that discusses the possibility of placing Mr. Broussard's property on an insurance policy held by Trout Point Lodge. (Pls.' Mot. Ex. 10 at 24, ECF No. 6-10). Moreover, the Court is aware that there is a civil action pending in the United States District Court for the Eastern District of Louisiana against Broussard and others in which it is alleged that Trout Point Lodge, Ltd. was one of many "co-conspirators" in a

15

Mississippi, even those statements that are "substantially true" are protected speech. And this Court cannot determine, based on the record before it, the truth or falsity of Handshoe's claims that the Plaintiffs are connected to Aaron Broussard's criminal activities. Nor should it enforce a judgment in an action that, if brought in this Court, would depend upon the plaintiffs' proof that the statements at issue are false.

Moreover, it significant to note that the Supreme Court of Nova Scotia issued a broadly worded, permanent injunction against Handshoe. The injunction prohibits Handshoe from "disseminating, posting on the Internet or publishing, in any manner whatsoever, directly or indirectly, any statements or comments about the plaintiffs[.]" He may not circulate or publish "any statements or other communications which refer to the plaintiffs by name, depiction or description." (Pls.' Mot. Ex. 2, ECF No. 6-2). Such an injunction could not conceivably pass constitutional muster in United States courts, where restraints on speech and the press are strongly disfavored. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). There is a heavy presumption that a prior restraint on expression is

---

criminal scheme involving various public officials. *See Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC v. Frederick R. Heebe, et al.,* No. 2:12cv2596-NJB-KWR (E.D. La.). It has also been alleged that another business of Vaughn's and Perret's, Cerro Coyote, SA, is another "co-conspirator." According to the record, Daniel Abel was also an owner of Cerro Coyote. None of this proves that the plaintiffs were involved in Broussard's criminal activities. However, the plaintiffs have not proved that Handshoe's publications regarding their connection to Broussard are false, and under the defamation law of this country, they are required to do so.

16

unconstitutional. *Id.* (citing *Carroll v. Princess Anne*, 393 U.S. 175, 181, (1968); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963)). "An 'order' issued in 'the area of First Amendment rights' must be 'precis[e]' and narrowly 'tailored' to achieve the 'pin-pointed objective' of the 'needs of the case.'" *Carroll*, 393 U.S. 175, 183–184. This broadly worded injunction, which forbids Handshoe from making *any* comments regarding the plaintiffs, defamatory or otherwise, would not be issued in a domestic court. While many may find Handshoe's publications may be characterized as distasteful or offensive, this Court cannot enforce an order by a foreign court that amounts to a prior, and essentially total restraint on his speech. *See Cohen v. California*, 403 U.S. 15, 26 (1971) (holding that "verbal tumult, discord, and even offensive utterance" are "necessary side effects of ... the process of open debate,"and noting that "'(o)ne of the prerogatives of American citizenship is the right to criticize public men and measures–and that means not only informed and responsible criticism but the freedom to speak foolishly and without moderation.'")(quoting *Baumgartner v. United States*, 322 U.S. 665, 673-674 (1944)).

The House Report on the SPEECH Act described the limits the First Amendment places on the liability of publishers as follows:

> The First Amendment to the Constitution limits the liability of authors and publishers under state defamation law by *prohibiting injunctions against defamatory statements in nearly all instances*, and by restricting the circumstances under which a plaintiff may recover damages for defamation. The First Amendment limits liability in three key respects. First, it renders non-actionable a defamatory statement of opinion that 'does

17

> not contain a provably false factual connotation.' Second, it requires the plaintiff to prove the falsity of a defamatory statement.  Third, it requires the plaintiff to prove fault, with clear and convincing evidence, by showing actual malice or negligence, depending on the subject matter of the statement and whether the defendant is a public figure.

H.R. Rep. 111-154 at 2 (2009) (citations omitted) (emphasis added).  In light of these principles, this Court may not enforce the judgment of the Supreme Court of Nova Scotia.  The Court finds that to do so would contradict the letter and purpose of the SPEECH Act.

## CONCLUSION

As set forth above, in order to enforce this foreign defamation judgment, the Plaintiffs must demonstrate that Defendant Handshoe was afforded at least as much protection for freedom of speech in that action as he would have in a domestic proceeding, or, alternatively, that Handshoe would have been found liable for defamation by a domestic court.  They have not met their burden under the SPEECH Act to establish at least one of these requirements.  Therefore, the Court may not enforce the judgment of the Supreme Court of Nova Scotia.  Accordingly, Defendant's Motion for Summary Judgment is granted, and Plaintiffs' Motion for Summary Judgment is denied.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [6] Motion for Summary Judgment filed by Plaintiffs Trout Point Lodge Limited, a Nova Scotia Limited Company ("Trout Point Lodge"), Vaughn Perret, and Charles Leary is **DENIED**, and the [8] Motion for Summary Judgment filed by Defendant Doug K.

18

Handshoe is **GRANTED**.

**SO ORDERED AND ADJUDGED** this the 19th day of December, 2012.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE

19