YAR 1 SC 110520
YAR 328248

IN THE SUPREME COURT OF NOVA SCOTIA

BETWEEN:

TROUT POINT LODGE LIMITED

APPLICANT

– and –

LOUISIANA MEDIA COMPANY, LLC

RESPONDENT

_____

DECISION

_____

| | |
|---|---|
| HEARD BEFORE: | The Honourable Justice Pierre Léon Muise |
| COUNSEL: | Dr. Charles Leary Self-Represented as Agent and Officer of Trout Point Lodge Limited |
| PLACE: | Yarmouth JC1, Yarmouth, N.S. |
| DATE HEARD: | May 30, 2011 |

INDEX
TROUT POINT LODGE LIMITED V. LOUISIANA MEDIA LLC
MAY 30, 2011

Decision by the Court .................................3

1                        DECISION BY THE COURT
2

3          THE COURT:        And Sheriff, you can open the

4      door to the courtroom as well, okay.  This is the

5      matter of Trout Point Lodge Limited and Louisiana

6      Media Company, LLC.  It is File Number YAR

7      328248.  There is a motion before the court by

8      Trout Point for an order requiring Automattic

9      Inc., "Automattic" spelled with two t's at the

10     end, to reveal the information regarding the

11     identity of some registered Wordpress.com users.

12     Automattic Inc. is a California corporation which

13     hosts a blogging website called Wordpress.com.

14     Wordpress.com in turn hosts a blog named Slabbed

15     with the URL Slabbed.wordpress.com.  Telemachus

16     and unslabbed are two registered users on

17     Slabbed.  Soft81_1 is the purported owner and

18     publisher of the blog.  As the entity in charge

19     of the blog, Soft81_1 controls what appears on

20     it.  All three maintain an anonymous identity.

21     Trout Point alleges that their blogs or postings

22     are prima facie defamatory and refers to the

<u>DECISION BY THE COURT</u>

1   publications of Louisiana Media.  And they appear
2   to be closely connected with Louisiana Media.
3   Trout Point asks that I order Automattic Inc. to
4   produce information revealing the identity of
5   these anonymous entities on the basis that they
6   will either be added as defendants in the within
7   action or added as defendants in a separate
8   action and are material witnesses in the within
9   action.  Automattic has no part in what appears
10  in the blogs.  It only provides the service.

11      This motion is made pursuant to Civil
12  Procedure Rule 14.12 which permits a judge to
13  order a third party to produce a relevant
14  document.  It is made within this action by Trout
15  Point against Louisiana Media.  It is not a pure
16  motion for production at a pre-commencement of
17  action stage as was the case in AB and Bragg
18  Communications Inc., [2010] N.S.S.C. 215 and in
19  Mosher and Coast Publishing Limited, [2010]
20  N.S.S.C. 153.  However the test is — the same
21  test is applicable to determining whether

1    production of anonymous bloggers' identifying

2    information should be ordered so that it can be

3    added as parties to the within action.  That is

4    the same test as in Bragg and Mosher.

5         In the case at hand there is also a question

6    of whether the requested information is relevant

7    to an issue to be determined in the existing

8    action against Louisiana Media.  I will deal with

9    that first.  2009 Civil Procedure Rule 14.01

10   defines relevant and relevancy for the purposes

11   of production and disclosure as "having the same

12   meaning as a trial of an action or on the hearing

13   of an application."  This trial relevance test

14   replaced the old semblance of relevance test.

15   The Chambers Judge must now assume, as best as he

16   or she can, the vantage point of a trial or an

17   application judge and apply general evidence law.

18   The determination is based on the pleadings and

19   the evidence known to the judge.  However, there

20   should still be liberal disclosure of relevant

21   information and I refer to — in support of this I

1  refer to Brown and Cape Breton Regional
2  Municipality, [2011] N.S.C.A. 32, at Paragraphs 8
3  to 13. The onus is on the plaintiffs to
4  establish that the information they seek is
5  relevant. Justice LeBlanc in Murphy and Lawtons
6  Drug Stores Limited, [2010] N.S.S.C. 289 at
7  Paragraph 16 cited with approval at Paragraph 3.3
8  from the Law of Evidence, 5th Edition 2008, David
9  Paciocco and Lee Stuesser which included the
10 following comments:

11

12           "Evidence is relevant where it
13           has some tendency as a matter
14           of logic and human experience
15           to make the proposition for
16           which it is advanced more
17           likely than that proposition
18           would be in the absence of
19           that evidence."
20

21 As the Supreme Court of Canada has said in
22 R. v. Arp, [1998] 3 S.C.R. 339:

23

24           "To be logically relevant, an
25           item of evidence does not have
26           to firmly establish, on any
27           standard, the truth or falsity

1                    of the fact in issue. The
2                    evidence must simply tend to
3                    increase or diminish the
4                    possibility of the existence
5                    of a fact in issue. As a
6                    consequence there is no
7                    minimal probative value
8                    required for evidence to be
9                    relevant."
10

11        Trout Point's pleadings allege, among other

12    things, that Louisiana Media's reports and

13    broadcasts relating to the Aaron Broussard

14    investigation improperly included references to

15    Trout Point and photos of its lodge creating the

16    impression that Mr. Broussard was an owner of the

17    Trout Point Lodge and that Trout Point was

18    implicated in his alleged wrongdoings. Louisiana

19    Media's amended Statement of Defence states, at

20    Paragraph 16:

21

22                    "The Defendant states that as
23                    to the totality of the
24                    broadcast or broadcasts,
25                    whether by way of television,
26                    internet or otherwise,
27                    containing the January 6, 2010
28                    interview of Aaron Broussard,
29                    it was clearly communicated to
30                    and understood by its audience

1   that the Broussard properties
2   were not the Plaintiff, Trout
3   Point Lodge Limited's but
4   rather were properties
5   connected to the Plaintiff
6   Trout Point Lodge Limited.
7
8       And at Paragraph 21:

9

10      "The Defendant denies that any
11  broadcast or broadcasts either
12  by way of television or
13  internet or otherwise made by
14  it with regard to Aaron
15  Broussard were understood by
16  their plain and ordinary
17  meaning or by way of innuendo
18  or otherwise to mean any of
19  the following with regards to
20  the Plaintiff Trout Point
21  Lodge Limited, the Plaintiff
22  Charles L. Leary and the
23  Plaintiff Vaughn J. Perret, or
24  any of them."
25

26      And I won't list all of them.

27

28      d)  That the Plaintiffs or any
29  of them were involved in or
30  connected with or the situs of
31  any conspiracy involving
32  politicians and contractors;
33  g) That the Plaintiffs or any
34  of them were somehow involved
35  in illegal, criminal and/or
36  unethical activities including
37  money laundering, political

1        (inaudible due loud noise…)
2        and kickbacks;
3        h) That the Plaintiffs or any
4        of them were involved in or
5        connected with any kickback
6        schemes, money laundering,
7        misuse of public monies,
8        fraud, general political
9        corruptions, unsavoury
10       characters and shady dealings;
11       i) That the Plaintiff, Trout
12       Point Lodge Limited was owned
13       by Aaron Broussard and was
14       illicitly rented to government
15       contractors and was the
16       subject of allegations and
17       investigations including by
18       the Louisiana Metropolitan
19       Crime Commission and the
20       United States Attorney.
21
22

23       Louisiana Media owns and operates WVUE which

24       is a Fox television affiliate. Charles Leary's

25       affidavit filed May 12, 2011 in support of this

26       motion attaches as Exhibit A comments and

27       publications from the blog Slabbedwordpress.com.

28       In that exhibit unslabbed refers to Val Bracy who

29       was the reporter in an investigative report

30       broadcast by WVUE Louisiana Media on Fox 8 News

31       in January 2010, the contents of which Trout

32       Point alleges are defamatory. Unslabbed's March

1        8, 2010 posting states:

2

3                    "(inaudible due to mumbling…)
4                    Confirmed there was a new
5                    interview by Bracy with
6                    Theriault. (inaudible due to
7                    mumbling…) refused to go on
8                    camera, also FYI reliable
9                    sources say Fox 8 was sued
10                   recently by Trout Point Lodge.
11                   Apparently they see having any
12                   connection to Aaron Broussard
13                   as a negative. Odd that since
14                   Danny Abel et al, that would
15                   be the Spain connection across
16                   from the (inaudible due to
17                   mumbling…), the Costa Rican
18                   location, seemed to keen on
19                   having the crème de la crème
20                   of the political elite as
21                   investors in and around the
22                   prestigious
23                   property/properties. Odd also
24                   that a resort would object to
25                   any publicity for their
26                   business. Must be nice to be
27                   so special and elite that only
28                   certain people are okay to be
29                   associated with their
30                   endeavours."

31

32        I'll just skip the next paragraph.

33

34                   "So we're back to why would
35                   Trout Point suddenly lash out
36                   at Val Bracy and Fox 8. After
37                   suing the Times Picayune News

```
 1              and    effectively    silencing
 2              them, is this an attempt to do
 3              the same to Fox 8?  Is Bracy
 4              hitting too many nerves?  It
 5              seems strange to have waited
 6              so long to sue in Canada over
 7              a story that is old news.  So
 8              maybe they want some more
 9              publicity for their joints.
10              Hope they are ready for the
11              depositions and requests for
12              omissions coming their way.
13              FYI Trout Point, if I were
14              you, I would review Aaron's
15              interviews and the Fox 8 new
16              account before I racked more
17              in legal fees suing the wrong
18              parties.    Frivolous    is
19              frivolous and this is a silly
20              lawsuit.  IMHO."
21
```

On March 8th of 2010 the notice of action had
not been filed against Louisiana Media.  Only a
notice of intended action had been filed on
Louisiana Media.  The comments about suing Fox 8,
the Defendant's station and waiting so long to
sue in Canada and the lawsuit being frivolous are
indicative of an insider connection or
association with Louisiana Media.  Also in
Exhibit A in a blog posted February 16, 2011,
Telemachus connects Broussard with Trout Point

<u>DECISION BY THE COURT</u>

1   Lodge, stating well this might be one thing the

2   ethics Board is looking at.

3

4           "You can take a fishing pole
5           and catch a trout in your
6           front yard."

7

8           "Ed Muniz recalled Aaron
9           Broussard telling me in 1998
10          about a real estate investment
11          opportunity in Nova Scotia
12          Canada. The subject, Muniz
13          said, was Trout Point Lodge, a
14          four hour drive from Halifax
15          and deep in the pristine
16          forests of a provincially-
17          protected wilderness area.
18          Both men were serving on the
19          Jefferson Parish Council at
20          the time and Muniz said
21          Broussard asked him to buy
22          into the development 25,000
23          for a two percent stake. The
24          Metropolitan Crime Commission
25          on Wednesday asked for a State
26          Ethics Investigation into
27          whether Broussard had been
28          renting the Nova Scotia
29          vacation property to Jefferson
30          Parish contractors. Two days
31          later Broussard resigned as
32          Parish President citing
33          distractions of the widening
34          federal criminal investigation
35          into his administration. The
36          investigation began with
37          subpoenas relating to the
38          private insurance businesses

1       of Broussard's former chief
2       administrator, Tim Whitmer,
3       who resigned Monday. Federal
4       authorities also have
5       subpoenaed records regarding
6       River Birch Inc. which owns a
7       Waggaman landfill consigned a
8       deal in June to be the sole
9       garbage dump for Jefferson
10      Parish for the next 25 years.
11      Charles Leary, Managing
12      Director of the Lodge, emailed
13      the Times Picayune on Friday
14      saying Broussard does not, and
15      has never had any ownership or
16      management involvement with
17      Trout Point Lodge Limited.
18      The message went on to say
19      Broussard owns a vacation home
20      on the same road. But the
21      familiar names of some of the
22      investors shed some light on
23      the political lattice of
24      Jefferson Parish. They
25      include Bennett Powell who
26      said last week he bought a
27      small share in the lodge
28      similar to the one described
29      by Muniz and Larry Stoulig who
30      is listed as a partner in
31      Broussard's management company
32      who had said other investors
33      bought him out five years ago.
34      The late Marie Krantz, former
35      owner of fairgrounds,
36      Jefferson Downs race tracks
37      and Nick Baroni, Kenner City
38      Council member while Broussard
39      was the Mayor there, also
40      invested in developing
41      property near the lodge,
42      Baroni said. Baroni and

1       Stoulig have served in federal
2       prison on fraud charges in
3       separate incidents unrelated
4       to the Nova Scotia
5       investments. The link between
6       Nova Scotia and Southern
7       Louisiana outside of the
8       historical link of Acadian
9       culture seems to have begun
10      with Daniel Abel, a lawyer who
11      made a name for himself in
12      1999 working with the late
13      attorney Wendell Gauthier to
14      sue gun manufacturers for
15      violence in New Orleans.
16      Muniz and Abel served as
17      Broussard's legislative aid
18      when he was on the Jefferson
19      Parish Council. But Louisiana
20      Secretary of State records and
21      documents provided by Muniz
22      show that in 1997 Abel,
23      Charles Leary and Vaughn
24      Perret formed a Louisiana
25      corporation called La Ferme
26      Limited and its Canadian
27      counterpart, La Ferme
28      L'Acadie. The three soon
29      opened the Trout Point Lodge,
30      according to a 2001 travel
31      story in the Times Picayune.
32      After investing in the lodge
33      Muniz said he turned down a
34      second offer from Broussard in
35      1999 to buy nearby property.
36      Having yet to see a financial
37      report about the lodge, Muniz
38      said he demurred on the new
39      opportunity."
40
41      Telemachus in a blog posted February 25,

1      2011, appears to view the Val Bracy interview

2      erred by WVUE Louisiana Media as revealing

3      Broussard's wrongdoings in relation to his Nova

4      Scotia property or properties, stating:

5

6                   "On January 7, 2010 the
7                   campaign of former Parish
8                   President Aaron Broussard paid
9                   a Bobby Curvan $1,800 a plate
10                  his next fundraiser. Well
11                  that sounds like the makings
12                  of a great party. The
13                  following day actually saw
14                  Broussard abruptly resign from
15                  office in disgrace."
16

17      And there's a reference to a website.

18

19                   "That's pretty sudden, isn't
20                  it? Aaron Broussard
21                  interviewed by Val Bracy and
22                  video January 6, 2010, WVUE
23                  Fox 8. Pretty sure it was the
24                  day before when the Rocky
25                  Marciano of New Orleans TV
26                  real journalism pounded,
27                  punched and (inaudible due to
28                  mumbling…) away at a
29                  bewildered and whimpering
30                  Aaron Broussard about his Nova
31                  Scotia property (properties).
32                  As of, and up to that day and
33                  the day after it appeared that
34                  resignation was not something

1                        he   had   at   least   communicated
2                        in   any   way   to   anyone   in   his
3                        campaign."
4

5           Telemachus   in   a   blog   posted   February   21,

6      2011   connects   Broussard   with   investment   in

7      properties   at   Trout   Point   Lodge,   stating:

8

9                        "According   to   the   7/22/01   TP,
10                       Peter   Butler   was   an   investor
11                       in   at   least   one   of   the
12                       unidentified   properties   at
13                       Trout   Point   Lodge,   Nova   Scotia
14                       as   were   Wendell   Gauthier   and
15                       Aaron   Broussard.   Were   you
16                       and/or   was   anyone   named,
17                       (inaudible   due   to   mumbling…)
18                       Sneed,   Ward,   Butler   and/or   any
19                       JP   public   official,   aid   or
20                       employee   or   relatives   invested
21                       or   themselves   in   any   way
22                       investors   in   any   of   the   below
23                       entities   and   if   so,   in   what   in
24                       what     amounts,     which
25                       percentages   and   which   entities
26                       and   for   what   periods?"
27

28          And   there's   a   list   and   that   list   includes

29     Trout   Point   Lodge   Limited   and   Trout   Point   Lodge.

30     I   pause   to   note   that   Soft81_1   controls   what   is

31     posted   on   those   blogs.

32          At   Paragraph   9   of   his   affidavit   of   May   12,

_____

1    2011, Charles Leary states, in relation to

2    Soft81_1 — in researching the story — sorry:

3

4              "Soft81_1 published the
5              following            on
6              Slab.wordpress.com on April
7              26, 2011 in a post entitled,
8              'Slab takes a look at the
9              Trout Point business venture.
10             Let's start at the end and
11             work back.'"
12

13   And then there's a further reference to the

14   quote that's found in that blog and it states:

15

16             "In researching the story,
17             what I have found is a pattern
18             of Leary, Abel and the girls
19             being first-class bitches and
20             I think it is safe to assume,
21             based upon the retractions
22             they made, the Times Picayune
23             and its corporate parent their
24             bitch in this fiasco because
25             Rainnie was onto something
26             big, albeit a bit dated in the
27             fleecing of several local
28             individuals that were marketed
29             and sold ownership in the
30             Trout Point by Aaron Broussard
31             who had close personal ties
32             and business ties to Abel,
33             Leary and the girls."
34

1          At Paragraph 15, and Charles Leary states —

2     sorry this quotation that I just quoted, sorry —

3     implicates Trout Point and its principals in Mr.

4     Broussard's alleged wrongdoings.   At Paragraph 15

5     Charles Leary states:

6

7                    "The publisher of the Slabbed
8                    blog also posted material
9                    stating that there is a
10                   mystery and grandiose cover-up
11                   underway involving me, my
12                   business associates, Aaron
13                   Broussard and the Louisiana
14                   News Media."
15

16         Charles Leary provided oral evidence that on

17    April 26, 2011 Soft81 posted the following:

18

19                   "I think by now even our most
20                   casual readers know our
21                   successor website, Slabbed.org
22                   was knocked offline courtesy
23                   of the Times Picayune's
24                   corporate parent, Advanced
25                   Publications and this started
26                   a chain of events that
27                   resulted in Slab temporarily
28                   being moved back to Wordpress.
29                   I'd submit this was a
30                   miscalculation of gargantuan
31                   proportions for several
32                   reasons which will become

_____

1                clear as I roll out this
2                series of posts on Aaron
3                Broussard's connections to
4                Trout Point Lodge and its
5                purported owners, Charles
6                Leary, Danny Abel and Vaughn
7                Perret. I say purported
8                because others were sold two
9                percent ownership interest in
10              the Trout Point development as
11              touted by Broussard and those
12              folks are the bag holders in
13              this deal."
14

15      That's the end of that quote. These are

16  further clear comments that Broussard is

17  connected to Trout Point Lodge and that its

18  principals are involved in the corruption as "bag

19  holders." In these and other postings the

20  anonymous users bloggers appear generally to be

21  denouncing the retraction actions of Times

22  Picayune while applauding Val Bracy, the reporter

23  in the investigative report broadcast by

24  Louisiana Media and writing comments that clearly

25  connect Trout Point and its principals with Mr.

26  Broussard and his alleged wrongdoings. That

27  tends to show that they interpret the Louisiana

28  Media broadcast as supporting their comments.

1    They are anonymous.  It is not known for sure
2    whether they are biased against Trout Point for
3    any reason and have set themselves to deducing
4    some unusual meaning from Louisiana Media's
5    broadcast or they are part of a reasonable
6    audience of ordinary intelligence, even though
7    the content of their blogs does suggest some
8    bias.  If they are part of a reasonable audience
9    of average intelligence, that tends to show that
10   Louisiana Media's audience did not understand
11   this broadcast as alleged in Louisiana Media's
12   amended statement of defence at Paragraphs 16 and
13   21.  If they are biased for any reason it will
14   tend to show that they have set themselves to
15   deducing an unusual meaning from the broadcast
16   and reached a slanted interpretation of Louisiana
17   Media's broadcast that is different from what
18   WVUE Louisiana Media's unbiased and reasonable
19   audience of ordinary intelligence would
20   understand.  The existence or non-existence of
21   bias in the anonymous bloggers' users may be

1    determined if their identity is revealed.

2    Therefore, in my view, considering the principles

3    of liberal disclosure, their identity is relevant

4    to interpreting whether the content that

5    Louisiana Media's broadcast was defamatory.

6          Paragraph 7 of Charles Leary's affidavit of

7    May 18, 2011 refers to a Slabbed posting entitled

8    "Whitmergate" which includes a transcription of

9    Val Bracy's interview with Aaron Broussard on

10   January 6, 2011. According to Dr. Leary, it is

11   an accurate transcription and is in accord with

12   the video provided by WVUE but contains sections

13   not appearing in the video. The identity of the

14   publisher of the blog will help determine whether

15   the posted transcript is authentic or not. The

16   more credible the publisher, the more likely it

17   is to be authentic. In assessing whether a

18   broadcast publication was defamatory it is

19   important to determine what the full and complete

20   content was. The identity of the publisher, as

21   it relates to authenticity, is relevant to that

1    determination.

2          Trout Point has pleaded injurious falsehood

3    and   intentional   interference   with   economic

4    relations.   Consequently  the   intention   and

5    knowledge  of  falsehood  are  issues  to  be

6    determined.  As noted above, the contents of some

7    of   the   blogging   is   indicative   of   a   close   or

8    insider connection between the anonymous blogger

9    and  Louisiana  Media.   The  bloggers  are  clearly

10   implicating  Trout  Point  and  its  principals  in

11   Broussard's wrongdoings in stating Broussard was

12   involved   in   Trout   Point   Lodge.   That   is

13   continuing more than one year after the January

14   2010 broadcasts.   That  those  bloggers  are  from

15   within  or  closely  connected  to  Louisiana  Media,

16   it   would   tend   to   make   it   more   likely   that

17   Louisiana   Media   intentionally   created   the

18   impression  of  a  direct  connection  between  Trout

19   Point  and  Aaron  Broussard  as  well  as  his  alleged

20   wrongdoings.  Thus  the  identity  of  the  bloggers

21   is  relevant  to  intentionality.

1          Trout  Point  advised  the  court  that  it
2    intends  to  add  the  anonymous  bloggers  as  parties
3    if  they  have  a  sufficiently  close  connection  to
4    Louisiana  Media  or  to  sue  them  separately  if  they
5    do  not.    They  are  making  the  motion  within  the
6    current  action,  therefore,  the  motion  must  be
7    considered  on  the  basis  that  there  is  an
8    intention  to  add  them  as  parties.    Trout  Point
9    has  no  way  of  knowing  how  close  the  connection  is
10   even  though  there  are  indicia  of  a  close
11   connection.    Trout  Point  recognizes  that  if  it
12   were  to  turn  out  that  the  connection  was  not
13   sufficiently  close  to  warrant  joining  the
14   bloggers  as  parties,  the  implied  undertaking  rule
15   outlined  in  Civil  Procedure  Rule  14.03  would
16   require  it  to  seek  the  court's  permission  to  use
17   the  information  in  question  in  connection  with
18   the  matter  outside  of  this  proceeding.
19         The  anonymity  of  the  bloggers  has  left  Trout
20   Point  in  the  position  where  it  is  making  the
21   motion  based  on  what  appears  to  it  to  be  the  most

<u>DECISION BY THE COURT</u>

1  likely result, i.e. that the bloggers will be
2  added as parties. Either way it is intended that
3  they will become Defendants in an action against
4  them by Trout Point. Consequently in my view the
5  test to determine whether the bloggers' identity
6  is to be disclosed for that purpose is the same
7  whether it is within an existing proceeding or in
8  relation to a separate proposed proceeding. The
9  relevant test in a defamation action was outlined
10  in Warman and Wilkins-Fournier, [2010] O.N.S.C.
11  2126 and approved by the Supreme Court of Nova
12  Scotia in AB and Bragg Communications Inc.,
13  [2010] N.S.S.C. 215. Under that test the
14  application must establish the following:
15
16      1.   A prima facie case;
17      2.   Involvement of the third party from
18           whom production is sought;
19      3.   That the third party is the only
20           practical source of the information;
21      4.   That the third party will be reasonably

1                   compensated   for   expenses   and   legal

2                   costs of compliance;   and

3         5.    The   public   interest   in   disclosure

4                   outweighs   the   legitimate   privacy

5                   interests and interests and freedom of

6                   expression.

7

8              I will deal with each of those in turn.

9    First whether a prima facie case has been

10   established.   In my view the words in the blogs

11   would tend to lower Trout Point's reputation in

12   the eyes of a reasonable person and do refer to

13   Trout Point.   The blogs are posted on a publicly-

14   accessible website.   They were accessed freely by

15   Charles Leary.   The most likely inference is that

16   they were communicated to persons other than

17   Trout Point.    As such, Trout Point has

18   established a prima facie case that they were

19   published and were defamatory.

20

21             2.   Regarding involvement of the third party

1    from whom production is sought, Automattic Inc.

2    is involved in the sense that it hosts and

3    publishes the blogging website on which the blogs

4    were posted even though it is not implicated in

5    the alleged wrongful acts.

6

7         3.   The third party is the only practical

8    source of information.  Automattic has a policy

9    of generally producing information identifying

10   anonymous bloggers on its website if directed to

11   do so by court order including a court order

12   originating from outside the US.  It appears that

13   in the circumstances to be the only avenue to

14   obtain the information sought.

15

16        4.   The third party will be reasonably

17   compensated for expenses and legal costs of

18   compliance.  The information requested ought to

19   be easily accessible. For the most part it ought

20   to have been obtained when the bloggers signed

21   onto the website.  Automattic's policy indicates

1       it    contemplates    readily    providing    such

2       information when directed to do so by any court.

3       Given that we are talking about a website, more

4       likely than not all the information is in

5       electronic form and can simply be emailed to

6       Trout Point at essentially no cost to Automattic.

7       Further, its standard procedure is to forward

8       court orders to the bloggers themselves in case

9       they want to quash the legal process. Therefore

10      Automattic itself would not incur any legal

11      costs.

12

13          5.    The    public    interest    in    disclosure

14      outweighs the legitimate privacy interest and

15      interests in freedom of expression. Automattic's

16      policy is to generally provide information it is

17      directed to provide by court order including

18      international orders. Examples include requests

19      for information about anonymous bloggers sued for

20      defamation. In addition the privacy policy

21      states:

<u>DECISION BY THE COURT</u>

1

> "If you are a blogger looking
> for a completely anonymous
> blogging service or if the
> fact that the above data could
> be revealed in court
> proceedings, et cetera bothers
> you, please do not use
> wordprocess.com (sic) for your
> blogging."

When a blogger signs up he or she agrees to the host's privacy policy. Therefore there is a diminished expectation of privacy where, as in the case at hand, the anonymous blogger is posting information that is prima facie defamatory. And in support of that I refer to York University and Bell Canada Enterprises, [2009] O.J. 3689 and that is a decision of the Ontario Superior Court of Justice. Generally the public interest in not allowing individuals to distribute defamatory materials under the cloak of anonymity will outweigh the public interest in protecting such a person's right to privacy and freedom of expression. That in principle was the conclusion that was reached in Bragg, Mosher and

1       York University v. Bell Canada Enterprises.

2           In the case at hand the content and tone of

3       the blogs is aggressive.  There is no indication

4       that the bloggers are fearful of the Plaintiff or

5       of other targets of their comments.  There is no

6       indication that their identity should be

7       protected for safety reasons.  In addition in the

8       case at hand, the blogs contain comments based on

9       the actual or perceived sexual orientation of the

10      intended targets.  Those comments are clearly

11      meant to be derogatory and insulting.  I will not

12      reproduce them here.  It is the type of

13      expression that engenders harmful results such as

14      discrimination and hatred.  It is not the type of

15      free expression that deserves protection and

16      fostering.

17          Considering these factors, I am of the view

18      that the public interest and disclosure outweighs

19      the legitimate privacy interest and interests and

20      freedom of expression of the anonymous bloggers.

21      And given this conclusion and that I have found

1    the requested information to be relevant, it is

2    appropriate that I exercise my discretion under

3    Civil Procedure Rule 14.12(1) to order the third

4    party production requested.  I therefore grant

5    the Plaintiff's motion.  I will initial the order

6    and have it issued and it should be available for

7    pick up fairly shortly.  Clerk, do you know if

8    the Prothonotary is in today?

9         COURT CLERK:   Yes, she is.

10        THE COURT:  She's in today so that should be

11   available for pick up later today, okay?  Now I'm

12   assuming that you're not making any motion for

13   costs where the Defendants did not oppose the

14   motion.   They simply raised the issue of

15   relevance.  Am I correct in that assumption Dr.

16   Leary?

17        DR. LEARY:     That's right, My Lord.

18        THE COURT:  All right, thank you.

19        UNIDENTIFIED MALE VOICE:  My   Lord,   Robert

20   (inaudible due to mumbling…)  Just one point

21   arising out of this.  When the order is served

1    and the materials are produced to the Plaintiff

2    it's understood that they will provide the

3    materials for the Defendant (inaudible due to

4    mumbling…)

5            THE COURT:   Yeah, so from my perception it

6    should be automatic because it's obviously

7    something that's relevant to the proceeding and

8    that they have in their possession.

9            UNIDENTIFIED MALE VOICE:   Thank you My Lord.

10           THE COURT:   Okay, thank you everyone.   We

11   can close the court, clerk.

12           DR. LEARY:    Thank you My Lord.

13           THE COURT:   Thank you.

14

15           [ADJOURNED AT 11:40 A.M.]

16

CERTIFICATE OF COURT TRANSCRIBER

I, Rita Newton, Court Transcriber, hereby certify that I have transcribed the foregoing and that it is a true and accurate transcript of a decision given in the matter of Trout Point Lodge Limited v. Louisiana Media Company, LLC, YAR 328248 taken by way of electronic recording in Halifax, Nova Scotia on May 30, 2011.

_____

Rita Newton, Certificate No. 2006-56

CERTIFIED COURT TRANSCRIBER,

PROVINCE OF NOVA SCOTIA


Halifax, Nova Scotia

July 7, 2011