**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **DANIEL G. ABEL** | * | **CASE NO. 13-cv-00088** |
| **VERSUS** | * | **JUDGE SUSIE MORGAN** |
| **DOUGLAS K. HANDSHOE AND ANNE-MARIE VANDENWEGHE A/K/A BOUDREAUX & ABC INSURANCE CO.** | * * | **MAG. JUDGE ALMA CHASEZ** |

**REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE**

MAY IT PLEASE THE COURT:

Defendant, Douglas K. Handshoe, through undersigned counsel, respectfully submits this Reply in Support of his Article 971 Special Motion to Strike. Rec. Doc. 23. Abel's Opposition, Rec. Doc. 34, replete with spurious claims and irrelevant arguments, does nothing to further his cause, and Handshoe's Motion should, therefore, be granted.

**Introduction**

This case is about Daniel Abel's claim of defamation by Handshoe and his blog, *Slabbed*. This case is not about Charles Leary, Vaughn Perret, the River Birch scandal, Fred Heebe, Sal Perricone, Jan Mann, or rogue FBI agents who may or may not be discussing their cases with Plaintiff. Anne Marie Vandenweghe is not a co-publisher or even an author of *Slabbed* and she also has nothing to do with Abel's claims against Handshoe and *Slabbed*.[1] This case does involve Aaron Broussard, as he was a known associate and partner of Abel's.[2] Plaintiff may

---

[1] It is unclear if Plaintiff even accuses Handshoe of defamation due to Vandenweghe's posts, but out of an abundance of caution, Handshoe avers that he cannot be held responsible for the postings of a commenter on his blog per the Communications Decency Act §230.

[2] Abel can argue that the Rules of Professional Conduct define law partnerships, however, to the reasonable observer, signing ones name and referencing "ATTORNEYS AT LAW" imputes some type of business relationship, as does the sharing of office space.

provide textual analysis, affidavits of his own expertise, claims of "sockpuppetry" and a grand vendetta of conspiracy; but in the end, this case is only about Abel's defamation claims against a blog.

Abel has not shown that he needs discovery in order to defeat Handshoe's Motion; nor has he shown he can defeat the Motion if he is given leave to conduct discovery. In any event, discovery will not help Abel's case, since it is deficient as a matter of law. Whether statements are verifiable fact or opinion, and whether actual malice, defined not as intent but knowledge or reckless disregard for the truth by the U.S. Supreme Court, is a legal determination that may be made by the Court at this stage.[3] There are no disputed issues of fact. Handshoe's Motion will succeed based on the most important requirement of American libel law: that defamatory comments be *false statements of fact.*[4] There is no evidence Abel could uncover that will prove Handshoe's statements false, and this Court is well equipped to address the issue now, without further delay.

## Reply to Abel's Opposition

### 1. No Judge Applying American Law Has Ever Found Handshoe or *Slabbed* Liable For Defamation

Abel makes numerous misrepresentations in his Opposition; however, one thing is crystal clear: no judge applying American law has **ever** found Handshoe defamed or liable for defamation. As briefed in Handshoe's Motion, a defamatory statement under American libel law requires: **(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher;**

[3] The "distinction between opinion and fact is a matter of law" for the Court to decide. *Ollman v. Evans*, 750 F.2d 970, 979 (D.C. Cir. 1984) (*En Banc*), *writ denied*, 471 U.S. 1127 (1985).

[4] Abel is incorrect that the law of Louisiana presumes falsity for words that are defamatory *per se*.

**and (4) resulting injury.**[5] In addition, the U.S. Supreme Court has required that the plaintiff bear the burden of showing falsity, as well as fault, before recovering damages.[6] The fact that a Canadian judge, applying Canadian libel law, which does not require falsity or fault, allowed Abel's business partners to take a default judgment against him is not an imputation of "guilt" under American libel law. In fact, U.S. District Judge Louis Guirola, Jr. found that the libel judgment obtained by default in Canada could not be enforced in Mississippi because "Plaintiffs have not demonstrated that either (A) that the Supreme Court of Nova Scotia provided the level of protection for freedom of speech in this case as an American court, or (B) that Handshoe would have been found liable for defamation in a court in this state."[7] Judge Guirola noted that Handshoe did not defend the claims in Canada, and the Canadian Court did not evaluate the truth or falsity of Handshoe's statements, focusing instead on damages.[8] As such, Judge Guirola declined to "enforce a judgment in an action that, if brought in this Court, would depend upon the plaintiffs' proof that the statements at issue are false."[9]

Finally, *Slabbed* is clearly a media outlet. It is regularly quoted and cited in local and national media and on Web sites that recognize the importance of citizen journalism and commentary.[10] New Orleans' daily newspaper itself has now become a primarily online publication. The record, briefs, and common sense support the contention that *Slabbed* is a media outlet. In 2012, *Slabbed* received more than 700,000 page views with more than 400,000 unique visitors. With the extensive role of online reporting and commentary Web sites that

---

5 *Kennedy v. Sheriff of E. Baton Rouge*, 935 So.2d 669, 674 (La. 2006); *See* Rec. Doc. 23-1 Sec. III.

6 *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986)

7 Rec. Doc. 23-3, p. 12.

8 *Id.* at 13.

9 *Id.* at 16.

10 *See, e.g.*, http://www.sunherald.com/2010/06/25/2703632/theyre-on-a-roll-at-slabbed.html; http://www.uphelp.org/library/resources (listing *Slabbed* as an insurance blog); *See* Rec. Doc. 23 at Sec. I.

cover Louisiana, to say otherwise would be counter-intuitive and lead to absurd policy.

**2. The Louisiana Supreme Court Has Explicitly Held That Abel *Must* Prove Statements False in Order to Succeed in a Defamation Action**

In *Kennedy v. Sheriff of East Baton Rouge Parish*, the Louisiana Supreme Court expanded and applied the rationale of the U.S. Supreme Court's decision in *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986), to all Louisiana libel cases. *Hepps* held that the First Amendment requires placement of the burden of proving falsity, as well as fault, on the plaintiff in a defamation action by a private individual against a media defendant on a matter of public concern.[11] Therefore, Abel's assertion that simply claiming something is defamatory *per se* is incorrect. *Hepps* clearly held that a private individual must prove fault and falsity even though he is not a public figure.[12] *Kennedy* expanded that doctrine from media to non-media defendants alike.[13] In this case, Abel must prove falsity by a preponderance of the evidence under Louisiana law, and he cannot do so.[14]

**3. Abel Pleads For Statements to be Read in Context and Handshoe Agrees**

Both Abel and Handshoe agree that the statements at issue should be read in context. This includes how a reasonable reader would read and interpret Handshoe's news commentary. Whether something is truly defamatory requires an analysis of whether or not the reader "could have reasonably understood the communication, taken in context, to have been intended in a defamatory sense."[15] Handshoe's readers certainly understood the context of his commentary.

In this matter, the most important context is temporal, *i.e.*, whether the "implied fact" in

---

[11] *Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 676 (La. 2006) (citing *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986).).

[12] *Hepps*, 475 U.S. at 769.

[13] *Kennedy*, 935 So.2d at 678.

[14] *Rachal v. Dep't of Wildlife & Fisheries,* 918 So.2d 570, 574-75 (La. App. 3rd Cir. 2005).

[15] *Sassone v. Elder*, 626 So.2d 845, 850 (La. 1993).

the opinion is objectively verifiable at the time of publication. In addition, "different types of writing have … widely varying social conventions which signal to the reader the likelihood of a statement's being either fact or opinion."[16] These quotes from the *Ollman* case fit this case like a glove.

In *Ollman,* the D.C. Circuit said that statements of pure opinion are entitled to an absolute privilege from defamation actions under the First Amendment. The Court noted that "courts should analyze the totality of the circumstances in which the statements are made to decide whether they merit the absolute First Amendment protection enjoyed by opinion."[17] To determine the totality of the circumstances, the Court created a four-part balancing test:

> "**First**, we will analyze the common usage or meaning of the specific language of the challenged statement itself … Our analysis of the specific language under scrutiny will be aimed at determining whether the statement has a precise core of meaning for which a consensus of understanding exists or, conversely, whether the statement is indefinite and ambiguous. Readers are, in our judgment, considerably less likely to infer facts from an indefinite or ambiguous statement than one with a commonly understood meaning. **Second**, we will consider the statement's verifiability—is the statement capable of being objectively characterized as true or false? As a statement lacks a plausible method of verification, a reasonable reader will not believe that the statement has specific factual content. And, in the setting of litigation, the trier of fact obliged in a defamation action to assess the truth of an unverifiable statement will have considerable difficulty returning a verdict based upon anything but speculation. **Third**, moving from the challenged language itself, we will consider the full context of the statement—the entire article or column, for example—inasmuch as other, unchallenged language surrounding the allegedly defamatory statement will influence the average reader's readiness to infer that a particular statement has factual content. **Finally**, we will consider the broader context or setting in which the statement appears. Different types of writing have, as we shall more fully see, widely varying social conventions which signal to the reader the likelihood of a statement's being either fact or opinion."[18]

Given the totality of the circumstances test enunciated by the D.C. Circuit in the *Ollman*

---

[16] *Ollman v. Evans,* 750 F.2d 970, 979 (D.C. Cir. 1984) (*En Banc*), *writ denied*, 471 U.S. 1127 (1985).

[17] *Id.*

[18] *Id.* (emphasis added and citations omitted).

case cited by Abel, many, if not all of the statements complained of are protected under the First Amendment's opinion privilege. Given the common usage, the context and verifiability of the words complained of, none of the statements can be said to shed the "absolute First Amendment privilege for opinion." At the time of each publication Handshoe did not know what he knows now—he made conjecture and reasonable conclusions based on the evidence presented. He communicated his ideas in the dynamic and satirical way for which he is known by his devoted readers. In fact, Handshoe may never know whether some of the things he concluded are verifiably true (or false) with the conclusion of the Aaron Broussard trial and the River Birch scandal.

**4. The Case Law Cited in Abel's Brief Supports Handshoe's Argument Regarding the Single Publication Rule.**

Abel's brief cites several cases that actually support Handshoe's position regarding republication and the single publication rule, and indeed appears to invite the Court to apply the single publication rule to the postings that have clearly prescribed, as Handshoe has prayed for in his Art. 971 motion.[19] The single publication rule prevents publishers for being sued every time a copy is made, or, as the theory is applied here, a blog post is accessed on a new computer. The law in this area is developing, but every Court which has addressed this issue has stated that mere publication and availability of an Internet posting invokes the single publication rule and the so-called prescription or statute of limitations clock begins to run upon publication.[20] Abel cannot produce a single opinion or even a secondary legal source which supports his conclusions that the articles are not prescribed. The postings that were published before January 16, 2012,

[19] Rec. Doc. 23-1 Sec. III(C)(3), p. 25.

[20] *Shepard v. TheHuffingtonPost.com, Inc.*, 2012 WL 5584615, *2 (D. Minn. 2012) (citing In re *Philadelphia Newspapers, LLC*, 690 F.3d 161, 174 (3d Cir.2012)); *Oja v. Army Corps of Eng'rs*, 440 F.3d 1122, 1133 (9th Cir.2006); *Van Buskirk v. New York Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003); *Mitan v. Davis*, 243 F.Supp.2d 719, 724 (W.D.Ky.2003); *Churchill v. State*, 876 A.2d 311, 316 (N.J. 2005); *McCandliss v. Cox Enters.*, 593 S.E.2d 856, 858 (Ga. 2004); *Traditional Cat Ass'n v. Gilbreath*, 13 Cal.Rptr.3d 353, 361-62 (Cal. 2004).

including those listed in Paragraphs 66 through 92, have prescribed and should be summarily dismissed by this Honorable Court.

**5. Abel Did Not Satisfy His Burden in His Opposition**

Under the Art. 971 jurisprudence, dismissal of Abel's claims is warranted if the libel plaintiff fails to produce sufficient evidence for even a single element of a claim.[21] "This requires more than that which is necessary to survive a normal motion to dismiss, as a defamation plaintiff must produce *evidence* of a sufficient quality and quantity to demonstrate that he will be able to meet his burden of proof at trial."[22] Defendant finally notes that Abel did not put forth a single shred of evidence to prove that the statements complained of were false. He did not put forth a single case that rebuts the clear law in Louisiana that if a statement is pure opinion it must be false and published with actual malice to be actionable. Actual malice must be proven by clear and convincing evidence and show that the defendant in fact entertained serious doubts as to the truth of his publication or published it with a "high degree of awareness of probable falsity."[23]

Abel has no assertions or evidence that Handshoe was reckless in his publication of what he claims are false facts. He has no assertion that Handshoe knew certain "facts" were not true. That is because Handshoe could not have acted with actual malice given the context. As noted above, and briefed extensively, whether or not these statements can be proven true or false, or are statements of satire and/or hyperbole, is likely the most important issue before the Court at this juncture. Abel simply cannot prove that he is not a lawyer who owes his career to Wendell

---

[21] *See, e.g., Darden v. Smith*, 879 So.2d 390, 292 (La. App. 3rd Cir. 2004) (plaintiff did not put forth evidence of malice).

[22] *Henry v. Lake Charles American Press, L.L.C.*, 566 F.3d 164, 181 (5th Cir. 2009) (quoting *Estiverne v. Times-Picayune, L.L.C.*, 950 So.2d 858, 860 (La. App. 4th Cir. 2006)).

[23] *Landry v. Robertson Advertising Service, Inc.*, 660 So.2d 194, 198 (La. App. 4 Cir. 1995); *Tarpley v. Colfax Chronicle*, 650 So.2d 738, 740 (La. 1995).

Gauthier, or that a reasonable person would believe that he was not connected to Aaron Broussard, or that he was having money trouble when sued on an Open Account, or the litany of other statements of which Abel complains. Furthermore, Abel cannot show that they are actually injurious and published with the requisite fault requirements under Louisiana libel law.[24]

**Conclusion**

For all the reasons spelled out above and in his originally filed Art. 971 Special Motion to Strike, Handshoe avers that Art. 971(D) discovery is not necessary at this time. Handshoe also prays that his Art. 971 Special Motion to Strike be granted, that the Plaintiff's petition and claims against him be dismissed and that he be awarded attorneys' fees and costs as provided by the statute.

Respectfully submitted:

BALDWIN HASPEL BURKE & MAYER, L.L.C.

s/ Brodie Glenn
PAUL N. VANCE - Bar #13007
pvance@bhbmlaw.com
SCOTT L. STERNBERG - Bar #33390
ssternberg@bhbmlaw.com
BRODIE G. GLENN – Bar #33152
bglenn@bhbmlaw.com
3600 Energy Centre
1100 Poydras Street
New Orleans, LA 70163
Telephone: (504) 569-2900
Fax: (504) 569-2099
*Counsel for Defendant, Douglas K. Handshoe*

[24] *See* Rec. Doc. 23-1, Sec. III.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of April, 2013, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

s/ Brodie G. Glenn