YAR 1 SC 110520
YAR 328248

## IN THE SUPREME COURT OF NOVA SCOTIA

BETWEEN:

TROUT POINT LODGE LIMITED

APPLICANT

– and –

LOUISIANA MEDIA COMPANY, LLC

RESPONDENT

_____

DECISION

_____


| | |
|---|---|
| HEARD BEFORE: | The Honourable Justice Pierre Léon Muise |
| COUNSEL: | Dr. Charles Leary Self-Represented as Agent and Officer of Trout Point Lodge Limited |
| PLACE: | Yarmouth JC1, Yarmouth, N.S. |
| DATE HEARD: | May 30, 2011 |

<u>INDEX</u>
<u>TROUT POINT LODGE LIMITED V. LOUISIANA MEDIA LLC</u>
<u>MAY 30, 2011</u>

Decision by the Court ...............................3

1                    DECISION BY THE COURT
2

3          THE COURT:      And Sheriff, you can open the

4          door to the courtroom as well, okay. This is the

5          matter of Trout Point Lodge Limited and Louisiana

6          Media Company, LLC.   It is File Number YAR

7          328248.   There is a motion before the court by

8          Trout Point for an order requiring Automattic

9          Inc., "Automattic" spelled with two t's at the

10         end, to reveal the information regarding the

11         identity of some registered Wordpress.com users.

12         Automattic Inc. is a California corporation which

13         hosts a blogging website called Wordpress.com.

14         Wordpress.com in turn hosts a blog named Slabbed

15         with the URL Slabbed.wordpress.com.   Telemachus

16         and unslabbed are two registered users on

17         Slabbed.   Soft81_1 is the purported owner and

18         publisher of the blog.   As the entity in charge

19         of the blog, Soft81_1 controls what appears on

20         it.   All three maintain an anonymous identity.

21         Trout Point alleges that their blogs or postings

22         are prima facie defamatory and refers to the

<u>DECISION BY THE COURT</u>

1     publications of Louisiana Media.  And they appear

2     to be closely connected with Louisiana Media.

3     Trout Point asks that I order Automattic Inc. to

4     produce information revealing the identity of

5     these anonymous entities on the basis that they

6     will either be added as defendants in the within

7     action or added as defendants in a separate

8     action and are material witnesses in the within

9     action.  Automattic has no part in what appears

10     in the blogs.  It only provides the service.

11     This motion is made pursuant to Civil

12     Procedure Rule 14.12 which permits a judge to

13     order a third party to produce a relevant

14     document.  It is made within this action by Trout

15     Point against Louisiana Media.  It is not a pure

16     motion for production at a pre-commencement of

17     action stage as was the case in AB and Bragg

18     Communications Inc., [2010] N.S.S.C. 215 and in

19     Mosher and Coast Publishing Limited, [2010]

20     N.S.S.C. 153.  However the test is – the same

21     test is applicable to determining whether

1    production of anonymous bloggers' identifying

2    information should be ordered so that it can be

3    added as parties to the within action.   That is

4    the same test as in Bragg and Mosher.

5         In the case at hand there is also a question

6    of whether the requested information is relevant

7    to an issue to be determined in the existing

8    action against Louisiana Media.   I will deal with

9    that first.   2009 Civil Procedure Rule 14.01

10   defines relevant and relevancy for the purposes

11   of production and disclosure as "having the same

12   meaning as a trial of an action or on the hearing

13   of an application."   This trial relevance test

14   replaced the old semblance of relevance test.

15   The Chambers Judge must now assume, as best as he

16   or she can, the vantage point of a trial or an

17   application judge and apply general evidence law.

18   The determination is based on the pleadings and

19   the evidence known to the judge.   However, there

20   should still be liberal disclosure of relevant

21   information and I refer to — in support of this I

1    refer  to  Brown  and  Cape  Breton  Regional

2    Municipality, [2011] N.S.C.A. 32, at Paragraphs 8

3    to  13.   The  onus  is  on  the  plaintiffs  to

4    establish  that  the  information  they  seek  is

5    relevant.  Justice LeBlanc in Murphy and Lawtons

6    Drug  Stores  Limited,  [2010]  N.S.S.C.  289  at

7    Paragraph 16 cited with approval at Paragraph 3.3

8    from the Law of Evidence, 5th Edition 2008, David

9    Paciocco  and  Lee  Stuesser  which  included  the

10   following comments:

11

12              "Evidence  is  relevant  where  it
13              has  some  tendency  as  a  matter
14              of  logic  and  human  experience
15              to  make  the  proposition  for
16              which  it  is  advanced  more
17              likely  than  that  proposition
18              would  be  in  the  absence  of
19              that evidence."
20

21       As  the  Supreme  Court  of  Canada  has  said  in

22   R. v. Arp, [1998] 3 S.C.R. 339:

23

24              "To  logically  relevant,  an
25              item  of  evidence  does  not  have
26              to  firmly  establish,  on  any
27              standard,  the  truth  or  falsity

1                    of the fact in issue. The
2                    evidence must simply tend to
3                    increase or diminish the
4                    possibility of the existence
5                    of a fact in issue. As a
6                    consequence there is no
7                    minimal probative value
8                    required for evidence to be
9                    relevant."
10

11       Trout Point's pleadings allege, among other

12   things, that Louisiana Media's reports and

13   broadcasts relating to the Aaron Broussard

14   investigation improperly included references to

15   Trout Point and photos of its lodge creating the

16   impression that Mr. Broussard was an owner of the

17   Trout Point Lodge and that Trout Point was

18   implicated in his alleged wrongdoings. Louisiana

19   Media's amended Statement of Defence states, at

20   Paragraph 16:

21

22                    "The Defendant states that as
23                    to the totality of the
24                    broadcast or broadcasts,
25                    whether by way of television,
26                    internet or otherwise,
27                    containing the January 6, 2010
28                    interview of Aaron Broussard,
29                    it was clearly communicated to
30                    and understood by its audience

1            that the Broussard properties
2            were not the Plaintiff, Trout
3            Point Lodge Limited's but
4            rather were properties
5            connected to the Plaintiff
6            Trout Point Lodge Limited.
7
8       And at Paragraph 21:
9
10           "The Defendant denies that any
11           broadcast or broadcasts either
12           by way of television or
13           internet or otherwise made by
14           it with regard to Aaron
15           Broussard were understood by
16           their plain and ordinary
17           meaning or by way of innuendo
18           or otherwise to mean any of
19           the following with regards to
20           the Plaintiff Trout Point
21           Lodge Limited, the Plaintiff
22           Charles L. Leary and the
23           Plaintiff Vaughn J. Perret, or
24           any of them."
25
26      And I won't list all of them.
27
28           d)  That the Plaintiffs or any
29           of them were involved in or
30           connected with or the situs of
31           any conspiracy involving
32           politicians and contractors;
33           g) That the Plaintiffs or any
34           of them were somehow involved
35           in illegal, criminal and/or
36           unethical activities including
37           money laundering, political

1      (inaudible due loud noise…)
2      and kickbacks;
3      h) That the Plaintiffs or any
4      of them were involved in or
5      connected with any kickback
6      schemes, money laundering,
7      misuse of public monies,
8      fraud, general political
9      corruptions, unsavoury
10     characters and shady dealings;
11     i) That the Plaintiff, Trout
12     Point Lodge Limited was owned
13     by Aaron Broussard and was
14     illicitly rented to government
15     contractors and was the
16     subject of allegations and
17     investigations including by
18     the Louisiana Metropolitan
19     Crime Commission and the
20     United States Attorney.
21
22

23     Louisiana Media owns and operates WVUE which

24     is a Fox television affiliate.  Charles Leary's

25     affidavit filed May 12, 2011 in support of this

26     motion attaches as Exhibit A comments and

27     publications from the blog Slabbedwordpress.com.

28     In that exhibit unslabbed refers to Val Bracy who

29     was the reporter in an investigative report

30     broadcast by WVUE Louisiana Media on Fox 8 News

31     in January 2010, the contents of which Trout

32     Point alleges are defamatory.  Unslabbed's March

1        8, 2010 posting states:

2

3                    "(inaudible due to mumbling…)
4                    Confirmed there was a new
5                    interview by Bracy with
6                    Theriault. (inaudible due to
7                    mumbling…) refused to go on
8                    camera, also FYI reliable
9                    sources say Fox 8 was sued
10                   recently by Trout Point Lodge.
11                   Apparently they see having any
12                   connection to Aaron Broussard
13                   as a negative. Odd that since
14                   Danny Abel et al, that would
15                   be the Spain connection across
16                   from the (inaudible due to
17                   mumbling…), the Costa Rican
18                   location, seemed to keen on
19                   having the crème de la crème
20                   of the political elite as
21                   investors in and around the
22                   prestigious
23                   property/properties. Odd also
24                   that a resort would object to
25                   any publicity for their
26                   business. Must be nice to be
27                   so special and elite that only
28                   certain people are okay to be
29                   associated with their
30                   endeavours."

31

32       I'll just skip the next paragraph.

33

34                   "So we're back to why would
35                   Trout Point suddenly lash out
36                   at Val Bracy and Fox 8. After
37                   suing the Times Picayune News

```
 1          and      effectively      silencing
 2          them, is this an attempt to do
 3          the same to Fox 8?  Is Bracy
 4          hitting too many nerves?  It
 5          seems strange to have waited
 6          so long to sue in Canada over
 7          a story that is old news.  So
 8          maybe they want some more
 9          publicity for their joints.
10          Hope they are ready for the
11          depositions and requests for
12          omissions coming their way.
13          FYI Trout Point, if I were
14          you, I would review Aaron's
15          interviews and the Fox 8 new
16          account before I racked more
17          in legal fees suing the wrong
18          parties.     Frivolous     is
19          frivolous and this is a silly
20          lawsuit.  IMHO."
21
```

22          On March 8th of 2010 the notice of action had

23     not been filed against Louisiana Media.  Only a

24     notice of intended action had been filed on

25     Louisiana Media.  The comments about suing Fox 8,

26     the Defendant's station and waiting so long to

27     sue in Canada and the lawsuit being frivolous are

28     indicative of an insider connection or

29     association with Louisiana Media.  Also in

30     Exhibit A in a blog posted February 16, 2011,

31     Telemachus connects Broussard with Trout Point

1        Lodge, stating well this might be one thing the

2        ethics Board is looking at.

3

4                        "You can take a fishing pole
5                        and catch a trout in your
6                        front yard."

7

8                        "Ed Muniz recalled Aaron
9                        Broussard telling me in 1998
10                       about a real estate investment
11                       opportunity in Nova Scotia
12                       Canada. The subject, Muniz
13                       said, was Trout Point Lodge, a
14                       four hour drive from Halifax
15                       and deep in the pristine
16                       forests of a provincially-
17                       protected wilderness area.
18                       Both men were serving on the
19                       Jefferson Parish Council at
20                       the time and Muniz said
21                       Broussard asked him to buy
22                       into the development 25,000
23                       for a two percent stake. The
24                       Metropolitan Crime Commission
25                       on Wednesday asked for a State
26                       Ethics Investigation into
27                       whether Broussard had been
28                       renting the Nova Scotia
29                       vacation property to Jefferson
30                       Parish contractors. Two days
31                       later Broussard resigned as
32                       Parish President citing
33                       distractions of the widening
34                       federal criminal investigation
35                       into his administration. The
36                       investigation began with
37                       subpoenas relating to the
38                       private insurance businesses

```
 1              of Broussard's former chief
 2              administrator, Tim Whitmer,
 3              who resigned Monday. Federal
 4              authorities also have
 5              subpoenaed records regarding
 6              River Birch Inc. which owns a
 7              Waggaman landfill consigned a
 8              deal in June to be the sole
 9              garbage dump for Jefferson
10              Parish for the next 25 years.
11              Charles Leary, Managing
12              Director of the Lodge, emailed
13              the Times Picayune on Friday
14              saying Broussard does not, and
15              has never had any ownership or
16              management involvement with
17              Trout Point Lodge Limited.
18              The message went on to say
19              Broussard owns a vacation home
20              on the same road. But the
21              familiar names of some of the
22              investors shed some light on
23              the political lattice of
24              Jefferson Parish. They
25              include Bennett Powell who
26              said last week he bought a
27              small share in the lodge
28              similar to the one described
29              by Muniz and Larry Stoulig who
30              is listed as a partner in
31              Broussard's management company
32              who had said other investors
33              bought him out five years ago.
34              The late Marie Krantz, former
35              owner of fairgrounds,
36              Jefferson Downs race tracks
37              and Nick Baroni, Kenner City
38              Council member while Broussard
39              was the Mayor there, also
40              invested in developing
41              property near the lodge,
42              Baroni said. Baroni and
```

<u>DECISION BY THE COURT</u>

1        Stoulig have served in federal
2        prison on fraud charges in
3        separate incidents unrelated
4        to the Nova Scotia
5        investments. The link between
6        Nova Scotia and Southern
7        Louisiana outside of the
8        historical link of Acadian
9        culture seems to have begun
10       with Daniel Abel, a lawyer who
11       made a name for himself in
12       1999 working with the late
13       attorney Wendell Gauthier to
14       sue gun manufacturers for
15       violence in New Orleans.
16       Muniz and Abel served as
17       Broussard's legislative aid
18       when he was on the Jefferson
19       Parish Council. But Louisiana
20       Secretary of State records and
21       documents provided by Muniz
22       show that in 1997 Abel,
23       Charles Leary and Vaughn
24       Perret formed a Louisiana
25       corporation called La Ferme
26       Limited and its Canadian
27       counterpart, La Ferme
28       L'Acadie. The three soon
29       opened the Trout Point Lodge,
30       according to a 2001 travel
31       story in the Times Picayune.
32       After investing in the lodge
33       Muniz said he turned down a
34       second offer from Broussard in
35       1999 to buy nearby property.
36       Having yet to see a financial
37       report about the lodge, Muniz
38       said he demurred on the new
39       opportunity."
40

41        Telemachus in a blog posted February 25,

1    2011, appears to view the Val Bracy interview

2    erred by WVUE Louisiana Media as revealing

3    Broussard's wrongdoings in relation to his Nova

4    Scotia property or properties, stating:

5

6            "On January 7, 2010 the
7            campaign of former Parish
8            President Aaron Broussard paid
9            a Bobby Curvan $1,800 a plate
10           his next fundraiser. Well
11           that sounds like the makings
12           of a great party. The
13           following day actually saw
14           Broussard abruptly resign from
15           office in disgrace."
16

17   And there's a reference to a website.

18

19           "That's pretty sudden, isn't
20           it? Aaron Broussard
21           interviewed by Val Bracy and
22           video January 6, 2010, WVUE
23           Fox 8. Pretty sure it was the
24           day before when the Rocky
25           Marciano of New Orleans TV
26           real journalism pounded,
27           punched and (inaudible due to
28           mumbling…) away at a
29           bewildered and whimpering
30           Aaron Broussard about his Nova
31           Scotia property (properties).
32           As of, and up to that day and
33           the day after it appeared that
34           resignation was not something

1    he had at least communicated
2    in any way to anyone in his
3    campaign."
4

5    Telemachus in a blog posted February 21,

6    2011 connects Broussard with investment in

7    properties at Trout Point Lodge, stating:

8

9    "According to the 7/22/01 TP,
10   Peter Butler was an investor
11   in at least one of the
12   unidentified properties at
13   Trout Point Lodge, Nova Scotia
14   as were Wendell Gauthier and
15   Aaron Broussard. Were you
16   and/or was anyone named,
17   (inaudible due to mumbling...)
18   Sneed, Ward, Butler and/or any
19   JP public official, aid or
20   employee or relatives invested
21   or themselves in any way
22   investors in any of the below
23   entities and if so, in what in
24   what amounts, which
25   percentages and which entities
26   and for what periods?"
27

28   And there's a list and that list includes

29   Trout Point Lodge Limited and Trout Point Lodge.

30   I pause to note that Soft81_1 controls what is

31   posted on those blogs.

32   At Paragraph 9 of his affidavit of May 12,

1      2011, Charles Leary states, in relation to

2      Soft81_1 – in researching the story – sorry:

3

4                            "Soft81_1 published the
5                            following on
6                            Slab.wordpress.com on April
7                            26, 2011 in a post entitled,
8                            'Slab takes a look at the
9                            Trout Point business venture.
10                            Let's start at the end and
11                            work back.'"

12

13      And then there's a further reference to the

14      quote that's found in that blog and it states:

15

16                            "In researching the story,
17                            what I have found is a pattern
18                            of Leary, Abel and the girls
19                            being first-class bitches and
20                            I think it is safe to assume,
21                            based upon the retractions
22                            they made, the Times Picayune
23                            and its corporate parent their
24                            bitch in this fiasco because
25                            Rainnie was onto something
26                            big, albeit a bit dated in the
27                            fleecing of several local
28                            individuals that were marketed
29                            and sold ownership in the
30                            Trout Point by Aaron Broussard
31                            who had close personal ties
32                            and business ties to Abel,
33                            Leary and the girls."

34

1          At Paragraph 15, and Charles Leary states –

2      sorry this quotation that I just quoted, sorry –

3      implicates Trout Point and its principals in Mr.

4      Broussard's alleged wrongdoings.   At Paragraph 15

5      Charles Leary states:

6

7                      "The publisher of the Slabbed
8                      blog also posted material
9                      stating that there is a
10                     mystery and grandiose cover-up
11                     underway involving me, my
12                     business associates, Aaron
13                     Broussard and the Louisiana
14                     News Media."
15

16         Charles Leary provided oral evidence that on

17     April 26, 2011 Soft81 posted the following:

18

19                     "I think by now even our most
20                     casual readers know our
21                     successor website, Slabbed.org
22                     was knocked offline courtesy
23                     of the Times Picayune's
24                     corporate parent, Advanced
25                     Publications and this started
26                     a chain of events that
27                     resulted in Slab temporarily
28                     being moved back to Wordpress.
29                     I'd submit this was a
30                     miscalculation of gargantuan
31                     proportions for several
32                     reasons which will become

1    clear  as  I  roll  out  this
2    series  of  posts  on  Aaron
3    Broussard's  connections  to
4    Trout  Point  Lodge  and  its
5    purported  owners,  Charles
6    Leary,  Danny  Abel  and  Vaughn
7    Perret.   I  say  purported
8    because  others  were  sold  two
9    percent  ownership  interest  in
10   the  Trout  Point  development  as
11   touted  by  Broussard  and  those
12   folks  are  the  bag  holders  in
13   this  deal."
14

15   That's the end of that quote. These are

16   further clear comments that Broussard is

17   connected to Trout Point Lodge and that its

18   principals are involved in the corruption as "bag

19   holders." In these and other postings the

20   anonymous users bloggers appear generally to be

21   denouncing the retraction actions of Times

22   Picayune while applauding Val Bracy, the reporter

23   in the investigative report broadcast by

24   Louisiana Media and writing comments that clearly

25   connect Trout Point and its principals with Mr.

26   Broussard and his alleged wrongdoings. That

27   tends to show that they interpret the Louisiana

28   Media broadcast as supporting their comments.

1    They are anonymous.  It is not known for sure
2    whether they are biased against Trout Point for
3    any reason and have set themselves to deducing
4    some unusual meaning from Louisiana Media's
5    broadcast or they are part of a reasonable
6    audience of ordinary intelligence, even though
7    the content of their blogs does suggest some
8    bias.  If they are part of a reasonable audience
9    of average intelligence, that tends to show that
10   Louisiana Media's audience did not understand
11   this broadcast as alleged in Louisiana Media's
12   amended statement of defence at Paragraphs 16 and
13   21.  If they are biased for any reason it will
14   tend to show that they have set themselves to
15   deducing an unusual meaning from the broadcast
16   and reached a slanted interpretation of Louisiana
17   Media's broadcast that is different from what
18   WVUE Louisiana Media's unbiased and reasonable
19   audience of ordinary intelligence would
20   understand.  The existence or non-existence of
21   bias in the anonymous bloggers' users may be

1        determined if their identity is revealed.

2        Therefore, in my view, considering the principles

3        of liberal disclosure, their identity is relevant

4        to interpreting whether the content that

5        Louisiana Media's broadcast was defamatory.

6              Paragraph 7 of Charles Leary's affidavit of

7        May 18, 2011 refers to a Slabbed posting entitled

8        "Whitmergate" which includes a transcription of

9        Val Bracy's interview with Aaron Broussard on

10       January 6, 2011. According to Dr. Leary, it is

11       an accurate transcription and is in accord with

12       the video provided by WVUE but contains sections

13       not appearing in the video. The identity of the

14       publisher of the blog will help determine whether

15       the posted transcript is authentic or not. The

16       more credible the publisher, the more likely it

17       is to be authentic. In assessing whether a

18       broadcast publication was defamatory it is

19       important to determine what the full and complete

20       content was. The identity of the publisher, as

21       it relates to authenticity, is relevant to that

1    determination.

2            Trout Point has pleaded injurious falsehood

3    and intentional interference with economic

4    relations. Consequently the intention and

5    knowledge of falsehood are issues to be

6    determined. As noted above, the contents of some

7    of the blogging is indicative of a close or

8    insider connection between the anonymous blogger

9    and Louisiana Media. The bloggers are clearly

10   implicating Trout Point and its principals in

11   Broussard's wrongdoings in stating Broussard was

12   involved in Trout Point Lodge. That is

13   continuing more than one year after the January

14   2010 broadcasts. That those bloggers are from

15   within or closely connected to Louisiana Media,

16   it would tend to make it more likely that

17   Louisiana Media intentionally created the

18   impression of a direct connection between Trout

19   Point and Aaron Broussard as well as his alleged

20   wrongdoings. Thus the identity of the bloggers

21   is relevant to intentionality.

1          Trout Point advised the court that it
2     intends to add the anonymous bloggers as parties
3     if they have a sufficiently close connection to
4     Louisiana Media or to sue them separately if they
5     do not.  They are making the motion within the
6     current action, therefore, the motion must be
7     considered on the basis that there is an
8     intention to add them as parties.  Trout Point
9     has no way of knowing how close the connection is
10    even though there are indicia of a close
11    connection.  Trout Point recognizes that if it
12    were to turn out that the connection was not
13    sufficiently close to warrant joining the
14    bloggers as parties, the implied undertaking rule
15    outlined in Civil Procedure Rule 14.03 would
16    require it to seek the court's permission to use
17    the information in question in connection with
18    the matter outside of this proceeding.

19         The anonymity of the bloggers has left Trout
20    Point in the position where it is making the
21    motion based on what appears to it to be the most

<u>DECISION BY THE COURT</u>

1    likely result, i.e. that the bloggers will be
2    added as parties.  Either way it is intended that
3    they will become Defendants in an action against
4    them by Trout Point.  Consequently in my view the
5    test to determine whether the bloggers' identity
6    is to be disclosed for that purpose is the same
7    whether it is within an existing proceeding or in
8    relation to a separate proposed proceeding.  The
9    relevant test in a defamation action was outlined
10   in Warman and Wilkins-Fournier, [2010] O.N.S.C.
11   2126 and approved by the Supreme Court of Nova
12   Scotia in AB and Bragg Communications Inc.,
13   [2010] N.S.S.C. 215.  Under that test the
14   application must establish the following:
15
16        1.   A prima facie case;
17        2.   Involvement of the third party from
18             whom production is sought;
19        3.   That the third party is the only
20             practical source of the information;
21        4.   That the third party will be reasonably

1        compensated  for  expenses  and  legal

2        costs of compliance;  and

3   5.   The  public  interest  in  disclosure

4        outweighs  the  legitimate  privacy

5        interests and  interests and  freedom of

6        expression.

7

8        I  will  deal  with  each  of  those  in  turn.

9   First  whether  a  prima  facie  case  has  been

10   established.   In  my  view  the  words  in  the  blogs

11   would  tend  to  lower  Trout  Point's  reputation  in

12   the  eyes  of  a  reasonable  person  and  do  refer  to

13   Trout  Point.   The  blogs  are  posted  on  a  publicly-

14   accessible  website.   They  were  accessed  freely  by

15   Charles  Leary.   The  most  likely  inference  is  that

16   they  were  communicated  to  persons  other  than

17   Trout  Point.   As  such,  Trout  Point  has

18   established  a  prima  facie  case  that  they  were

19   published  and  were  defamatory.

20

21        2.   Regarding  involvement  of  the  third  party

1    from whom production is sought, Automattic Inc.

2    is involved in the sense that it hosts and

3    publishes the blogging website on which the blogs

4    were posted even though it is not implicated in

5    the alleged wrongful acts.

6

7        3.   The third party is the only practical

8    source of information.   Automattic has a policy

9    of generally producing information identifying

10   anonymous bloggers on its website if directed to

11   do so by court order including a court order

12   originating from outside the US.   It appears that

13   in the circumstances to be the only avenue to

14   obtain the information sought.

15

16       4.   The third party will be reasonably

17   compensated for expenses and legal costs of

18   compliance.   The information requested ought to

19   be easily accessible. For the most part it ought

20   to have been obtained when the bloggers signed

21   onto the website.   Automattic's policy indicates

1        it  contemplates  readily  providing  such

2        information when directed to do so by any court.

3        Given that we are talking about a website, more

4        likely than not all the information is in

5        electronic form and can simply be emailed to

6        Trout Point at essentially no cost to Automattic.

7        Further, its standard procedure is to forward

8        court orders to the bloggers themselves in case

9        they want to quash the legal process. Therefore

10       Automattic itself would not incur any legal

11       costs.

12

13           5.   The public interest in disclosure

14       outweighs the legitimate privacy interest and

15       interests in freedom of expression. Automattic's

16       policy is to generally provide information it is

17       directed to provide by court order including

18       international orders. Examples include requests

19       for information about anonymous bloggers sued for

20       defamation.   In addition the privacy policy

21       states:

28                      <u>DECISION BY THE COURT</u>

1

2                    "If you are a blogger looking
3                    for a completely anonymous
4                    blogging service or if the
5                    fact that the above data could
6                    be revealed in court
7                    proceedings, et cetera bothers
8                    you, please do not use
9                    wordprocess.com (sic) for your
10                   blogging."
11

12            When a blogger signs up he or she agrees to

13      the host's privacy policy.  Therefore there is a

14      diminished expectation of privacy where, as in

15      the case at hand, the anonymous blogger is

16      posting information that is prima facie

17      defamatory.  And in support of that I refer to

18      York University and Bell Canada Enterprises,

19      [2009] O.J. 3689 and that is a decision of the

20      Ontario Superior Court of Justice.  Generally the

21      public interest in not allowing individuals to

22      distribute defamatory materials under the cloak

23      of anonymity will outweigh the public interest in

24      protecting such a person's right to privacy and

25      freedom of expression.  That in principle was the

26      conclusion that was reached in Bragg, Mosher and

1       York University v. Bell Canada Enterprises.

2           In the case at hand the content and tone of

3       the blogs is aggressive.  There is no indication

4       that the bloggers are fearful of the Plaintiff or

5       of other targets of their comments.  There is no

6       indication that their identity should be

7       protected for safety reasons.  In addition in the

8       case at hand, the blogs contain comments based on

9       the actual or perceived sexual orientation of the

10      intended targets.  Those comments are clearly

11      meant to be derogatory and insulting.  I will not

12      reproduce them here.  It is the type of

13      expression that engenders harmful results such as

14      discrimination and hatred.  It is not the type of

15      free expression that deserves protection and

16      fostering.

17          Considering these factors, I am of the view

18      that the public interest and disclosure outweighs

19      the legitimate privacy interest and interests and

20      freedom of expression of the anonymous bloggers.

21      And given this conclusion and that I have found

1    the requested information to be relevant, it is

2    appropriate that I exercise my discretion under

3    Civil Procedure Rule 14.12(1) to order the third

4    party production requested.  I therefore grant

5    the Plaintiff's motion.  I will initial the order

6    and have it issued and it should be available for

7    pick up fairly shortly.  Clerk, do you know if

8    the Prothonotary is in today?

9         COURT CLERK:    Yes, she is.

10        THE COURT:  She's in today so that should be

11   available for pick up later today, okay?  Now I'm

12   assuming that you're not making any motion for

13   costs where the Defendants did not oppose the

14   motion.    They   simply   raised   the   issue   of

15   relevance.  Am I correct in that assumption Dr.

16   Leary?

17        DR. LEARY:       That's right, My Lord.

18        THE COURT:  All right, thank you.

19        UNIDENTIFIED MALE VOICE:  My   Lord,   Robert

20   (inaudible  due  to  mumbling…)   Just  one  point

21   arising out of this.  When the order is served

1    and the materials are produced to the Plaintiff

2    it's understood that they will provide the

3    materials for the Defendant (inaudible due to

4    mumbling...)

5         THE COURT:   Yeah, so from my perception it

6    should be automatic because it's obviously

7    something that's relevant to the proceeding and

8    that they have in their possession.

9         UNIDENTIFIED MALE VOICE:   Thank you My Lord.

10        THE COURT:   Okay, thank you everyone.   We

11   can close the court, clerk.

12        DR. LEARY:     Thank you My Lord.

13        THE COURT:   Thank you.

14

15        [ADJOURNED AT 11:40 A.M.]

16

## CERTIFICATE OF COURT TRANSCRIBER

I, Rita Newton, Court Transcriber, hereby certify that I have transcribed the foregoing and that it is a true and accurate transcript of a decision given in the matter of Trout Point Lodge Limited v. Louisiana Media Company, LLC, YAR 328248 taken by way of electronic recording in Halifax, Nova Scotia on May 30, 2011.

_____

Rita Newton, Certificate No. 2006-56

CERTIFIED COURT TRANSCRIBER,

PROVINCE OF NOVA SCOTIA


Halifax, Nova Scotia

July 7, 2011