YAR 1 SC 110520
YAR 328248

## IN THE SUPREME COURT OF NOVA SCOTIA

BETWEEN:

TROUT POINT LODGE LIMITED

APPLICANT

— and —

LOUISIANA MEDIA COMPANY, LLC

RESPONDENT

_____

DECISION
_____

| | |
|---|---|
| HEARD BEFORE: | The Honourable Justice Pierre Léon Muise |
| COUNSEL: | Dr. Charles Leary Self-Represented as Agent and Officer of Trout Point Lodge Limited |
| PLACE: | Yarmouth JC1, Yarmouth, N.S. |
| DATE HEARD: | May 30, 2011 |

INDEX
TROUT POINT LODGE LIMITED V. LOUISIANA MEDIA LLC
MAY 30, 2011

Decision by the Court ...............................3

1                           DECISION BY THE COURT
2

3              THE COURT:        And Sheriff, you can open the

4       door to the courtroom as well, okay.  This is the

5       matter of Trout Point Lodge Limited and Louisiana

6       Media Company, LLC.    It is File Number YAR

7       328248.   There is a motion before the court by

8       Trout Point for an order requiring Automattic

9       Inc., "Automattic" spelled with two t's at the

10      end, to reveal the information regarding the

11      identity of some registered Wordpress.com users.

12      Automattic Inc. is a California corporation which

13      hosts a blogging website called Wordpress.com.

14      Wordpress.com in turn hosts a blog named Slabbed

15      with the URL Slabbed.wordpress.com.  Telemachus

16      and unslabbed are two registered users on

17      Slabbed.   Soft81_1 is the purported owner and

18      publisher of the blog.  As the entity in charge

19      of the blog, Soft81_1 controls what appears on

20      it.   All three maintain an anonymous identity.

21      Trout Point alleges that their blogs or postings

22      are prima facie defamatory and refers to the

1        publications of Louisiana Media.  And they appear

2        to be closely connected with Louisiana Media.

3        Trout Point asks that I order Automattic Inc. to

4        produce information revealing the identity of

5        these anonymous entities on the basis that they

6        will either be added as defendants in the within

7        action or added as defendants in a separate

8        action and are material witnesses in the within

9        action.  Automattic has no part in what appears

10       in the blogs.  It only provides the service.

11              This motion is made pursuant to Civil

12       Procedure Rule 14.12 which permits a judge to

13       order a third party to produce a relevant

14       document.  It is made within this action by Trout

15       Point against Louisiana Media.  It is not a pure

16       motion for production at a pre-commencement of

17       action stage as was the case in AB and Bragg

18       Communications Inc., [2010] N.S.S.C. 215 and in

19       Mosher and Coast Publishing Limited, [2010]

20       N.S.S.C. 153.  However the test is – the same

21       test is applicable to determining whether

1          production of anonymous bloggers' identifying
2          information should be ordered so that it can be
3          added as parties to the within action.  That is
4          the same test as in Bragg and Mosher.

5              In the case at hand there is also a question
6          of whether the requested information is relevant
7          to an issue to be determined in the existing
8          action against Louisiana Media.  I will deal with
9          that first.  2009 Civil Procedure Rule 14.01
10         defines relevant and relevancy for the purposes
11         of production and disclosure as "having the same
12         meaning as a trial of an action or on the hearing
13         of an application."  This trial relevance test
14         replaced the old semblance of relevance test.
15         The Chambers Judge must now assume, as best as he
16         or she can, the vantage point of a trial or an
17         application judge and apply general evidence law.
18         The determination is based on the pleadings and
19         the evidence known to the judge.  However, there
20         should still be liberal disclosure of relevant
21         information and I refer to – in support of this I

1       refer   to   Brown   and   Cape   Breton   Regional

2       Municipality, [2011] N.S.C.A. 32, at Paragraphs 8

3       to  13.    The  onus  is  on  the  plaintiffs  to

4       establish  that  the  information  they  seek  is

5       relevant.   Justice LeBlanc in Murphy and Lawtons

6       Drug  Stores  Limited,  [2010]  N.S.S.C.  289  at

7       Paragraph 16 cited with approval at Paragraph 3.3

8       from the Law of Evidence, 5th Edition 2008, David

9       Paciocco  and  Lee  Stuesser  which  included  the

10      following comments:

11

12                      "Evidence is relevant where it
13                      has some tendency as a matter
14                      of logic and human experience
15                      to make the proposition for
16                      which it is advanced more
17                      likely than that proposition
18                      would be in the absence of
19                      that evidence."
20

21          As the Supreme Court of Canada has said in

22      R. v. Arp, [1998] 3 S.C.R. 339:

23

24                      "To be logically relevant, an
25                      item of evidence does not have
26                      to firmly establish, on any
27                      standard, the truth or falsity

1       of the fact in issue.  The
2       evidence must simply tend to
3       increase  or  diminish  the
4       possibility of the existence
5       of a fact in issue.  As a
6       consequence  there  is  no
7       minimal  probative  value
8       required for evidence to be
9       relevant."
10

11      Trout Point's pleadings allege, among other

12      things, that Louisiana Media's reports and

13      broadcasts relating to the Aaron Broussard

14      investigation improperly included references to

15      Trout Point and photos of its lodge creating the

16      impression that Mr. Broussard was an owner of the

17      Trout Point Lodge and that Trout Point was

18      implicated in his alleged wrongdoings.  Louisiana

19      Media's amended Statement of Defence states, at

20      Paragraph 16:

21

22      "The Defendant states that as
23      to  the  totality  of  the
24      broadcast  or  broadcasts,
25      whether by way of television,
26      internet  or  otherwise,
27      containing the January 6, 2010
28      interview of Aaron Broussard,
29      it was clearly communicated to
30      and understood by its audience

1    that the Broussard properties
2    were not the Plaintiff, Trout
3    Point Lodge Limited's but
4    rather were properties
5    connected to the Plaintiff
6    Trout Point Lodge Limited.
7
8    And at Paragraph 21:

9

10   "The Defendant denies that any
11   broadcast or broadcasts either
12   by way of television or
13   internet or otherwise made by
14   it with regard to Aaron
15   Broussard were understood by
16   their plain and ordinary
17   meaning or by way of innuendo
18   or otherwise to mean any of
19   the following with regards to
20   the Plaintiff Trout Point
21   Lodge Limited, the Plaintiff
22   Charles L. Leary and the
23   Plaintiff Vaughn J. Perret, or
24   any of them."
25

26   And I won't list all of them.

27

28   d)  That the Plaintiffs or any
29   of them were involved in or
30   connected with or the situs of
31   any conspiracy involving
32   politicians and contractors;
33   g) That the Plaintiffs or any
34   of them were somehow involved
35   in illegal, criminal and/or
36   unethical activities including
37   money laundering, political

```
 1                    (inaudible  due  loud  noise…)
 2                    and kickbacks;
 3                    h)  That the Plaintiffs or any
 4                    of  them  were  involved  in  or
 5                    connected  with  any  kickback
 6                    schemes,   money   laundering,
 7                    misuse   of   public   monies,
 8                    fraud,    general    political
 9                    corruptions,        unsavoury
10                    characters and shady dealings;
11                    i)   That the Plaintiff, Trout
12                    Point Lodge Limited was owned
13                    by  Aaron  Broussard  and  was
14                    illicitly rented to government
15                    contractors   and   was   the
16                    subject  of  allegations  and
17                    investigations  including  by
18                    the  Louisiana  Metropolitan
19                    Crime  Commission  and  the
20                    United States Attorney.
21
22

23          Louisiana Media owns and operates WWUE which

24     is a Fox television affiliate.   Charles Leary's

25     affidavit filed May 12, 2011 in support of this

26     motion  attaches  as  Exhibit  A  comments  and

27     publications from the blog Slabbedwordpress.com.

28     In that exhibit unslabbed refers to Val Bracy who

29     was  the  reporter  in  an  investigative  report

30     broadcast by WWUE Louisiana Media on Fox 8 News

31     in  January  2010,  the  contents  of  which  Trout

32     Point alleges are defamatory.   Unslabbed's March
```

1         8, 2010 posting states:

2

3                         "(inaudible due to mumbling…)
4                         Confirmed there was a new
5                         interview by Bracy with
6                         Theriault. (inaudible due to
7                         mumbling…) refused to go on
8                         camera, also FYI reliable
9                         sources say Fox 8 was sued
10                        recently by Trout Point Lodge.
11                        Apparently they see having any
12                        connection to Aaron Broussard
13                        as a negative. Odd that since
14                        Danny Abel et al, that would
15                        be the Spain connection across
16                        from the (inaudible due to
17                        mumbling…), the Costa Rican
18                        location, seemed to keen on
19                        having the crème de la crème
20                        of the political elite as
21                        investors in and around the
22                        prestigious
23                        property/properties. Odd also
24                        that a resort would object to
25                        any publicity for their
26                        business. Must be nice to be
27                        so special and elite that only
28                        certain people are okay to be
29                        associated with their
30                        endeavours."
31

32        I'll just skip the next paragraph.

33

34                        "So we're back to why would
35                        Trout Point suddenly lash out
36                        at Val Bracy and Fox 8. After
37                        suing the Times Picayune News

1        and effectively silencing
2        them, is this an attempt to do
3        the same to Fox 8?  Is Bracy
4        hitting too many nerves?  It
5        seems strange to have waited
6        so long to sue in Canada over
7        a story that is old news.  So
8        maybe they want some more
9        publicity for their joints.
10       Hope they are ready for the
11       depositions and requests for
12       omissions coming their way.
13       FYI Trout Point, if I were
14       you, I would review Aaron's
15       interviews and the Fox 8 new
16       account before I racked more
17       in legal fees suing the wrong
18       parties.      Frivolous   is
19       frivolous and this is a silly
20       lawsuit.  IMHO."
21

22       On March 8th of 2010 the notice of action had

23       not been filed against Louisiana Media.  Only a

24       notice of intended action had been filed on

25       Louisiana Media.  The comments about suing Fox 8,

26       the Defendant's station and waiting so long to

27       sue in Canada and the lawsuit being frivolous are

28       indicative of an insider connection or

29       association with Louisiana Media.  Also in

30       Exhibit A in a blog posted February 16, 2011,

31       Telemachus connects Broussard with Trout Point

1       Lodge, stating well this might be one thing the

2       ethics Board is looking at.

3

4                   "You can take a fishing pole
5                   and catch a trout in your
6                   front yard."
7

8                   "Ed Muniz recalled Aaron
9                   Broussard telling me in 1998
10                  about a real estate investment
11                  opportunity in Nova Scotia
12                  Canada. The subject, Muniz
13                  said, was Trout Point Lodge, a
14                  four hour drive from Halifax
15                  and deep in the pristine
16                  forests of a provincially-
17                  protected wilderness area.
18                  Both men were serving on the
19                  Jefferson Parish Council at
20                  the time and Muniz said
21                  Broussard asked him to buy
22                  into the development 25,000
23                  for a two percent stake. The
24                  Metropolitan Crime Commission
25                  on Wednesday asked for a State
26                  Ethics Investigation into
27                  whether Broussard had been
28                  renting the Nova Scotia
29                  vacation property to Jefferson
30                  Parish contractors. Two days
31                  later Broussard resigned as
32                  Parish President citing
33                  distractions of the widening
34                  federal criminal investigation
35                  into his administration. The
36                  investigation began with
37                  subpoenas relating to the
38                  private insurance businesses

1        of Broussard's former chief
2        administrator, Tim Whitmer,
3        who resigned Monday. Federal
4        authorities also have
5        subpoenaed records regarding
6        River Birch Inc. which owns a
7        Waggaman landfill consigned a
8        deal in June to be the sole
9        garbage dump for Jefferson
10       Parish for the next 25 years.
11       Charles Leary, Managing
12       Director of the Lodge, emailed
13       the Times Picayune on Friday
14       saying Broussard does not, and
15       has never had any ownership or
16       management involvement with
17       Trout Point Lodge Limited.
18       The message went on to say
19       Broussard owns a vacation home
20       on the same road. But the
21       familiar names of some of the
22       investors shed some light on
23       the political lattice of
24       Jefferson Parish. They
25       include Bennett Powell who
26       said last week he bought a
27       small share in the lodge
28       similar to the one described
29       by Muniz and Larry Stoulig who
30       is listed as a partner in
31       Broussard's management company
32       who had said other investors
33       bought him out five years ago.
34       The late Marie Krantz, former
35       owner of fairgrounds,
36       Jefferson Downs race tracks
37       and Nick Baroni, Kenner City
38       Council member while Broussard
39       was the Mayor there, also
40       invested in developing
41       property near the lodge,
42       Baroni said. Baroni and

1       Stoulig have served in federal
2       prison on fraud charges in
3       separate incidents unrelated
4       to the Nova Scotia
5       investments. The link between
6       Nova Scotia and Southern
7       Louisiana outside of the
8       historical link of Acadian
9       culture seems to have begun
10      with Daniel Abel, a lawyer who
11      made a name for himself in
12      1999 working with the late
13      attorney Wendell Gauthier to
14      sue gun manufacturers for
15      violence in New Orleans.
16      Muniz and Abel served as
17      Broussard's legislative aid
18      when he was on the Jefferson
19      Parish Council. But Louisiana
20      Secretary of State records and
21      documents provided by Muniz
22      show that in 1997 Abel,
23      Charles Leary and Vaughn
24      Perret formed a Louisiana
25      corporation called La Ferme
26      Limited and its Canadian
27      counterpart, La Ferme
28      L'Acadie. The three soon
29      opened the Trout Point Lodge,
30      according to a 2001 travel
31      story in the Times Picayune.
32      After investing in the lodge
33      Muniz said he turned down a
34      second offer from Broussard in
35      1999 to buy nearby property.
36      Having yet to see a financial
37      report about the lodge, Muniz
38      said he demurred on the new
39      opportunity."
40
41      Telemachus in a blog posted February 25,

1        2011, appears to view the Val Bracy interview

2        erred by WVUE Louisiana Media as revealing

3        Broussard's wrongdoings in relation to his Nova

4        Scotia property or properties, stating:

5

6                    "On January 7, 2010 the
7                    campaign of former Parish
8                    President Aaron Broussard paid
9                    a Bobby Curvan $1,800 a plate
10                   his next fundraiser. Well
11                   that sounds like the makings
12                   of a great party. The
13                   following day actually saw
14                   Broussard abruptly resign from
15                   office in disgrace."
16

17            And there's a reference to a website.

18

19                   "That's pretty sudden, isn't
20                   it? Aaron Broussard
21                   interviewed by Val Bracy and
22                   video January 6, 2010, WVUE
23                   Fox 8. Pretty sure it was the
24                   day before when the Rocky
25                   Marciano of New Orleans TV
26                   real journalism pounded,
27                   punched and (inaudible due to
28                   mumbling…) away at a
29                   bewildered and whimpering
30                   Aaron Broussard about his Nova
31                   Scotia property (properties).
32                   As of, and up to that day and
33                   the day after it appeared that
34                   resignation was not something

1                    he had at least communicated
2                    in any way to anyone in his
3                    campaign."
4

5          Telemachus in a blog posted February 21,

6     2011 connects Broussard with investment in

7     properties at Trout Point Lodge, stating:

8

9                    "According to the 7/22/01 TP,
10                   Peter Butler was an investor
11                   in at least one of the
12                   unidentified properties at
13                   Trout Point Lodge, Nova Scotia
14                   as were Wendell Gauthier and
15                   Aaron Broussard. Were you
16                   and/or was anyone named,
17                   (inaudible due to mumbling…)
18                   Sneed, Ward, Butler and/or any
19                   JP public official, aid or
20                   employee or relatives invested
21                   or themselves in any way
22                   investors in any of the below
23                   entities and if so, in what in
24                   what amounts, which
25                   percentages and which entities
26                   and for what periods?"
27

28         And there's a list and that list includes

29    Trout Point Lodge Limited and Trout Point Lodge.

30    I pause to note that Soft81_1 controls what is

31    posted on those blogs.

32         At Paragraph 9 of his affidavit of May 12,

1      2011, Charles Leary states, in relation to

2      Soft81_1 — in researching the story — sorry:

3

4                            "Soft81_1       published       the
5                            following                        on
6                            Slab.wordpress.com    on   April
7                            26, 2011 in a post entitled,
8                            'Slab takes a look at the
9                            Trout Point business venture.
10                           Let's start at the end and
11                           work back.'"
12

13            And then there's a further reference to the

14     quote that's found in that blog and it states:

15

16                           "In   researching  the  story,
17                           what I have found is a pattern
18                           of Leary, Abel and the girls
19                           being first-class bitches and
20                           I think it is safe to assume,
21                           based upon the retractions
22                           they made, the Times Picayune
23                           and its corporate parent their
24                           bitch in this fiasco because
25                           Rainnie was onto something
26                           big, albeit a bit dated in the
27                           fleecing of several local
28                           individuals that were marketed
29                           and sold ownership in the
30                           Trout Point by Aaron Broussard
31                           who had close personal ties
32                           and business ties to Abel,
33                           Leary and the girls."
34

1           At Paragraph 15, and Charles Leary states –

2      sorry this quotation that I just quoted, sorry –

3      implicates Trout Point and its principals in Mr.

4      Broussard's alleged wrongdoings.  At Paragraph 15

5      Charles Leary states:

6

7                    "The publisher of the Slabbed
8                    blog  also  posted  material
9                    stating  that  there  is  a
10                   mystery and grandiose cover-up
11                   underway  involving  me,  my
12                   business  associates,  Aaron
13                   Broussard  and  the  Louisiana
14                   News Media."
15

16          Charles Leary provided oral evidence that on

17      April 26, 2011 Soft81 posted the following:

18

19                   "I think by now even our most
20                   casual  readers  know  our
21                   successor website, Slabbed.org
22                   was  knocked  offline  courtesy
23                   of  the  Times  Picayune's
24                   corporate  parent,  Advanced
25                   Publications and this started
26                   a  chain  of  events  that
27                   resulted in Slab temporarily
28                   being moved back to Wordpress.
29                   I'd  submit  this  was  a
30                   miscalculation of gargantuan
31                   proportions  for  several
32                   reasons  which  will  become

1       clear  as  I  roll  out  this
2       series  of  posts  on  Aaron
3       Broussard's  connections  to
4       Trout  Point  Lodge  and  its
5       purported  owners,  Charles
6       Leary,  Danny  Abel  and  Vaughn
7       Perret.    I  say  purported
8       because  others  were  sold  two
9       percent  ownership  interest  in
10      the  Trout  Point  development  as
11      touted  by  Broussard  and  those
12      folks  are  the  bag  holders  in
13      this  deal."
14

15          That's  the  end  of  that  quote.    These  are

16      further  clear  comments  that  Broussard  is

17      connected  to  Trout  Point  Lodge  and  that  its

18      principals  are  involved  in  the  corruption  as  "bag

19      holders."    In  these  and  other  postings  the

20      anonymous  users  bloggers  appear  generally  to  be

21      denouncing  the  retraction  actions  of  Times

22      Picayune  while  applauding  Val  Bracy,  the  reporter

23      in  the  investigative  report  broadcast  by

24      Louisiana  Media  and  writing  comments  that  clearly

25      connect  Trout  Point  and  its  principals  with  Mr.

26      Broussard  and  his  alleged  wrongdoings.    That

27      tends  to  show  that  they  interpret  the  Louisiana

28      Media  broadcast  as  supporting  their  comments.

1      They are anonymous. It is not known for sure
2      whether they are biased against Trout Point for
3      any reason and have set themselves to deducing
4      some unusual meaning from Louisiana Media's
5      broadcast or they are part of a reasonable
6      audience of ordinary intelligence, even though
7      the content of their blogs does suggest some
8      bias. If they are part of a reasonable audience
9      of average intelligence, that tends to show that
10     Louisiana Media's audience did not understand
11     this broadcast as alleged in Louisiana Media's
12     amended statement of defence at Paragraphs 16 and
13     21. If they are biased for any reason it will
14     tend to show that they have set themselves to
15     deducing an unusual meaning from the broadcast
16     and reached a slanted interpretation of Louisiana
17     Media's broadcast that is different from what
18     WWUE Louisiana Media's unbiased and reasonable
19     audience of ordinary intelligence would
20     understand. The existence or non-existence of
21     bias in the anonymous bloggers' users may be

1        determined if their identity is revealed.
2        Therefore, in my view, considering the principles
3        of liberal disclosure, their identity is relevant
4        to interpreting whether the content that
5        Louisiana Media's broadcast was defamatory.

6            Paragraph 7 of Charles Leary's affidavit of
7        May 18, 2011 refers to a Slabbed posting entitled
8        "Whitmergate" which includes a transcription of
9        Val Bracy's interview with Aaron Broussard on
10       January 6, 2011. According to Dr. Leary, it is
11       an accurate transcription and is in accord with
12       the video provided by WVUE but contains sections
13       not appearing in the video. The identity of the
14       publisher of the blog will help determine whether
15       the posted transcript is authentic or not. The
16       more credible the publisher, the more likely it
17       is to be authentic. In assessing whether a
18       broadcast publication was defamatory it is
19       important to determine what the full and complete
20       content was. The identity of the publisher, as
21       it relates to authenticity, is relevant to that

1      determination.

2            Trout Point has pleaded injurious falsehood

3      and    intentional    interference    with    economic

4      relations.      Consequently    the    intention    and

5      knowledge    of    falsehood    are    issues    to    be

6      determined.  As noted above, the contents of some

7      of   the   blogging   is   indicative of   a   close   or

8      insider connection between the anonymous blogger

9      and Louisiana Media.    The bloggers are clearly

10     implicating Trout Point and its principals in

11     Broussard's wrongdoings in stating Broussard was

12     involved   in   Trout   Point   Lodge.      That   is

13     continuing more than one year after the January

14     2010 broadcasts.    That those bloggers are from

15     within or closely connected to Louisiana Media,

16     it   would   tend   to   make   it   more   likely   that

17     Louisiana   Media   intentionally   created   the

18     impression of a direct connection between Trout

19     Point and Aaron Broussard as well as his alleged

20     wrongdoings.    Thus the identity of the bloggers

21     is relevant to intentionality.

1          Trout  Point  advised  the  court  that  it

2    intends  to  add  the  anonymous  bloggers  as  parties

3    if  they  have  a  sufficiently  close  connection  to

4    Louisiana  Media  or  to  sue  them  separately  if  they

5    do  not.    They  are  making  the  motion  within  the

6    current  action,  therefore,  the  motion  must  be

7    considered  on  the  basis  that  there  is  an

8    intention  to  add  them  as  parties.    Trout  Point

9    has  no  way  of  knowing  how  close  the  connection  is

10   even  though  there  are  indicia  of  a  close

11   connection.    Trout  Point  recognizes  that  if  it

12   were  to  turn  out  that  the  connection  was  not

13   sufficiently  close  to  warrant  joining  the

14   bloggers  as  parties,  the  implied  undertaking  rule

15   outlined  in  Civil  Procedure  Rule  14.03  would

16   require  it  to  seek  the  court's  permission  to  use

17   the  information  in  question  in  connection  with

18   the  matter  outside  of  this  proceeding.

19          The  anonymity  of  the  bloggers  has  left  Trout

20   Point  in  the  position  where  it  is  making  the

21   motion  based  on  what  appears  to  it  to  be  the  most

1        likely result, i.e. that the bloggers will be

2        added as parties. Either way it is intended that

3        they will become Defendants in an action against

4        them by Trout Point. Consequently in my view the

5        test to determine whether the bloggers' identity

6        is to be disclosed for that purpose is the same

7        whether it is within an existing proceeding or in

8        relation to a separate proposed proceeding.  The

9        relevant test in a defamation action was outlined

10       in Warman and Wilkins-Fournier, [2010] O.N.S.C.

11       2126 and approved by the Supreme Court of Nova

12       Scotia in AB and Bragg Communications Inc.,

13       [2010] N.S.S.C. 215.  Under that test the

14       application must establish the following:

15

16           1.  A prima facie case;

17           2.  Involvement of the third party from

18               whom production is sought;

19           3.  That the third party is the only

20               practical source of the information;

21           4.  That the third party will be reasonably

1                    compensated    for    expenses    and    legal

2                    costs of compliance;    and

3              5.    The    public    interest    in    disclosure

4                    outweighs    the    legitimate    privacy

5                    interests and interests and freedom of

6                    expression.

7

8              I  will  deal  with  each  of  those  in  turn.

9         First  whether  a  prima  facie  case  has  been

10        established.    In my view the words in the blogs

11        would tend to lower Trout Point's reputation in

12        the eyes of a reasonable person and do refer to

13        Trout Point.    The blogs are posted on a publicly-

14        accessible website.    They were accessed freely by

15        Charles Leary.    The most likely inference is that

16        they  were  communicated  to  persons  other  than

17        Trout    Point.        As    such,    Trout    Point    has

18        established a prima facie case that they were

19        published and were defamatory.

20

21             2.    Regarding involvement of the third party

1        from whom production is sought, Automattic Inc.
2        is involved in the sense that it hosts and
3        publishes the blogging website on which the blogs
4        were posted even though it is not implicated in
5        the alleged wrongful acts.

6

7                3.    The third party is the only practical
8        source of information.   Automattic has a policy
9        of generally producing information identifying
10       anonymous bloggers on its website if directed to
11       do so by court order including a court order
12       originating from outside the US.  It appears that
13       in the circumstances to be the only avenue to
14       obtain the information sought.

15

16               4.    The third party will be reasonably
17       compensated for expenses and legal costs of
18       compliance.   The information requested ought to
19       be easily accessible. For the most part it ought
20       to have been obtained when the bloggers signed
21       onto the website.   Automattic's policy indicates

1       it    contemplates    readily    providing    such

2       information when directed to do so by any court.

3       Given that we are talking about a website, more

4       likely  than  not  all  the  information  is  in

5       electronic  form  and  can  simply  be  emailed  to

6       Trout Point at essentially no cost to Automattic.

7       Further,  its  standard  procedure  is  to  forward

8       court  orders  to  the  bloggers  themselves  in  case

9       they want to quash the legal process.   Therefore

10      Automattic  itself  would  not  incur  any  legal

11      costs.

12

13          5.   The   public   interest   in   disclosure

14      outweighs  the  legitimate  privacy  interest  and

15      interests in freedom of expression.   Automattic's

16      policy is to generally provide information it is

17      directed  to  provide  by  court  order  including

18      international  orders.   Examples  include  requests

19      for information about anonymous bloggers sued for

20      defamation.    In   addition   the   privacy   policy

21      states:

1

2                    "If you are a blogger looking
3                    for a completely anonymous
4                    blogging service or if the
5                    fact that the above data could
6                    be revealed in court
7                    proceedings, et cetera bothers
8                    you, please do not use
9                    wordprocess.com (sic) for your
10                   blogging."
11

12          When a blogger signs up he or she agrees to

13     the host's privacy policy. Therefore there is a

14     diminished expectation of privacy where, as in

15     the case at hand, the anonymous blogger is

16     posting information that is prima facie

17     defamatory. And in support of that I refer to

18     York University and Bell Canada Enterprises,

19     [2009] O.J. 3689 and that is a decision of the

20     Ontario Superior Court of Justice. Generally the

21     public interest in not allowing individuals to

22     distribute defamatory materials under the cloak

23     of anonymity will outweigh the public interest in

24     protecting such a person's right to privacy and

25     freedom of expression. That in principle was the

26     conclusion that was reached in Bragg, Mosher and

1        York University v. Bell Canada Enterprises.

2                In the case at hand the content and tone of

3        the blogs is aggressive.   There is no indication

4        that the bloggers are fearful of the Plaintiff or

5        of other targets of their comments.   There is no

6        indication   that   their   identity   should   be

7        protected for safety reasons.   In addition in the

8        case at hand, the blogs contain comments based on

9        the actual or perceived sexual orientation of the

10       intended targets.   Those comments are clearly

11       meant to be derogatory and insulting.   I will not

12       reproduce them   here.       It   is   the   type   of

13       expression that engenders harmful results such as

14       discrimination and hatred.   It is not the type of

15       free   expression   that   deserves   protection   and

16       fostering.

17               Considering these factors, I am of the view

18       that the public interest and disclosure outweighs

19       the legitimate privacy interest and interests and

20       freedom of expression of the anonymous bloggers.

21       And given this conclusion and that I have found

1          the requested information to be relevant, it is

2          appropriate that I exercise my discretion under

3          Civil Procedure Rule 14.12(1) to order the third

4          party production requested.  I therefore grant

5          the Plaintiff's motion.  I will initial the order

6          and have it issued and it should be available for

7          pick up fairly shortly.  Clerk, do you know if

8          the Prothonotary is in today?

9                    COURT CLERK:    Yes, she is.

10                   THE COURT:  She's in today so that should be

11         available for pick up later today, okay?  Now I'm

12         assuming that you're not making any motion for

13         costs where the Defendants did not oppose the

14         motion.    They  simply  raised  the  issue  of

15         relevance.  Am I correct in that assumption Dr.

16         Leary?

17                   DR. LEARY:      That's right, My Lord.

18                   THE COURT:  All right, thank you.

19                   UNIDENTIFIED MALE VOICE:  My   Lord,   Robert

20         (inaudible  due  to  mumbling…)   Just  one  point

21         arising out of this.  When the order is served

1      and the materials are produced to the Plaintiff

2      it's understood that they will provide the

3      materials for the Defendant (inaudible due to

4      mumbling…)

5           THE COURT:   Yeah, so from my perception it

6      should be automatic because it's obviously

7      something that's relevant to the proceeding and

8      that they have in their possession.

9           UNIDENTIFIED MALE VOICE:   Thank you My Lord.

10          THE COURT:   Okay, thank you everyone.   We

11     can close the court, clerk.

12          DR. LEARY:      Thank you My Lord.

13          THE COURT:   Thank you.

14

15          [ADJOURNED AT 11:40 A.M.]

16

CERTIFICATE OF COURT TRANSCRIBER

I, Rita Newton, Court Transcriber, hereby certify that I have transcribed the foregoing and that it is a true and accurate transcript of a decision given in the matter of Trout Point Lodge Limited v. Louisiana Media Company, LLC, YAR 328248 taken by way of electronic recording in Halifax, Nova Scotia on May 30, 2011.

_____

Rita Newton, Certificate No. 2006-56

CERTIFIED COURT TRANSCRIBER,

PROVINCE OF NOVA SCOTIA


Halifax, Nova Scotia

July 7, 2011